

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

January 19, 2022

<u>By ECF and E-Mail</u>

Hon. Cathy Seibel
Charles L. Brieant U.S. Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

      Re:    *U.S.* ex rel. *Integra Med Analytics LLC v. Isaac Laufer* et al., 17 Civ. 9424 (CS)

Dear Judge Seibel:

      This Office represents the United States of America (the "Government") in the above-referenced *qui tam* action originally filed under seal pursuant to the False Claims Act, as amended, 31 U.S.C. § 3729 *et seq*. (the "FCA"). We write in response to the January 4, 2022 letter (the "Letter"), filed by seven of the defendants in this matter (the "Seven Defendants"), seeking to unseal all documents filed prior to the Government's notice of intervention. Dkt. No. 87. The Government respectfully requests that the Court deny the Seven Defendants' request and maintain under seal the Government's *ex parte* submissions, which include status reports describing the Government's interim investigative steps, plans, techniques, and impressions in the case. As set forth in more detail below, these documents should remain under seal because: (1) the FCA does not call for public disclosure of the Government's *ex parte* submissions, and such disclosure could chill the Government's disclosures in future submissions in FCA cases; and (2) the information contained in these submissions is protected from public disclosure as attorney work product and/or pursuant to the doctrine of law enforcement privilege, and is also irrelevant to the litigation of the Government's claims in this case, which are set forth in full in its Complaint.

      **I.    The FCA Does Not Call for the Public Disclosure of the Government's *Ex Parte* Submissions**

      Contrary to the Seven Defendants' suggestion, there is not a strong presumption of unsealing the Government's *ex parte* submissions in FCA cases. *See* Letter at 3. The FCA requires the Government to apply to the Court if the Government wishes to extend the period during which a *qui tam* action remains under seal so that the Government may continue its investigation to determine whether it will intervene and take over the prosecution of any part of the case. *See* 31 U.S.C. § 3730(b)(3). In these applications, the Government must show that "good cause" exists to extend the seal. *Id.* The FCA expressly contemplates that the Government may support these applications with *in camera* submissions (which are necessarily also made *ex parte*, since a defendant in an FCA action generally will not be made aware of the existence of the *qui tam* lawsuit until the conclusion of the Government's investigation and the unsealing of the case by court order). *See id.* In these *ex parte* submissions, the Government typically includes status reports

that provide descriptions of the Government's ongoing investigative efforts and interim impressions sufficient for the Court to evaluate whether the "good cause" standard has been met.

After the Government has made its intervention decision in an FCA case, the statute expressly provides that the relator's complaint shall be unsealed. *See id.* However, the statute does not similarly call for or specifically authorize the unsealing of the Government's previous *ex parte* submissions. *See United States ex rel. Monahan v. St. Barnabas Health Care System, Inc.*, No. 02-5702 (JAG), 2009 WL 10733720, at *3-4 (D.N.J. Feb. 9, 2009) (noting that "[w]hile the False Claims Act specifically provides for the eventual unsealing of the complaint, it does not authorize the unsealing of the United States' applications for extensions of the sixty-day seal period, which are required to be filed under seal," and holding that "given the investigatory and legally strategic nature of the pre-intervention filings as well as the unique statutory scheme of the False Claims Act," the Government's *ex parte* seal extensions and other submissions would remain sealed).

Accordingly, the general practice of courts in this district is to maintain the seal over these *ex parte* submissions, even after the case itself is unsealed. Indeed, Chief Judge Swain recently ordered in another case that the Government's *ex parte* status reports to the Court should remain sealed in response to many of the same arguments being made in this letter. *See United States et al. ex rel. Rios v. Medalliance Medical Health Services, Inc.*, No. 17 Civ. 6128 (LTS) (SN), Dkt. No. 29 (S.D.N.Y. June 30, 2021). Maintaining the seal facilitates the Government's candid disclosures in those submissions, which in turn help courts make informed assessments of whether the Government has shown good cause to extend the seal and investigatory period in FCA cases. The unsealing of the Government's *ex parte* submissions in this case or in FCA matters more generally could have a chilling effect on the Government's practice of providing status reports to the Court detailing the investigate steps it has taken and plans to take if the seal is extended. The strong policy interests in: (1) the Government's ongoing transparency with courts regarding its FCA investigations, and (2) the goals and purposes of the FCA more generally, weigh heavily in favor of maintaining the seal over the Government's *ex parte* submissions here.

