BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 5th Avenue N
Birmingham, AL 35203

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* INTEGRA MED ANALYTICS LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>ISAAC LAUFER, MONTCLAIR CARE CENTER, INC., EAST ROCKAWAY CENTER LLC, EXCEL AT WOODBURY FOR REHABILITATION AND NURSING, LLC, LONG ISLAND CARE CENTER INC., TREETOPS REHABILITATION & CARE, SUTTON PARK CENTER FOR NURSING & REHABILITATION, LLC, SUFFOLK RESTORATIVE THERAPY & NURSING, LLC, OASIS REHABILITATION AND NURSING, LLC, and FOREST MANOR CARE CENTER, INC.,<br><br>    Defendants. | **17 Civ. 9424 (CS)**<br><br>**MOTION TO DISMISS**<br><br>**On behalf of Montclair Care Center, Inc.; East Rockaway Center LLC d/b/a Lynbrook Restorative Therapy and Nursing; Excel at Woodbury Rehabilitation and Nursing, LLC; Long Island Care Center Inc.; Treetops Rehabilitation & Care Center LLC d/b/a North Westchester Restorative Therapy and Nursing Center; Sutton Park Center for Nursing & Rehabilitation, LLC; Suffolk Restorative Therapy & Nursing, LLC d/b/a Momentum at South Bay for Rehabilitation and Nursing; Oasis Rehabilitation and Nursing LLC; Forest Manor Care Center, Inc. d/b/a Glen Cove Center for Nursing and Rehabilitation; Surge Rehabilitation & Nursing LLC; and Quantum Rehabilitation & Nursing LLC** |
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ISSAC LAUFER, TAMI WHITNEY, PARAGON MANAGEMENT SNF LLC, MONTCLAIR CARE CENTER, INC., EAST ROCKAWAY CENTER LLC, EXCEL AT WOODBURY FOR REHABILITATION AND NURSING, LLC, LONG ISLAND CARE CENTER INC., TREETOPS REHABILITATION & CARE CENTER LLC, SUTTON PARK CENTER FOR NURSING & REHABILITATION, LLC, SUFFOLK RESTORATIVE THERAPY & NURSING, LLC, OASIS REHABILITATION AND NURSING, LLC, FOREST MANOR CARE CENTER, INC., SURGE REHABILITATION & NURSING LLC, and QUANTUM REHABILITATION & NURSING LLC,<br><br>    Defendants. | |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 2

LEGAL STANDARD ...................................................................................................... 3

ARGUMENT .................................................................................................................. 5

I. The FCA Claims (Counts I and II) Are Not Pled with Particularity ................................. 5

    A. The Complaint Fails to Plead the "What, When, Where and How" with Particularity ............................................................................................... 6

        1. Quantum and Surge ............................................................................. 7

        2. Sutton Park ........................................................................................ 8

        3. Excel ................................................................................................. 9

        4. Oasis ................................................................................................. 9

        5. LICC ................................................................................................. 10

        6. Glen Cove .......................................................................................... 11

        7. Momentum ......................................................................................... 12

        8. North Westchester .............................................................................. 13

        9. Emerge .............................................................................................. 13

        10. Lynbrook ........................................................................................... 14

        11. Purported Pressure by Laufer ............................................................... 15

        12. Generalized Allegations About "Facilities" ........................................... 16

    B. The Complaint Fails to Plead the "Who" with Particularity ............................... 18

    C. The Sample Claims Fail to Satisfy Rule 9(b) ................................................. 19

        1. Quantum and Surge ............................................................................. 21

        2. Sutton Park ........................................................................................ 22

        3. Excel and Oasis .................................................................................. 23

        4. North Westchester .............................................................................. 25

        5. Momentum ......................................................................................... 25

      6.     Lynbrook ................................................................................................ 26

      7.     LICC ...................................................................................................... 26

      8.     Glen Cove ............................................................................................. 27

      9.     Emerge ................................................................................................. 27

  D.     The Government Fails to Plead Scienter ............................................. 28

II.     FCA Claims Pre-dating December 1, 2011 Are Time-barred ......................................... 29

III.    The Government's Unjust Enrichment and Payment by Mistake Claims (Counts III and IV) Fail as a Matter of Law and Should Be Dismissed with Prejudice .............. 30

  A.     The Government's Unjust Enrichment and Payment by Mistake Claims Are Duplicative and Fail for the Same Reasons as the FCA Claims .................. 30

  B.     The Government's Unjust Enrichment and Payment by Mistake Claims Should Be Dismissed Because a Contract Covers the Subject Matter in Dispute .................................................................................................. 31

  C.     The Government's Unjust Enrichment and Payment by Mistake Claims Pre-dating December 1, 2014 Are Time-barred .................................. 32

CONCLUSION ...................................................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*U.S. ex rel. Alt v. Anesthesia Servs. Assocs., PLLC,*
No. 3:16-CV-0549, 2019 WL 7372511 (M.D. Tenn. Dec. 31, 2019) ...............................15, 16

*U.S. ex rel. Aryai v. Skanska,*
No. 09 CIV. 5456 (LGS), 2019 WL 1258938 (S.D.N.Y Mar. 19, 2019) ...........................6, 8

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)........................................................................................3, 22

*Blusal Meats, Inc. v. United States,*
638 F. Supp. 824 (S.D.N.Y. 1986), *aff'd,* 817 F.2d 1007 (2d Cir. 1987) ...............................32

*U.S. ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.,*
865 F.3d 71 (2d Cir. 2017).....................................................................................4

*U.S. ex rel. Clausen v. Lab'y Corp. of Am.,*
290 F.3d 1301 (11th Cir. 2002) .............................................................................6

*U.S. ex rel. Crews v. NCS Healthcare of Illinois, Inc.,*
460 F.3d 853 (7th Cir. 2006) ..........................................................................21, 27

*U.S. ex rel. Gelbman v. City of New York,*
790 F. App'x 244 (2d Cir. 2019) (*"Gelbman II"*) .........................................................4, 6, 7

*U.S. ex rel. Gelbman v. City of New York,*
No. 14-CV-771 (VSB), 2018 WL 4761575 (S.D.N.Y. Sept. 30, 2018)
(*"Gelbman I"*), *aff'd by Gelbman II* ........................................................................18

*U.S. ex rel. Grubea v. Rosicki, Rosicki & Assocs., P.C.,*
318 F. Supp. 3d 680 (S.D.N.Y. 2018).............................................................21, 22, 28, 33

*U.S. ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health,*
816 F. App'x 892 (5th Cir.), cert. denied, 141 S. Ct. 905, 208 L. Ed. 2d 458
(2020)........................................................................................................2

*Integra Med Analytics LLC v. Providence Health & Servs.,*
854 F. App'x 840 (9th Cir. 2021) .......................................................................2, 14, 22

*U.S. ex rel. Jones v. Collegiate Funding Servs., Inc.,*
469 F. App'x 244 (4th Cir. 2012) ..........................................................................6

*U.S. ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency,*
530 F.3d 980 (D.C. Cir. 2008) .............................................................................14

*U.S. ex rel. Kester v. Novartis Pharmaceuticals Corp.*,
23 F. Supp. 3d 242 (S.D.N.Y. 2014)......................................................4, 20, 25, 30

*New York ex rel. Khurana v. Spherion Corp.*,
No. 15 CIV. 6605 (JFK), 2016 WL 6652735 (S.D.N.Y. Nov. 10, 2016)...............................18

*U.S. ex rel. Kolchinsky v. Moody's Corp.*,
162 F. Supp. 3d 186 (S.D.N.Y. 2016)...................................................................29

*U.S. ex rel. Ladas v. Exelis, Inc.*,
824 F.3d 16 (2d Cir. 2016).......................................................................4, 7, 10

*U.S. ex rel. Lawson v. Aegis Therapies, Inc.*,
No. CV 210-072, 2015 WL 1541491 (S.D. Ga. March 31, 2015).........................8, 11, 18, 27

*Meimaris v. Royce*,
No. 18CIV4363GBDBCM, 2019 WL 4673572 (S.D.N.Y. Sept. 25, 2019).......................5, 20

*U.S. ex rel. Pervez v. Beth Israel Med. Ctr.*,
736 F. Supp. 2d 804 (S.D.N.Y. 2010)...................................................................3

*Polar Int'l. Brokerage Corp. v. Reeve*,
108 F. Supp. 2d 225 (S.D.N.Y. 2000)..................................................................18

*U.S. ex rel. Ruscher v. Omnicare*,
No. 4:08-cv-3396, 2015 WL 5178074 (S.D.Tex. Sept. 3, 2015)..........................................18

*U.S. ex rel. Scharff v. Camelot Counseling*,
No. 13-CV-3791 (PKC), 2016 WL 5416494 (S.D.N.Y. Sept. 28, 2016) ...............................7

*Wood ex rel. U.S. v. Applied Rsch. Assocs., Inc.*,
328 F. App'x 744 (2d Cir. 2009) .................................................................1, 8, 21

*Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*,
966 F. Supp. 2d 282 (S.D.N.Y. 2013)..................................................................4

*United States v. Arrow Med. Equip. Co.*,
No. 90-5701, 1990 WL 210601 (E.D. Pa. Dec. 18, 1990).....................................31