II. **The Government's *Ex Parte* Submissions Are Protected from Public Disclosure as Attorney Work Product and/or the Law Enforcement Privilege and Should Not Be Unsealed, and Are Also Irrelevant to the Litigation of the Government's Claims**

The Government's *ex parte* submissions in this matter should also remain under seal because they contain information that is protected from public disclosure as either attorney work product and/or pursuant to the Government's law enforcement privilege; and also because they are irrelevant to the litigation of the Government's claims and allegations, which are set forth in full in its Complaint.

For the reasons discussed above, the information contained in the Government's *ex parte* submissions in FCA cases, both generally and in this matter, necessarily reveals the progress of the Government's investigation, including the Government's assessment of additional investigative steps needed and its plans to effectuate those steps. This information reflects privileged material. *See, e.g., United States v. Parse*, 789 F.3d 83, 104 (2d Cir. 2015). Government counsel's thought processes fall safely within the "mental impressions, conclusions, opinions, or legal theories of an attorney," Fed. R. Civ. P. 26(b)(3), that should be treated as attorney work product and which the Second Circuit has held are "to be protected unless a highly persuasive showing [of need] is made." *United States v. Adlman*, 134 F.3d 1194, 1204 (2d Cir. 1998). That

2

the Government previously disclosed this information to the Court in a statutorily contemplated *ex parte* submission does not waive the privilege, as it is well-established that courts may conduct an *in camera* review of privileged material. *See, e.g.*, *Parse*, 789 F.3d at104.

In addition, disclosure of the Government's investigative progress in this case would also reveal aspects of the investigative techniques and strategies utilized by the Government more broadly. The information contained in the Government's *ex parte* submissions is therefore also protected from disclosure pursuant to the law enforcement privilege, the purpose of which is to "prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re The City of New York*, 607 F.3d 923, 941 (2d Cir. 2010) (quoting *In re Dep't of Investigation of the City of New York*, 856 F.2d 481, 484 (2d Cir. 1988)).

The Seven Defendants contend that there is no public record justifying why the Government's pre-intervention submissions should remain sealed, but this argument misses the point. There should be no public record of the Government's investigative steps and mental impressions. Here, the Government's *ex parte* submissions discuss, *inter alia*, witnesses interviewed by the Government, data collected and reviewed by the Government, experts relied upon by the Government to assess allegations, records analyzed by the Government, and other information related to the Government's investigative steps but inappropriate for public disclosure. Disclosure of this type of information could interfere with the Government's future anti-fraud investigations and is therefore protected pursuant to the doctrine of law enforcement privilege. Further, routine disclosure of such information would necessarily have a chilling effect on future investigations.

Lastly, the Seven Defendants contend that the status reports will help them understand "the entirety of the allegations against them and aid in the preparation of their defense." Dkt. No. 87, at 3. But the Government's *ex parte* status reports regarding its pre-intervention investigative steps have no bearing on the current litigation.[1] The Government's claims and allegations are set forth fully in its complaint-in-intervention. The Seven Defendants' arguments and challenges in this matter will be assessed against the allegations contained in the complaint, not any information contained in the status reports. Moreover, although of little to no relevance to the current litigation, relator's complaint has been unsealed, Dkt. No. 14, which provides the Seven Defendants with some insight into the origins of this case.

---

[1] The two cases cited by the Seven Defendants for the proposition that unsealing the status reports will aid with their defenses are readily distinguishable. *See* Letter at 3. *United States ex rel. Rostholder v. Omnicare, Inc.* involved a non-intervened case in which the defendants believed that the status reports would reveal whether the relator had disclosed privileged information and whether the relator qualified as an original source under the FCA. 799 F. Supp. 2d 547, 548-49 (D. Md. 2011). In *United States ex rel. Health Outcomes Techs. v. Hallmark Health Sys.*, the Court determined that the status reports may have been helpful in establishing defenses concerning the statute of limitation and improper venue. 349 F. Supp. 2d 170, 174 (D. Mass. 2004). The Seven Defendants, by contrast, have failed to identify any defenses to which they believe the status reports might be relevant.

3

Accordingly, the Government respectfully requests that the Court deny the Seven Defendants' request and maintain under seal the Government's prior *ex parte* submissions in this case.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: */s/ Jacob M. Bergman*
JACOB M. BERGMAN
DANIELLE J. LEVINE
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Tel: (212) 637-2776/2689

cc: Counsel of Record