*United States v. Bollinger Shipyards, Inc.*,
No. 12-920, 2013 WL 393037 (E.D. La. Jan. 30, 2013)..........................................31

*United States v. EER Sys. Corp.*,
950 F. Supp. 130 (D. Md. 1996) .......................................................................31

*United States v. Hydroaire, Inc.*,
No. 94 C 4414, 1995 WL 86733 (N.D. Ill. Feb. 27, 1995)..............................30, 31

*United States v. Job Res. for Disabled*,
No. 97 C 3904, 2000 WL 562444, at *4 (N.D. Ill. May 9, 2000), reconsidered
in part on other grounds 2000 WL 1222205 (N.D. Ill. Aug. 24, 2000) ...................................30

*United States v. Novartis Pharm. Corp.*,
No. 13-CV-3700, 2020 WL 1436706 (S.D.N.Y. Mar. 24, 2020) ...........................................19

*United States v. Spectrum Painting Corp.*,
No. 19 CIV. 2096 (AT), 2020 WL 5026815 (S.D.N.Y. Aug. 25, 2020) ...................................4

*United States v. United Techs. Corp.*,
51 F. Supp. 2d 167 (D. Conn. 1999) ...................................................................................31

*United States v. Wells Fargo Bank, N.A.*,
972 F. Supp. 2d 593 (S.D.N.Y. 2013) ...................................................................................20

*Wexner v. First Manhattan Co.*,
902 F.2d 169 (2d Cir. 1990) ...................................................................................................21

**Statutes**

28 U.S.C. § 2415 ......................................................................................................................32

28 U.S.C. § 2415(b) ...................................................................................................................32

31 U.S.C. § 3729(a)(1)(A)-(B) ....................................................................................................3

31 U.S.C. § 3729(b)(1) ..............................................................................................................28

31 U.S.C. § 3730(b) .....................................................................................................................2

31 U.S.C. § 3730(b)(2) .................................................................................................................2

31 U.S.C. § 3731(b)(1) ..............................................................................................................29

31 U.S.C. § 3731(b)(2) ..............................................................................................................29

31 U.S.C. § 3733 ...........................................................................................................................2

False Claims Act ............................................................................................................... *passim*

**Other Authorities**

42 C.F.R. § 409.32(c) ...........................................................................................................23, 26

42 C.F.R. § 483.24 ...........................................................................................................22, 25, 26

72 FR 47130-01, 47180 (Aug. 22, 2007) ..................................................................................9

74 FR 22208-01, at 22220 (May 12, 2009) ...................................................................21

Fed. R. Civ. P. 8 ............................................................................................................1, 22

Fed. R. Civ. P. 9(b) ....................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ......................................................................................................1

*Jimmo v. Sebelius* Settlement Agreement Fact Sheet,
    https://www.cms.gov/Medicare/Medicare-Fee-for-Service-
    Payment/SNFPPS/Downloads/Jimmo-FactSheet.pdf ...........................................23

Defendants Montclair Care Center, Inc. d/b/a Emerge Nursing and Rehabilitation at Glen Cove ("Emerge"); East Rockaway Center LLC d/b/a Lynbrook Restorative Therapy and Nursing ("Lynbrook"); Excel at Woodbury Rehabilitation and Nursing, LLC ("Excel"); Long Island Care Center Inc. ("LICC"); Treetops Rehabilitation & Care Center LLC d/b/a North Westchester Restorative Therapy and Nursing Center ("North Westchester"); Sutton Park Center for Nursing & Rehabilitation, LLC ("Sutton Park"); Suffolk Restorative Therapy & Nursing, LLC d/b/a Momentum at South Bay for Rehabilitation and Nursing ("Momentum"); Oasis Rehabilitation and Nursing LLC ("Oasis"); Forest Manor Care Center, Inc. d/b/a Glen Cove Center for Nursing and Rehabilitation ("Glen Cove"); Surge Rehabilitation & Nursing LLC ("Surge"); and Quantum Rehabilitation & Nursing LLC ("Quantum") move this Court to dismiss the Government's Complaint in Intervention (Doc. 13) ("Complaint") under Rules 8, 9(b), and 12(b)(6).

## INTRODUCTION

For years, Emerge, Lynbrook, Excel, LICC, North Westchester, Sutton Park, Momentum, Oasis, Glen Cove, Surge, and Quantum have operated as separate, distinct, high-quality skilled nursing care facilities and individually provided care that resulted in exceptional outcomes for their residents. And yet, in its Complaint, the government has opted to sue these eleven independent facilities, two individuals, and a third party services company as one, alleging in conclusory and collective fashion that each violated the False Claims Act ("FCA") by submitting claims for services provided to residents who purportedly stayed too long or received too much therapy. Despite more than three years of investigation, the government fails to allege any specific facts that tie any of these defendants to FCA violations.

"One of the purposes of Rule 9(b) is to discourage the filing of complaints as a pretext for discovery of unknown wrongs." *Wood ex rel. U.S. v. Applied Rsch. Assocs., Inc.*, 328 F. App'x 744, 747 (2d Cir. 2009) (internal quotation and alterations omitted). The crux of the government's

Complaint is a series of disconnected, benign communications between two individuals who were not employees of any of the eleven facilities, and general, conclusory allegations relating to therapy services provided by "the facilities," a fictional group. Such allegations do not satisfy Fed. R. Civ. P. 9(b), which requires FCA violations be alleged with particularity. First, the government fails to allege the "who, what, where and when" of the alleged fraud for any particular defendant. Second, the government fails to sufficiently allege specific false claims submitted by these eleven, independent facilities. Third, the government fails to allege that any of the facilities acted with the requisite scienter. Finally, the government alleges violations beginning outside of the statute of limitations for such claims. The government's common law claims are similarly flawed.

## BACKGROUND

Professional relator Integra Med Analytics LLC ("Relator") brought this case under the *qui tam* provisions of the FCA on December 1, 2017. 31 U.S.C. § 3730(b).[1] Under the FCA, relators file suit under seal and allow the government to investigate the allegations and decide whether to intervene and take over the case. 31 U.S.C. § 3730(b)(2). During this time, the government may subpoena documents, issue interrogatories, and compel testimony from the defendants. 31 U.S.C. § 3733. In this case, the government requested multiple extensions of the seal deadline. After investigating for over three and a half years, the government filed its Complaint on June 2, 2021.

The Complaint provides scant allegations as to any of the individual defendants, contrary to what is required to plead an FCA claim. The government has pled no facts demonstrating that any facility acted to submit claims at all, let alone to *knowingly* cause *false* claims to be submitted.

---

[1] Integra Med Analytics is a data analytics firm that mines publicly available Medicare information to identify what it alleges are aberrant billing patterns. It has filed several other *qui tam* lawsuits, with two appellate courts affirming dismissal of such allegations for failure to state a claim. *See, e.g., U.S. ex rel. Integra Med Analytics, L.L.C. v. Baylor Scott & White Health*, 816 F. App'x 892 (5th Cir.), cert. denied, 141 S. Ct. 905, 208 L. Ed. 2d 458 (2020); *Integra Med Analytics LLC v. Providence Health & Servs.*, 854 F. App'x 840 (9th Cir. 2021).

The government's allegations can be broadly categorized into three groups: first, allegations generally referring to facilities, employees or personnel that do not refer to a specific facility; second, conversations between defendants Laufer and Whitney regarding facility operations that do not include anyone specific at any of the facilities; and third, a few directed, but still Rule 9 deficient, allegations relating to certain but not all of the facility defendants. None of these categories of allegations describe with the requisite specificity how any of the eleven, independent facilities participated in any conduct, scheme, or the submission of claims in violation of the FCA.

## LEGAL STANDARD

A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face …[, and] a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted). Although the court must accept all well-pleaded allegations in a complaint as true, the court need not accept "legal conclusions" or "unadorned, the-defendant-unlawfully-harmed-me accusation[s]". *Id.*

The FCA imposes liability to one who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government ... a false or fraudulent claim for payment or approval; … [or] knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A)-(B). To plead an FCA violation, "[i]n each case, there must have been a 'claim.' Either the claim itself, under subsection (a)(1), or a record or statement material to a claim, under subsection (a)(1)(B), must have been false or fraudulent. And the defendant must have known that the claim or statement was false or fraudulent." *U.S. ex rel. Pervez v. Beth Israel Med. Ctr.*, 736 F. Supp. 2d 804, 811 (S.D.N.Y. 2010).

Each of the claims in the Complaint is a fraud claim, subject to not only basic pleading requirements, but also the more stringent requirements of Rule 9(b) of the Federal Rules of Civil Procedure. *U.S. ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) ("*Fabula*"); *see also United States v. Spectrum Painting Corp.*, No. 19 CIV. 2096 (AT), 2020 WL 5026815, at *16 (S.D.N.Y. Aug. 25, 2020) ("Rule 9(b) applies to state common law claims where those claims are premised on a defendant's underlying fraudulent conduct, including the submission of fraudulent claims to government programs."). "The purpose of Rule 9(b) is threefold—it is designed to provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit," and courts "rigorously enforce these salutary purposes." *U.S. ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25-26 (2d Cir. 2016).

Rule 9(b) requires a plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* at 25; *U.S. ex rel. Gelbman v. City of New York*, 790 F. App'x 244, 247 (2d Cir. 2019) ("*Gelbman II*"). At the bare minimum, a plaintiff must plead the "who, what, when, where and how of the alleged fraud" to survive a motion to dismiss. *U.S. ex rel. Kester v. Novartis Pharmaceuticals Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014); *Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 301 (S.D.N.Y. 2013). The government fails to meet these requirements, and the Complaint should be dismissed.

**ARGUMENT**

The government's claims fail for multiple reasons. First, the government fails to plead facts with particularity that would establish an FCA violation by Emerge, Lynbrook, Excel, LICC, North Westchester, Sutton Park, Momentum, Oasis, Glen Cove, Surge, or Quantum. Second, the government fails to plead facts that would show that any of these defendants acted knowingly. Third, the government alleges claims that pre-date the six-year statute of limitations in this case. Finally, the government's common law claims in equity must also be dismissed because the government has an adequate remedy and the terms of a contract govern the dispute.

## I. The FCA Claims (Counts I and II) Are Not Pled with Particularity

Despite investigating for over three and a half years, the government has not sufficiently pled involvement by anyone at Emerge, Lynbrook, Excel, LICC, North Westchester, Sutton Park, Momentum, Oasis, Glen Cove, Surge, or Quantum in an alleged fraudulent scheme. "Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Meimaris v. Royce*, No. 18CIV4363GBDBCM, 2019 WL 4673572, at *5 (S.D.N.Y. Sept. 25, 2019). The Complaint here fails to do so. The majority of the allegations in the Complaint about facility conduct are broadly stated to apply to "facilities" and fail to allege specific actions by any single facility. Contrary to the government's conclusory claim of an overarching scheme, the Complaint admits that the facilities were operated by different personnel at different times. Compl. ¶¶ 51, 55.

Each of these eleven facilities operates independently of one another. Each has its own staff including administrators, rehabilitation directors, nurses, and other clinicians. The Complaint fails to justify the government's conclusion that Whitney, on behalf of Laufer, could or did control the actions of any individual staff members at any of these facilities. Although the Complaint alleges generally that Whitney "worked with [unidentified] employees of the Facilities" and

pressured unidentified administrators and rehabilitation directors to assign patients to higher levels of rehabilitation and extend their lengths of stay, it does not allege that any specific staff member at any particular facility actually extended a resident's stay or ordered excessive therapy in response to the alleged, unspecified pressure. *Id.* at ¶¶ 55-57.

To contend that every one of these facilities, and thereby, each of their unique treating physicians and therapists, knowingly submitted false claims for medically unnecessary skilled nursing services, the government must plead sufficient facts to satisfy the Rule 9(b) standard for *each facility*. *U.S. ex rel. Aryai v. Skanska*, No. 09 CIV. 5456 (LGS), 2019 WL 1258938, at *8 (S.D.N.Y Mar. 19, 2019) ("Because Rule 9(b) requires that a defendant receive fair notice of the fraud claim, 'a plaintiff alleging a claim sounding in fraud against multiple defendants under Rule 9(b) must plead with particularity by setting forth *separately* the acts complained of by *each defendant.*") (citations omitted). A few isolated allegations do not specifically plead a ten-year scheme against the defendants collectively, let alone individually as required by the FCA and Rule 9(b).[2] Because of the negligible facts in the Complaint detailing the who, what, when, where, and how of any alleged fraud at Emerge, Lynbrook, Excel, LICC, North Westchester, Sutton Park, Momentum, Oasis, Glen Cove, Surge, or Quantum, each should be dismissed.

## A. The Complaint Fails to Plead the "What, When, Where and How" with Particularity

The Complaint fails to plead with particularity the what, when, where, and how for any facility. Courts have consistently described Rule 9(b) as requiring the government to 1) specify the statements that the plaintiff contends are fraudulent, 2) identify the speaker, 3) state where and

---

[2] Additionally, attaching blank forms to the Complaint, as the Government has done, does not substantively add to the Complaint's bare-bones allegations or provide the required Rule 9(b) specificity. *See, e.g., Gelbman II*, 790 F. App'x at 248 & n. 2; *U.S. ex rel. Clausen v. Lab'y Corp. of Am.*, 290 F.3d 1301, 1306 (11th Cir. 2002); *U.S. ex rel. Jones v. Collegiate Funding Servs., Inc.*, 469 F. App'x 244, 253 (4th Cir. 2012).

when the statements were made, and 4) explain why the statements are fraudulent. *Ladas*, 824 F.3d at 25; *Gelbman II,* 790 F. App'x at 247. Allegations related to any facility are few and far between in the Complaint. The table below shows the scarce number of times these facilities are even referenced in the portion of the Complaint purportedly describing "Fraudulent Conduct":

| Facility | Total Number of Paragraphs | Paragraph(s) |
|---|---|---|
| Surge | 1 | 68 |
| Quantum | 1 | 66 |
| Sutton Park | 1 | 90 |
| Excel | 1 | 91 |
| Oasis | 1 | 88 |
| LICC | 2 | 91, 92 |
| Glen Cove | 2 | 68, 88 |
| Momentum | 2 | 74, 76 |
| North Westchester | 2 | 68, 88 |
| Emerge | 3 | 67-68, 71 |
| Lynbrook | 5 | 63–65, 74–75 |

"At most, the Complaint describes a series of seemingly unrelated practices [reports, and communications] . . . accompanied by conclusory labels describing the conduct as fraudulent." *U.S. ex rel. Scharff v. Camelot Counseling*, No. 13-CV-3791 (PKC), 2016 WL 5416494, at *4 (S.D.N.Y. Sept. 28, 2016) (dismissing FCA claims for failing to plead with particularity).

### 1. *Quantum and Surge*

The Complaint barely addresses Quantum and Surge at all. The only allegations related to these two facilities are secondhand—out-of-context communications from Laufer to Whitney noting that discharges were unusually high.[3] Nothing more. Laufer did not own any portion of

---

[3] Compl. ¶ 68 (noting that discharges at Surge "were high"); *id.* ¶ 66 ("Laufer noted that . . . discharges [at Quantum] was double what it had been the prior month."). These alleged communications relay facts about the business. Neither support a fraud claim.

Quantum and Surge until 2016, yet the Complaint lumps these two facilities in with nine others in claiming fraud going back to 2010. *See* Compl. ¶¶ 1, 50.

The Complaint identifies no specific patients, providers, services, or other conduct for Quantum or Surge, which is wholly insufficient under Rule 9(b). The Complaint cannot satisfy Rule 9(b) when "the only allegations implicating [Surge or Quantum] are allegations about Defendants *as a group*." *Aryai,* 2019 WL 1258938 at *8 ("Because the [complaint] contains no allegations of fraudulent conduct that are specific to [defendant], the claims against [defendant] are dismissed."); *see also Wood*, 328 F. App'x at 749-50 (holding that a complaint with "no specific allegations as to a given defendant's involvement, or with vague or generalized allegations as to a given defendant's involvement," is "plainly insufficient under Rule 9(b)") (internal citations omitted). Accordingly, Quantum and Surge must be dismissed.

## 2. Sutton Park

The government's allegations against Sutton Park fare no better. Although the government has included one patient example for Sutton Park, the deficiencies of which are discussed below in section I.C., the only allegation in the Complaint purportedly about fraud at Sutton Park is the recitation of one innocuous text message from April 4, 2018 between Whitney and an unnamed "Director of Rehabilitation" to "pls look at your RUGs billing," because "[s]ome of the trends with the books seem weird," and asking "why was that person only on RH." Compl. ¶ 90.

The plain wording of this one message, where Whitney expresses her perspective that a business metric looked "weird" does not support in the slightest an inference of fraud by Sutton Park. Asking an unidentified "Director of Rehabilitation" to look at billings does not plausibly plead any pressure, any wrongdoing, or any wrongful acts by Sutton Park. *See, e.g., U.S. ex rel. Lawson v. Aegis Therapies, Inc.*, No. CV 210-072, 2015 WL 1541491, at *13 (S.D. Ga. March 31,

2015) (tracking therapy utilization against benchmarks "establishes nothing more than the fact that [defendant] implemented prudent business practices.").[4]

### 3.  Excel

Similarly, in the only Excel-related allegation (from November 22, 2013), Whitney communicates to Laufer that rehabilitation levels at Excel and LICC are "well-balanced," but that she will "stay on top" of "room for improving and prolong dropping residents down a category." This allegation is nothing more than a discussion about business metrics with no connection to any actual fraudulent conduct at Excel. Compl. ¶ 91. The message was sent *eight years ago*, yet the government pleads nothing about Excel *since*, other than one isolated patient example discussed below from 2015, which was *six years ago*. Even if the text message had involved fraudulent conduct, it is not close enough in time to the patient example to infer a connection between the two. *See* Compl. ¶¶ 90-91. As a result, Excel should be dismissed.

### 4.  Oasis

In the Complaint's only allegation regarding conduct at Oasis, it alleges that "[a] therapist at Oasis . . . reported simply moving the arms and legs of patients who were not cognitively present," and then, in a conclusory fashion, asserts that these "activities . . . do not constitute skilled therapy and were performed simply to reach the requisite number of therapy minutes for the Ultra High Level." *Id.* ¶ 88. But the government fails to explain how such services are not and cannot be skilled services, or what rule prevents cognitively impaired people from receiving care. An individual who cannot move themselves may be subject to any number of adverse outcomes, such

---

[4] To the extent the government suggests it is improper for a health care entity to focus on revenue, that is incorrect. CMS has stated "we do not believe there is anything inappropriate, unethical, or otherwise wrong with hospitals taking full advantage of coding opportunities to maximize Medicare payments that is supported by documentation in the medical record." Changes to the Hospital Inpatient Prospective Payment Systems and Fiscal Year 2008 Rates, 72 FR 47130-01, 47180 (Aug. 22, 2007).

as a contractures or blood clots, if left unattended and immobile. They may be more prone to falls or atrophy. Whether a patient is cognitively present may have little to do with their physical condition. The government's unsupported statement that such treatment does not constitute skilled therapy is precisely the type of conclusory allegation that courts find insufficient under Rule 9(b). *See Ladas*, 824 F.3d at 26 (plaintiff's conclusory allegation that a product violated specification was insufficient because the alleged deficiency was not a contractual requirement and plaintiff failed to plead how the alleged deficiency led to violation of the contractual requirement).

The government also does not allege how such conduct led to a fraudulent claim. There is no allegation that anyone at Oasis knew that this unnamed therapist was engaged in the alleged conduct, which is not inappropriate at all, such that Oasis could be responsible for the knowing submission of a false claim. Accordingly, the Court should dismiss the Complaint against Oasis.

5. *LICC*

The Complaint contains only two passing references to LICC, neither of which are indicative of fraud. First, the government states that in November 2013, Whitney told Laufer that "she had visited Excel and LICC and the 'rehab levels' were 'well balanced' but there was 'room for improving and prolong dropping residents down a category' and she would 'stay on top of this." Compl. ¶ 91. Second, the Complaint alleges that in December 2015—two years later— Whitney told Laufer "she was at LICC and 'the whole team' was 'great' except for the Director of Rehabilitation." *Id.* ¶ 92. When Laufer replied that one year earlier Whitney had stated the Director of Rehabilitation was good, Whitney responded that "the prior year there were about fifty Medicare patients and the Director had been putting 'everyone on ultra appropriately' and keeping people 'the appropriate length of stay,' but now it was 'quite the opposite,' because the Director was 'discharging people too soon,' and her levels were 'all off.'" *Id.*

Neither of these references support any allegation of fraud and, in fact, suggest the opposite: Whitney's 2013 text states that rehab levels are "balanced," and her 2015 message addresses whether patients are being discharged too soon (a patient care issue). The plain meaning of her words is that Whitney believed what she doing was "appropriate." Moreover, both communications are entirely consistent with the ordinary, day-to-day discussions that one would expect of individuals working with skilled nursing facilities ("SNFs"). It is reasonable for individuals working with SNFs to take comfort that patients are being provided the care they need, and to follow patient discharges generally. Moreover, there is absolutely no allegation that anyone at LICC in a position to affect the amount of therapy or length of stay was ever made aware of Whitney's opinion, let alone conformed to unspecified pressure. These two statements, even if temporally or otherwise linked to an action or a false submission, which they are not, are in no way indicative of fraud or a scheme to provide unnecessary care. Critically missing from all of these references to LICC is any specific factual allegation as to who at LICC was engaged in the alleged fraud scheme, when and how the alleged fraud scheme was communicated to others at LICC, and what LICC did in response. Accordingly, LICC is entitled to dismissal.

### 6. Glen Cove

The allegations against Glen Cove similarly fall short of Rule 9(b). Like LICC, the Complaint includes only two purportedly factual references to Glen Cove. First, in October 2017, Laufer texted Whitney that Glen Cove, among others, "has kinda sucked in" discharges. Compl. ¶ 68. Second, an unidentified employee allegedly told the government that, during an unspecified time period, patients were put on Ultra High therapy who were unable to tolerate it, *id.* ¶ 88.

These allegations lack the particularly required by Rule 9(b). There is nothing improper about individuals that work with a SNF tracking patient discharges. *See Lawson*, 2015 WL 1541491, at *13 (tracking therapy utilization against benchmarks "establishes nothing more than

the fact that [defendant] implemented prudent business practices."). And, while the government alleges that an unidentified "employee" reported improper usage of Ultra High therapy, there is no allegation as to *when* this occurred, *who* provided and received this direction, *what* anyone at Glen Cove did in response, and how many patients purportedly received an unnecessary or improperly high level of care. Without adequate specificity, the Complaint falls short of the requirements of Rule 9(b), and Glen Cove is entitled to dismissal.

### 7. *Momentum*

At Momentum, the Complaint alleges that an unnamed "employee reported that . . . patients were kept in wheelchairs so they would not progress." Compl. ¶ 74. Like many others in the Complaint, this isolated statement is fraught with ambiguity. It does not identify the observer's qualifications or basis for the conclusion. It fails to allege what payors the residents used, or how keeping patients in wheelchairs led to the submission of false claims. It provides no time frame during which this is alleged to have occurred. It does not identify the employee, his or her position, whether he or she worked at Momentum, or, if not, how the person is familiar with Momentum's wheelchair usage. There is also no allegation that anyone at Momentum knew that this unknown employee (or any other) was engaged in the purported misuse of wheelchairs.

The only other factual allegation in the Complaint relating to Momentum is innocuous. In a June 26, 2017 text message, Laufer mentioned to Whitney that discharge numbers, a reasonable business metric to track, were "hig[h] for a few months," to which Whitney responded that she was working on reducing discharges but that Momentum had a particularly difficult patient population. As an initial matter, no Momentum employees participated in the conversation, and there is no indication that any Momentum employee became aware of the conversation or changed their conduct as a result, let alone engaged in any fraudulent conduct as a result of the conversation. In any event, even when continued care is medically necessary, patients may not want to stay in a

SNF, and there is nothing wrong with wanting discharges to be appropriate and for facilities to learn how to deal with patients such that they do not discharge against medical advice. These allegations do not indicate fraudulent conduct. As such, dismissal is warranted.

### 8. *North Westchester*

At North Westchester, the government reports a single allegation from yet another unknown therapist who stated that she played checkers with residents to fill therapy minutes. Compl. ¶ 88. There is no allegation that anyone at North Westchester instructed the therapist to play checkers, much less that anyone at North Westchester was aware that the therapist engaged in this behavior. In any event, this odd allegation, disconnected in time and scope, has nothing to do with the government's FCA theories—*i.e.* that the collective facilities prolonged patients' length of stay or attributed patients to higher RUG levels than were medically necessary. The only other factual allegation in the Complaint relating to North Westchester involves an October 18, 2017 text message from Laufer to Whitney stating that the facility could "do waaay better here." *Id.* ¶ 68. The government fails to include the rest of the context of the discussion, choosing instead to editorialize, but regardless—there are no North Westchester employees involved in the message chain, and there is no allegation that Laufer's desire for North Westchester to "do waaay better" was conveyed to anyone at North Westchester or resulted in any specific action or the submission of false claims. The Court should dismiss North Westchester.

### 9. *Emerge*

There are only two factual allegations in the Complaint about Emerge. The first is that in October 2017 and March 2018, Whitney and Laufer, neither of whom are Emerge employees, communicated about patient discharges at Emerge. Compl. ¶¶ 67-68. The second allegation regarding Emerge is that in March 2019, the Director of Rehabilitation services at Emerge (the only Emerge employee identified in the Complaint) advised Whitney that two patients would be

discharged earlier than the Director had anticipated. *Id.* ¶ 71. Neither insinuates any wrongdoing, let alone meets the heightened standards of Rule 9(b). The chatter between Whitney and Laufer did not involve anyone from Emerge, and Emerge's Director of Rehabilitation reporting to Whitney that some patients would be leaving sooner than anticipated is a completely normal communication. The Complaint should be dismissed as against Emerge.

    10. *Lynbrook*

  At Lynbrook the government alleges that the Director of Rehabilitation did not allow walkers in resident rooms "despite the fact that the walkers would increase the patient's ability to ambulate…" *Id.* ¶ 74. But an equally if not more plausible explanation exists for this purported rule—nursing home patients are prone to falling, and unsupervised use of a walker in a resident's room may present unacceptable fall risk. Likewise, the walker itself may be a tripping hazard. The Court should "not accept the conclusion that defendant engaged in unlawful conduct when its actions are in line with lawful rational" purposes or "plausible alternative[s] (and legal) explanation[s]." *See Integra Med Analytics LLC v. Providence*, 854 F. App'x at 844-45.

  Other allegations against Lynbrook include communications between Laufer and Whitney, discussed across three paragraphs, after the administrator of Lynbrook reported admission, discharge, and census information to Laufer by text message. Compl. at ¶¶ 63-65. "[E]agerness" to "bail [one's business] out of financial trouble" is not enough to demonstrate wrongdoing. *See U.S. ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency*, 530 F.3d 980, 984 (D.C. Cir. 2008). In any event, Lynbrook employees did not participate in these conversations. There is also no indication that anything discussed between Laufer and Whitney influenced Lynbrook employees to take any action, let alone to submit false claims.

  Lastly, the government cites another isolated and out of context conversation between Laufer and Whitney from July 11, 2016 where they discussed potential care programs that might

attract patients to Lynbrook who needed extensive therapy services. Compl. ¶ 75. No Lynbrook employees were involved in this discussion, and there is nothing inappropriate about creating specialty programs to attract particular residents. Lynbrook is proud of its ability to offer specialized services, including post coronavirus rehabilitation, pulmonary, and amputee rehabilitation programs among others.

### 11. Purported Pressure by Laufer

The foregoing isolated incidents do not identify the who, what, when, where, and how of alleged FCA violations against any of these facilities—particularly so where the government has not plausibly identified a time period in which they took place, the people involved, or how they affected claims to the government. Perhaps recognizing that it has alleged almost no facts that would support its claims that any of the facilities violated the FCA, the government pleads general allegations regarding Laufer and Whitney's purported pressure on facility personnel to extend stays and order excessive therapy.

But such alleged pressure must actually have been applied to someone at each of the eleven, independent facilities and actually led to someone at each of these separate facilities acting in accordance with the pressure to result in even the possibility of false claims being submitted to the United States. *See U.S. ex rel. Alt v. Anesthesia Servs. Assocs., PLLC*, No. 3:16-CV-0549, 2019 WL 7372511, at *7 (M.D. Tenn. Dec. 31, 2019). There are no allegations making any such connection here. Nor are there allegations explaining who or how anyone at any facility, let alone prescribing doctors and treating therapists, was actually pressured. In *Alt*, addressing similar conclusory allegations of "pressure," the court granted defendant's motion to dismiss based on the complaint's failure to adequately allege causation:

> The "how" relevant to the claims against Smith asks "how did Smith cause the providers to submit false claims?" The Consolidated Complaint purports to answer this question very succinctly: Smith

> "pressured" the providers. The Consolidated Complaint includes no
> explanation of how he pressured them. The court finds that this
> assertion does not satisfy Rule 9(b).

*Id.* At a skilled nursing and rehabilitation facility, to provide more therapy than necessary, a

therapist or physician must write an order for more therapy than necessary. The government never

alleges that purported pressure by Laufer and Whitney ever caused that to happen at Emerge,

Lynbrook, Excel, LICC, North Westchester, Sutton Park, Momentum, Oasis, Glen Cove, Surge,

or Quantum, and accordingly each and every facility should be dismissed.

### 12.    *Generalized Allegations About "Facilities"*

The majority of the allegations about facility conduct are broadly stated to apply to

"facilities" rather than specific actions by any single facility. Contrary to the government's claim

of an overarching scheme, the Complaint includes allegations demonstrating that the facilities were

operated by different personnel at different times. Compl. ¶¶ 51, 55. The government also alleges

that "Tami Whitney, a Paragon employee, oversaw rehabilitation therapy for all of the Facilities,"

however "each of the Facilities was overseen by an administrator" and that "[t]he Facility's MDS

coordinator and the directors of rehabilitation, social services, admissions, diet, nursing, food

service, maintenance, and housekeeping all reported to the administrator." Compl. ¶ 51.

As alleged, each facility had its own staff, and there are insufficient allegations to conclude

that Whitney controlled the actions of any one of these staff members. The Complaint goes on to

allege that once a patient was admitted to the facility, the rehab department evaluated the individual

and established a plan of care. *Id.* at ¶ 55. Although the Complaint alleges, generally, that Whitney

pressured unidentified administrators and rehabilitation directors to assign patients to higher levels

of rehabilitation and extend their lengths of stay, there are no allegations that any specific

administrator or therapy manager at any of the separate, eleven facilities actually extended a

resident's stay or ordered excessive therapy in response to the alleged pressure. *Id.* at ¶¶ 55, 56.

There is not even an allegation addressing the role of the administrator or director of therapy in the process of assignment of therapy levels, treatments, and submission of claims.

The government often artfully pleads facts to give the impression of specificity when, in reality, it makes conclusory allegations that do not support a claim against any individual facility. For example, the Complaint alleges that "Whitney worked with employees of the Facilities" to devise strategies to keep residents in facilities "*including* intentionally limiting patients' ability to function independently and using challenging balance tests in misleading ways to artificially prolong patient stays." *Id.* at ¶ 57 (emphasis added). However, the Complaint does not allege to which facilities this allegation relates, the time frame, or with whom Whitney allegedly worked at any facility. By using the term "including" when alleging specific actions, the government obscures whether any specific facility is accused of this activity. Thus, no specific facility is on notice of whether these allegations apply to it.

A similar artifice is used in Paragraph 70, where the government alleges that Whitney required each facility to prepare a monthly summary of discharges and "[a]ccording to employees of several of the Facilities, Whitney frequently challenged discharge determinations when a Medicare patient was set to be released before being at the facility for at least 85 or 90 days…" *Id.* at ¶ 70. Again, the Complaint identifies no specific facility, employee, or patient. It concedes that Whitney would only "sometimes" overrule employees who believed patients were ready for discharge. The government provides no context regarding whether Whitney is alleged to have overruled clinicians or non-clinicians, or whether the appropriate clinician decision makers agreed or disagreed with Whitney's assessment. It likewise does not allege in even conclusory fashion that Whitney's assessment was not lawful and appropriate, let alone provide the necessary detail. This is insufficient and these separate, eleven facilities are entitled to dismissal.

## B. The Complaint Fails to Plead the "Who" with Particularity

The Complaint also fails to allege any specific person at any facility who played any role in an alleged fraudulent scheme. The Complaint does not even allege the most basic facts about which defendants are accused of submitting false claims, which are accused of causing false claims to be submitted, and which are accused of creating or using a false record or statement material to claims submitted to the government.[5] Rule 9(b) is not satisfied "by a complaint in which defendants are clumped together in vague allegations" like they are here. *Polar Int'l. Brokerage Corp. v. Reeve*, 108 F. Supp. 2d 225, 237 (S.D.N.Y. 2000) (citation omitted). Instead, the Complaint makes vague references to persons at the individual facilities such as "Facility employees," "employees at several facilities," and "Facility staff." *See, e.g.*, *id.* ¶¶ 1, 57, 58, 60, 70, 71, 73, 82, 86. In most instances, the Complaint does not even state at which facility these individuals are employed.[6] Because of the lack of specific facts in the Complaint, it "leave[s] unclear who was involved in submitting the [alleged false] claims" at the individual facilities, further running afoul of Rule 9(b). *New York ex rel. Khurana v. Spherion Corp.*, No. 15 CIV. 6605 (JFK), 2016 WL 6652735, at *16 (S.D.N.Y. Nov. 10, 2016) (finding Rule 9(b) is not satisfied because the allegations left "unclear who was involved in submitting the claims").

---

[5] The Complaint further does not specify whether it is pleading an express or implied certification claim, which is itself reason for dismissal. *See U.S. ex rel. Gelbman v. City of New York*, No. 14-CV-771 (VSB), 2018 WL 4761575, at *6 (S.D.N.Y. Sept. 30, 2018) ("*Gelbman I*"), *aff'd by Gelbman II* ("As an initial matter, the SAC does not distinguish between the legal standards governing implied and express certifications, nor does it specify which theory is being pursued….This lack of clarity alone is a basis to dismiss the legally false claims.").

[6] No employees are identified by name, and Complaint only references a few employees by title. Even those identified by title are alleged only to have reported standard business metrics that are not evidence of an FCA violation. *See Lawson*, 2015 WL 1541491, at *13 (tracking therapy utilization against benchmarks "establishes nothing more than the fact that [defendant] implemented prudent business practices."); *U.S. ex rel. Ruscher v. Omnicare*, No. 4:08-cv-3396, 2015 WL 5178074, at *28 (S.D.Tex. Sept. 3, 2015) ("evidence of a profit motive . . . is not equivalent to evidence of a knowing intention to violate the FCA").

There are no allegations that answer the basic "who?" questions that are fundamental when the government alleges that someone knowingly submitted false claims. Rather, the Complaint appears to accuse every defendant of both knowingly presenting false claims to the United States and knowingly causing the submission of false claims to the government. Such internal inconsistency should be reason alone to find that the Government has failed to satisfy the particularity to demand of Rule 9(b).

### C.  The Sample Claims Fail to Satisfy Rule 9(b)

The government also alleges that each and every one of the facility defendants were collectively engaged in a ten-year fraud scheme potentially implicating thousands of Medicare claims, yet provides NO exemplar patient claims for Surge or Quantum, and only one exemplar claim each for Emerge, Lynbrook, Excel, LICC, North Westchester, Sutton Park, Momentum, Oasis, and Glen Cove. These barebones allegations do not plausibly support the government's conclusion that that each facility engaged in a decade of fraud, let alone caused false claims to be presented to the government, particularly where, as is the case here, each facility is a separate and distinct defendant that has individually cared for thousands, if not tens of thousands, of patients in the span of ten years. Even if there was enough detail provided about an alleged scheme, which there is not, Rule 9(b) is not satisfied by detailing a fraudulent scheme and concluding, that as a result of the fraudulent scheme, false claims must have been submitted. *See United States v. Novartis Pharm. Corp.*, No. 13-CV-3700, 2020 WL 1436706, at *3-5 (S.D.N.Y. Mar. 24, 2020). This is particularly true, when as is the case here, the Complaint does not make even a basic attempt to link the conversations of non-employees to the actions of employees, let alone to the submission of false claims. When exemplar claims are included, they are often separated in time from the alleged statements.

Although the government may use exemplar claims under certain circumstances, the government must still include claims that are representative of the broader class of fraudulent claims in the case and plead specific facts alleging that such claims are false with the requisite particularity to meet Rule 9(b)'s heightened pleading standard for fraud. *See United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 616 (S.D.N.Y. 2013) (examples of claims "'will support more generalized allegations of fraud only to the extent that [they] are representative samples of the broader class of claims.'") (quoting *United States v. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 510 (6th Cir. 2007)). The government does not even attempt to meet this standard with respect to Surge and Quantum, and the single examples provided for each of Emerge, Lynbrook, Excel, LICC, North Westchester, Sutton Park, Momentum, Oasis, and Glen Cove fail to meet this standard.

The point of requiring a heightened pleading standard for fraud is to put the defendant on notice by "[providing] the defendant with enough details to be able to reasonably discern which of the claims it submitted are at issue" and to "reasonably identify particular false claims." *Kester*, 23 F. Supp. 3d at 258, 260 (internal quotation omitted). Here, the government fails to meet the Rule 9(b) particularity requirements, not only because the single examples per facility are not representative of the entire ten-year scheme alleged for each facility, *see Wells Fargo*, 972 F. Supp. 2d at 617 (noting that one of the factors that made the government's ten customer examples representative of the entire scheme alleged was that the examples were taken from throughout the time period of the scheme), but also because the examples fail to identify the allegedly unnecessary services at each facility. *Meimaris*, 2019 WL 4673572, at *5 ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.").

The Complaint merely alleges in a conclusory fashion that the patients either received excessive amounts of therapy, excessive levels of therapy, or both without providing adequate detail of how or why the care provided allegedly violated some law or standard. *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) (noting that claims of fraud cannot be "base[d] . . . on speculation and conclusory allegations"); *see also U.S. ex rel. Grubea v. Rosicki, Rosicki & Assocs., P.C.*, 318 F. Supp. 3d 680, 697 (S.D.N.Y. 2018) (finding three examples of fraudulent conduct insufficient to plead an FCA claim because the examples were "entirely conclusory"). Rather than plausibly and specifically pleading its case, the Government focuses on what patient records purportedly do not show and improperly attempts to shift the burden to the defendants to demonstrate the validity of every claim submitted. *See U.S. ex rel. Crews v. NCS Healthcare of Illinois, Inc.*, 460 F.3d 853, 857 (7th Cir. 2006).

As detailed below, the government argues that services should be cut off while acknowledging they were effective in improving the residents' condition, apparently sacrificing patient well-being for lower costs. This view is diametrically opposed to CMS statements that reimbursement that rewards providers who provide services is necessary to prevent under-utilization. Medicare Program; Prospective Payment System and Consolidated Billing for SNFs for FY 2010; Minimum Data Set, Version 3.0 for SNFs and Medicaid Nursing Facilities, 74 FR 22208-01, at 22220 (May 12, 2009) ("separating payment from the actual provision of services, the system, and more importantly, the beneficiaries would be vulnerable to underutilization.")

### 1.    *Quantum and Surge*

Similar to its complete lack of factual allegations against Surge and Quantum, the Complaint also fails to provide any patient example for either facility. This alone is grounds for the Court to dismiss these two defendants. *See Wood, Inc.*, 328 F. App'x at 750 (affirming dismissal where "the Amended Complaint does not cite to a single identifiable record or billing

submission they claim to be false, or give a single example of when a purportedly false claim was presented for payment by a particular defendant at a specific time.") (internal quotation omitted).

      2.    *Sutton Park*

The only patient example provided for Sutton Park pre-dates the only factual allegation against Sutton Park. The only text message purporting to be evidence of fraud at Sutton Park is dated *from 2018*, whereas "Patient C" was a resident *in 2016*. It is not plausible to conclude, as the government does here with no support, that an alleged scheme not even discussed until one isolated text message from 2018 is on display in the records of one patient from 2016. *See* Compl. ¶¶ 90, 97(c). These references fail to plead a causative link between any alleged unnecessary or unreasonable treatment provided to Patient C, specific dates of any unnecessary treatment (as opposed to dates of service), any facts (other than speculation) to support how the treatment provided to Patient C was unnecessary/unreasonable/false. This cannot pass muster.

The government merely alleges that for Patient C, Sutton Park "billed Medicare for a 99-day stay at the Ultra High level," and that the level/length of therapy were unjustified and excessive. *Id.* ¶ 97(c). Even if true, a 99-day stay at ultra-high level is consistent with legal behavior, and the government's conclusion of wrongdoing does not even satisfy Rule 8's plausibility standard. *See Grubea*, 318 F. Supp. 3d at 697 (finding that the examples of purported fraud were insufficient because they were "entirely conclusory"). The lawful explanation here is that Patient C required this level of therapy, and the Court should not accept the government's conclusions regarding unlawful conduct when an innocent explanation is equally plausible. *See Iqbal*, 556 U.S. at 682; *see also Integra Med Analytics LLC*, 854 F. App'x at 845.

A SNF "must provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being, consistent with the resident's comprehensive assessment and plan of care." 42 C.F.R. § 483.24. The government pleads no facts

demonstrating Patient C received anything other than necessary and reasonable care, nor does the government identity a Sutton Park clinician and/or person who: (i) ordered/provided the therapy knowing it was unreasonable and/or unnecessary; (ii) falsified/lied on any documents or records on a particular date; or (iii) signed particular claim form, or made a specific representation about, goods/services, and/or omitted any type of non-compliance.

The government also alleges that Sutton Park failed to reduce/discontinue the patient's therapy minutes after Patient C "regained function," and that the "medical records do not reflect any attempt to customize the amount of therapy Patient C received." Compl. ¶ 97(c). Again, the government pleads lawful behavior. When assessing whether a skilled service is reasonable or necessary:

> The restoration potential of a patient is not the deciding factor in determining whether skilled services are needed. Even if full recovery or medical improvement is not possible, a patient may need skilled services to prevent further deterioration or preserve current capabilities.

42 C.F.R. § 409.32(c); *see also Jimmo v. Sebelius* Settlement Agreement Fact Sheet, https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/SNFPPS/Downloads/Jimmo-FactSheet.pdf. The government does not allege that skilled services were not needed to "prevent further deterioration or preserve current capabilities," **only that Sutton Park's rehabilitation worked** and that Patient C "regained function." The government's allegations about Patient C do not demonstrate a plausible claim, and Sutton Park should be dismissed.

### 3. *Excel and Oasis*

The government claims that Defendants violated the FCA by both (1) placing patients on higher levels of therapy than medically necessary, and (2) prolonging patients' stay longer than medically necessary. *See* Compl. ¶ 1. Yet the patient examples for Excel and Oasis do not contain

any allegations that they prolonged the stays of the patients beyond what was medically necessary, and state only in conclusory fashion that the care was medically unnecessary. *Id.* ¶ 97(g)-(h).

Notably, the Excel patient, "Patient H," was only on service for approximately one month between May 11, 2015 and June 15, 2015, *Id.* ¶ 97(h), which alone is insufficient to be representative of a purported ten-year fraud scheme. For Patient H, the government objects that "the Facility billed for physical and occupational therapy at the Ultra High level for the full length of the patient's stay, despite Patient H's difficulty following commands," but the government provides no support for its position, nor does it explain why having difficulty following commands made the therapy unnecessary or inappropriate, let alone fraudulent. *Id.* It goes on to state in a conclusory fashion that "the therapy notes do not identify skilled activities or exercises necessary to support the minutes of therapy provided." However, the Complaint does not identify what is stated in the therapy notes and how they fail to identify skilled activities or exercises that the government alleges are necessary, and as such, the Court should dismiss Excel. *Id.*

The Oasis patient example is similarly deficient, as the government complains in conclusory fashion only that "Patient G's medical records do not justify the amount of therapy for which Oasis billed Medicare" because the patient was doing *too well*. *Id.* ¶ 97(g) ("Patient G was able to perform basic mobility tasks and most activities of daily living with little to no assistance and the patient's medical records did not identify complex impairments or deficits that would justify daily therapy services."). Moreover, this one patient example where the patient was much improved by therapy has no connection, and is, in fact, contradictory to, the only factual allegation in the Complaint lodged against Oasis by the government—that a therapist "reported simply moving the arms and legs of patients who were not cognitively present." This is insufficient to state an FCA claim against Oasis.

### 4. North Westchester

Akin to the example for Sutton Park, the government's allegations about "Patient D," a resident at North Westchester from March 9, 2018 through June 15, 2018, are too conclusory to plead that North Westchester submitted false claims. The government implies that ultra-high therapy was inappropriate because the patient had chronic obstructive pulmonary disease and poor endurance. Compl. ¶ 97(d). But, in the very next sentence, the government acknowledges that the patient quickly regained function from the ultra-high therapy it claims was not necessary. The government then says that the ultra-high therapy continued for the patient's full length of stay but does not explain why it was not necessary, or how the *Jimmo* standard regarding the use of therapy for maintenance and to prevent decline does not apply. There are no allegations that North Westchester was not providing Patient D the care needed to "attain or maintain the highest practicable physical, mental, and psychosocial well-being." *See* 42 C.F.R. § 483.24. As a result, the government's allegations are deficient, and North Westchester is entitled to dismissal.

### 5. Momentum

The single patient example for Momentum does not contain allegations that Momentum billed Medicare for higher levels of therapy than were medically necessary. Compl. ¶ 97(f). Merely stating that the therapy notes are insufficient for a single patient does nothing to help Momentum reasonably "identify particular false claims for payment that were submitted to the government'" over the course of ten years. *See Kester*, 23 F. Supp. 3d at 260. This absence of specificity is inexplicable because the government has the medical records and should be able to plead facts regarding why it believes the therapy notes do not support the care that was billed.

Moreover, the allegations the government makes are not indicative of an FCA violation. The government would have had Momentum give up on "Patient F" rather than provide the patient the care required by law, merely because Patient F was allegedly a tough patient who was

"noncompliant with treatment." Compl. ¶ 97(f). As noted above, [t]he restoration potential of a patient is not the deciding factor in determining whether skilled services are needed," and the government fails to plead facts—rather than conclusions—that Patient F's care was anything but reasonable and necessary. *See* 42 C.F.R. § 409.32(c).

### 6. Lynbrook

The allegations regarding "Patient B" at Lynbrook have no plausible connection to the alleged scheme pleaded by the government elsewhere in the Complaint. Patient B was treated at Lynbrook from December 27, 2012 through April 6, 2013, but there are *no factual allegations whatsoever in the Complaint from this time period*, let alone factual allegations specific to Lynbrook. The earliest factual allegation in the Complaint involving Lynbrook is a July 11, 2016 conversation between Laufer and Whitney about business metrics.

Moreover, the government's claim that therapy should have been discontinued once "Patient B" reached "his/her prior level of function" is erroneous as a matter of law. *See* 42 C.F.R. § 483.24. Patient B was entitled to receive care to attain the "highest practicable … well-being." *Id.* Because the government fails to plead sufficient facts demonstrating that the care Lynbrook provided to Patient B fell short of this standard or was part of some scheme for which there are no allegations until four years after the patient received services, Lynbrook is entitled to dismissal.

### 7. LICC

The government's single patient example for LICC is also deficient. The government's alleged reason that therapy was inappropriate for "Patient A"—because the patient has "significant cognitive deficits"—is not only erroneous as a matter of law, but also, does a shocking disservice to the patient. Compl. ¶ 97(a). Even patients with cognitive deficits may need and benefit from therapy. Much of the government's grievance regarding LICC's treatment of the patient revolves around alleged discrepancies in the bookkeeping relating to the therapy provided. There is no

authority holding that a facility keeping allegedly "poor records" excuses the government from having to plead fraud with particularity as required by Rule 9(b). *Crews*, 460 F.3d at 857.

### 8. *Glen Cove*

The one Glen Cove patient example included in the Complaint received care between January and April 2015. But, the Complaint fails to plead any facts to suggest that Glen Cove, or anyone employed by Glen Cove, was participating in a scheme to provide unskilled, unreasonable, or unnecessary patient care in early 2015, or that anyone directed such conduct at that time. Indeed, even the standard, course-of-business communications between Laufer and Whitney cited in the Complaint relating to Glen Cove post-date April 2015 by years. Compl. ¶¶ 68, 88. As such, the Complaint fails to allege the specific facts required to support that this one patient was part and parcel of a fraud scheme at Glen Cove, so Glen Cove should be dismissed.

### 9. *Emerge*

The government alleges that Emerge was involved in a ten-year scheme to submit false claims and identifies one example claim—a patient that the government asserts, in conclusory fashion, should have been placed on a lower level of therapy than they received. A single example cannot be representative of what the government contends was a decade long scheme of submitting false claims. The government's conclusory assertion—made without meaningful factual support—that a patient received more therapeutic services than the government believes were necessary does not state a claim for anything. *See Lawson*, 2015 WL 1541491, at *12-13. Emerge is aware of no FCA case that has found a single example claim to meet the requirements of Rule 9(b).

The example Emerge claim is further deficient because it is disconnected from the substantive allegations in the Complaint. Whereas the patient example is from 2013, Compl. ¶ 97(I), the limited allegations in the Complaint about Emerge address events or communications taking place October 2017 or later, *id.* ¶¶ 67-68, 71. Not only does the patient example pre-date

any allegations regarding Emerge by four years, it also pre-dates, by several years, *any* substantive allegations in the Complaint. As the Complaint acknowledges, Laufer did not own any part of Emerge until 2018. *Id.* ¶ 50. The government's claim in footnote 4 that Laufer was "closely involved in the operation" of Emerge before 2018 is conclusory. There is nothing in the Complaint indicating that Laufer had any involvement with Emerge until October 2017, at the earliest. There is certainly nothing demonstrating that this one claim for an Emerge patient from 2013 was part of a fraudulent scheme. As such, the Court should dismiss Emerge from this litigation.

### D.    The Government Fails to Plead Scienter

In addition to the lack of particular allegations of conduct involving Emerge, Lynbrook, Excel, LICC, North Westchester, Sutton Park, Momentum, Oasis, Glen Cove, Surge, and Quantum, the Complaint is devoid of specific allegations that any facility acted with the requisite scienter. To violate the FCA, a defendant must "knowingly" submit or cause to be submitted false or fraudulent claims. Where the government does not allege actual knowledge, it must at least allege sufficient facts about each defendant indicating that it acted "in reckless disregard," 31 U.S.C. § 3729(b)(1), which means conduct that is "highly unreasonable and which represents an extreme departure from the standards of ordinary care." *Grubea,* 318 F. Supp. 3d at 694 (quoting *Chill v. Gen. Elec. Co.,* 101 F.3d 263, 269 (2d Cir. 1996)). The FCA's scienter requirement is "rigorous," and a complaint must "allege facts that give rise to a strong inference of fraudulent intent." *Id.* As explained above specifically as relevant to each facility, the Complaint does not even identify anyone at Emerge, Lynbrook, Excel, LICC, North Westchester, Sutton Park, Momentum, Oasis, Glen Cove, Surge, and Quantum with fraudulent intent. This Complaint fails to plead any facts that would give rise to a strong inference that any facility it was submitting false claims to Medicare, much less acted with reckless disregard for such alleged conduct, and, accordingly, the Court should dismiss each facility.

## II.     FCA Claims Pre-dating December 1, 2011 Are Time-barred

In its Complaint, the government alleges that "[f]rom at least 2010 through September 2019," all of the defendants, with no factual differentiation, purportedly engaged in fraudulent conduct. Compl. ¶ 1. Certain of the facilities were not open or even owned by Laufer in 2010, but in any event, to the extent the government alleges FCA claims prior to December 1, 2011 against any facility, such claims are time-barred and should be dismissed with prejudice. Under the FCA, a civil action may not be brought more than six years after the date on which the violation is committed. 31 U.S.C. § 3731(b)(1).[7] Additionally, there are no medical records, statements attributed to any person, or any other specific allegations in the Complaint which pre-date December 1, 2012.

"The statute of limitations runs from the date the claim is made, or, if the claim is paid, on the date of payment, until the complaint is filed." *U.S. ex rel. Kolchinsky v. Moody's Corp.*, 162 F. Supp. 3d 186, 198 (S.D.N.Y. 2016) (internal quotations and citations omitted). Relator filed its complaint on December 1, 2017. Doc. 1 & 14. Consequently, under the six-year FCA statute of limitations, the government cannot state a claim based on allegations regarding supposed conduct predating *December 1, 2011*, and as such the Court should dismiss the Complaint to the extent it depends upon allegations of conduct and claims submitted or paid before that date. Any claims predating December 2012 should likewise be dismissed because there is not a single fact to support the claims alleged in the Complaint.

---

[7] Under some circumstances the FCA's statute of repose allows the government to pursue claims for up to ten years, but only if the government pursues the claims within three years of "when facts material to the right of action are known or reasonably should have been known" by the government. 31 U.S.C. § 3731(b)(2). In this case, the professional Relator brought its complaint exclusively based on publicly available claims information, which was available to the government even before Relator brought its case. *See* Doc. 1 & 14, ¶ 32 ("To detect patterns of fraud at Laufer facilities, Relator employed unique algorithms and statistical processes to analyze SNF Medicare claims data obtained from CMS"). The ten-year statute of repose is thus not applicable in this case.

### III. The Government's Unjust Enrichment and Payment by Mistake Claims (Counts III and IV) Fail as a Matter of Law and Should Be Dismissed with Prejudice

#### A. The Government's Unjust Enrichment and Payment by Mistake Claims Are Duplicative and Fail for the Same Reasons as the FCA Claims

For the reasons set forth above with respect to the Government's FCA claims, the unjust enrichment and payment by mistake claims must also be dismissed for failure to plead with particularity. Rule 9(b) applies where, as is the case here, unjust enrichment and payment by mistake are based on alleged fraud. *See Kester*, 23 F. Supp. 3d at 269 ("The heightened pleading standard of Rule 9(b) applies to state common law claims where those claims are premised on a defendant's underlying fraudulent conduct, including the submission of fraudulent claims to government programs.").

Moreover, the Court should dismiss the government's claims of unjust enrichment and payment by mistake because the FCA provides an adequate legal remedy. The government's theories of unjust enrichment and payment by mistake would be appropriate "only if no adequate legal remedy exists." *United States v. Job Res. for Disabled*, No. 97 C 3904, 2000 WL 562444, at *4 (N.D. Ill. May 9, 2000), reconsidered in part on other grounds 2000 WL 1222205 (N.D. Ill. Aug. 24, 2000). Here, the FCA is "an adequate legal remedy to protect the federal government's interests." *Id.*; *see also United States v. Hydroaire, Inc.,* No. 94 C 4414, 1995 WL 86733, at *6 (N.D. Ill. Feb. 27, 1995) (dismissing the government's claims for unjust enrichment and mistake of fact "[i]n light of the existence of adequate remedies" under the FCA, breach of contract, and fraud theories). Consequently, the government's unjust enrichment and payment by mistake claims are duplicative and due to be dismissed.

**B.** **The Government's Unjust Enrichment and Payment by Mistake Claims Should Be Dismissed Because a Contract Covers the Subject Matter in Dispute**

Alternatively, even if the Court finds that the government may concurrently bring FCA and unjust enrichment and payment by mistake claims based on the same facts and seeking the same relief, the Court should nonetheless dismiss the government's claims of unjust enrichment and payment by mistake because they sound in quasi-contract and the Medicare Provider Agreement is an express contract between the parties. "[F]ederal courts have maintained that there can be no claim for unjust enrichment [or payment by mistake] when an express contract exists between the parties." *United States v. Bollinger Shipyards, Inc.*, No. 12-920, 2013 WL 393037, at *15 (E.D. La. Jan. 30, 2013)*; see also United Techs. Corp.*, 51 F. Supp. 2d 167, 200 (D. Conn. 1999) ("The . . . amended complaint state[s] common law, quasi-contractual claims of unjust enrichment and payment by mistake[.] Because these two common law claims are quasi-contractual, they are inappropriate claims where, as here, there is an express contract."); *United States v. EER Sys. Corp.*, 950 F. Supp. 130, 133 (D. Md. 1996) ("Because the above common law counts are quasi-contractual[,] . . . they are inappropriate claims when there is an express contract."); *Hydroaire*, 1995 WL 86733, at *6 ("[T]he doctrine of unjust enrichment has no application where, as in this case, a specific contract governs the relationship of the parties.").

Medicare Provider Agreements create a contractual relationship between the provider and the Centers for Medicare and Medicaid Services ("CMS"). *See United States v. Arrow Med. Equip. Co.*, No. 90-5701, 1990 WL 210601, at *4 (E.D. Pa. Dec. 18, 1990). Consequently, the Court should dismiss the government's unjust enrichment and payment by mistake claims because an express contract governs each facility's relationship with CMS.

### C. The Government's Unjust Enrichment and Payment by Mistake Claims Pre-dating December 1, 2014 Are Time-barred

Finally, the government's unjust enrichment and payment by mistake claims pre-dating December 1, 2014 are also time-barred because they accrued more than three years prior to the filing of the Relator's complaint on December 1, 2017. (Doc. 1 & 14). In its Complaint, the government defined the "Relevant Period" for its claims as beginning in "at least 2010." Compl. ¶¶ 1, 60, 94. In the Southern District of New York, "[t]he substance of a claim is the proper basis for determining the appropriate statute of limitations" for claims brought by the United States under 28 U.S.C. § 2415. *Blusal Meats, Inc. v. United States*, 638 F. Supp. 824, 831 (S.D.N.Y. 1986), *aff'd*, 817 F.2d 1007 (2d Cir. 1987). Where, as is the case here, the unjust enrichment and payment by mistake claims are based on and intertwined with FCA allegations of fraud, the three-year statute of limitations for torts found in 28 U.S.C. § 2415(b) should apply. *Id.* Accordingly, the government's unjust enrichment and payment by mistake claims pre-dating December 1, 2014 should be dismissed with prejudice.

# CONCLUSION

The government's complaint fails to plead with specificity how Emerge, Lynbrook, Excel, LICC, North Westchester, Sutton Park, Momentum, Oasis, Glen Cove, Surge, and Quantum each knowingly submitted false claims for medically unnecessary skilled nursing services. At most, the Complaint includes allegations about conversations between two defendants who were never employees of Emerge, Lynbrook, Excel, LICC, North Westchester, Sutton Park, Momentum, Oasis, Glen Cove, Surge, or Quantum, and general and conclusory allegations regarding efforts to "pressure" unspecified facilities to extend stays and order more therapy than necessary.

Absent from the Complaint are allegations that anyone at Emerge, Lynbrook, Excel, LICC, North Westchester, Sutton Park, Momentum, Oasis, Glen Cove, Surge, or Quantum received this alleged pressure, submitted claims, or inappropriately extended stays or ordered excessive therapy services. The lack of any patient examples for Surge and Quantum means these two facilities must be dismissed. Moreover, the single patient example each for Emerge, Lynbrook, Excel, LICC, North Westchester, Sutton Park, Momentum, Oasis, and Glen Cove do not provide sufficient information to explain what care provided was fraudulent and are not a sufficient basis to allege that each facility was involved in some elaborate fraudulent scheme spanning ten years.

For these reasons, the Complaint fails and should be dismissed as to Emerge, Lynbrook, Excel, LICC, North Westchester, Sutton Park, Momentum, Oasis, Glen Cove, Surge, and Quantum. Because the Court provided the government advance opportunity to amend the Complaint and it declined to do so (*see* Sept. 9, 2021 Minute Entry), the Court should enter dismissal with prejudice. *See Grubea*, 318 F. Supp. 3d. at 696 (holding that, where plaintiff "has had ample opportunity to plead every possible factual basis…and was not able…the dismissal is with prejudice.").

Dated: October 28, 2021                    Respectfully submitted,

/s/ J. Bradley Robertson

BRADLEY ARANT BOULT CUMMINGS LLP
Jack W. Selden (admitted pro hac vice)
J. Bradley Robertson (admitted pro hac vice)
1819 Fifth Avenue North
Birmingham, AL 35203
Phone: 205.521.8000
Fax: 205.521.8800
brobertson@bradley.com

Jonathan H. Ferry
Lyndsay E. Medlin (admitted pro hac vice)
Truist Center
214 North Tryon Street, Ste 3700
Charlotte, NC 28202
Phone: 704.338.6000
Fax: 704.332.8858
jferry@bradley.com
lmedlin@bradley.com

*Counsel for Defendants Excel at Woodbury for Rehabilitation and Nursing LLC; East Rockaway Center LLC d/b/a Lynbrook Restorative Therapy and Nursing; Oasis Rehabilitation and Nursing LLC; Suffolk Restorative Therapy & Nursing LLC d/b/a Momentum at South Bay for Rehabilitation and Nursing; Treetops Rehabilitation & Care Center LLC d/b/a North Westchester Restorative Therapy and Nursing Center; Quantum Rehabilitation and Nursing LLC; and Surge Rehabilitation and Nursing LLC*

/s/ Miranda Hooker
Miranda Hooker, Esquire (MA BBO #661569)
Troutman Pepper Hamilton Sanders LLP
19th Floor, High Street Tower
125 High Street
Boston, MA 02110-2736
(617) 204-5160
Miranda.Hooker@Troutman.com

*Counsel for Defendants Long Island Care Center, Inc. and Forest Manor Care Center, Inc.*

*/s/ Abby Pendleton*
The Health Law Partners, P.C. d/b/a
The Dresevic, Iwrey, Kalmowitz &
Pendleton Law Group
Abby Pendleton
Clinton Mikel
Jonathan C. Messina
15 West 38th Street, 4th Floor, Ste. 735
New York, NY 10018
Phone: 516.492.3390
Fax: 516.492.3389
Email: apendleton@thehlp.com

*Counsel for Defendant*
*Sutton Park Center for Nursing & Rehabilitation, LLC*

*/s/ Brendan M. Goodhouse*
Brendan M. Goodhouse
Cuddy & Feder LLP
445 Hamilton Avenue, 14th Floor
White Plains, New York 10601
Phone: 914-761-1300
Fax: 914-761-5372
BGoodhouse@cuddyfeder.com

*Counsel for Defendant Montclair Care Center Inc.*

**CERTIFICATE OF SERVICE**

      I hereby certify that, pursuant to the direction of the Court at its September 9, 2021 Pre-Motion Conference, I have this the 28th day of October, 2021 served the foregoing Motion to Dismiss on the following parties by email:


Jacob Bergman
Danielle Levine
Jacob.Bergman@usdoj.gov
Danielle.Levine@usdoj.gov

*Counsel for the United States*

Yonah Jaffe
yjaffe@rctlegal.com

*Counsel for Relator*

Aaron Lichtman
lichtman@outsidetbb.com

*Counsel for Paragon Management SNF, LLC*

Aaron Katz
Aaron.katz@ropesgray.com

*Counsel for Issac Laufer*

Michael Bowen
Edward Shapiro
mbowen@glenagre.com
eshapiro@glenagre.com

*Counsel for Tami Whitney*


*/s/ J. Bradley Robertson*