**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* INTEGRA MED ANALYTICS LLC,<br><br>                    Plaintiff,<br><br>     v.<br><br>ISAAC LAUFER, *ET AL*,<br><br>                    Defendants. | **Case No. 17 Civ. 9424 (CS)** |
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>     v.<br><br>ISSAC LAUFER, *ET AL*,<br><br>                    Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PARAGON**
**MANAGEMENT SNF LLC'S MOTION TO DISMISS THE COMPLAINT**

## I.     INTRODUCTION

Paragon Management SNF LLC ("Paragon") was added by the Government as a party to the Qui Tam action but had not been named by the Relator in its Complaint. It is not clear why Paragon was added, but Paragon is not alleged to have directly prepared or submitted any false claims. It is not an owner, or operator nor is it alleged to have received any economic benefit from any false claims. Paragon is alleged to be Defendant Whitney's employer, owned by Laufer and to have provided marketing services to the Defendant Facilities. It is sometimes termed a management company, but the management functions are specifically attributed to the Nursing Home Administrator. Complaint ¶ 54.

1

## II. JOINDER WITH OTHER MOTIONS TO DISMISS

All Defendants to this action have moved to dismiss the Complaint with prejudice. For judicial economy, rather than repeat the factual and/or legal arguments set forth in each of the Defendants' Briefs, Paragon adopts the arguments set forth and asserts as follows:

- For the reasons set forth by Counsel for each of the Facility Defendants, the Complaint does not meet the pleading requirements to support a claim against any and/or all of the facilities. Since the facilities are the only parties alleged to have directly submitted false claims, a dismissal of the Complaint against any Facility Defendant would logically require dismissal as to all of the Non-Facility Defendants. This would necessitate dismissal as to Paragon.

- For the reasons set forth by Counsel for Ms. Whitney, the Complaint does not meet the pleading requirements to support a claim against Ms. Whitney. Since Ms. Whitney is the only employee of Paragon named and the only person alleged, albeit in exceedingly inadequate and in conclusory fashion, to have had any contact with anyone at the facilities, a dismissal of the Complaint as to Whitney logically requires the dismissal as to Paragon and Laufer.

- For the reasons set forth by Counsel for Isaac Laufer, in Laufer's Motion to Dismiss, the Complaint does not meet the pleading requirements to support a claim against Mr. Laufer. While dismissal of the claims against Laufer may not necessitate dismissal of the claims against Paragon, the arguments set forth therein are supportive of Paragon's motion to dismiss. Paragon adopts the arguments set forth in Paragon's motion.

**III.     PARAGON SPECIFIC ARGUMENT**

In what it hopes is the unlikely event that this Court (i) rejects one or more of the Facility's Motions to Dismiss, and (ii) rejects Whitney's Motion to Dismiss, and (iii) finds Laufer's arguments and those arguments and case law set forth in the other Motions not to be compelling as to Paragon, Paragon asserts as follows:

    A.     No Improper Conduct, Insufficient Detail, and Lack of Causation

The Government's allegation that Paragon violated the FCA are not factually or causally based, instead they are based upon a possible nefarious interpretation of perfectly legal conversations. The statements made by Laufer and Whitney, are for those who invest or support or engage in business, benign.  The few Whitman-Laufer discussions do not rise to the level of an FCA violation.  Even if they did, there is no evidence or explanation how one statement in 2013 and a few conversations in 2015-2018 could cause false claims to be submitted since 2010.  In this sense the Complaint is nonsensical.  Moreover, with only one exception, there are no specific allegations that Whitney spoke with or communicated with anyone at the facilities, let alone anyone in assessing, treating, or submitting claims.   Similarly, with regard to the actual claims that were alleged to have been submitted—there are simply not enough (0-1 per facility to demonstrate a ten-year practice); they are not connected in time to the allegations of pressure; and the allegations of wrongdoing are conclusory and disconnected from any objective standard. (Complaint ¶ 97) The Complaint does not with specificity or at all, establish a <u>pattern</u> of falsity, let alone that Whitney, and presumably Paragon through Whitney was the conductor or the conduit for some other conductor. Saying there was a pattern, or a scheme simply is insufficient.

While it is easy to mistake editorial comment (which is bountiful) for fact and be drawn towards a claim that does not exist. When one steps back, the lack of sufficiency becomes clear.

The government spent three and a half years investigating ten years of conduct at eleven facilities and supposedly concluded that all eleven facilities, over the entire period, engaged in patterned illegal conduct as a result from pressure from Laufer to Whitney and then without explanation to the eleven facilities. If there was this massive ten-year conspiracy that ran through only two individuals, after 3.5 years of intensive investigation, with full subpoena power and a complaint under seal, the government would have had no problem uncovering the who, what, where, and when of the scheme.  The Complaint would have been filled with detail concerning the connections and the falsity submissions against objective standards.  This is because to effectuate a scheme on this scale, there would have had to have been hundreds, if not thousands of witnesses and thousands, if not tens of thousands, of participants and documents directly supporting the claim. See eg. Complaint  ¶38 (Physicians must certify and recertify that care is necessary prior to commencement of therapy service and no less frequently than every 30 days); Complaint FN 3 (supervision and judgement of qualified therapist is required at every interaction with a resident). Ten years of multiple residents at a time per facility, with over 11 facilities providing therapy 5-6 times a week, there existed for the Government a massive number of touches by a very large number of people.

As to Paragon, Whitney, and Laufer there is no *Mens Rea* pled.  There is not a single allegation that any person ever complained; no evidence any person intended for anyone to submit a false claim; or that anyone had knowledge that any false claim had been submitted by any of the eleven facilities in any of the ten years at issue.  In the event someone had such knowledge, or intended to commit such an act, there is no evidence that Paragon was complicit.  There are no allegations concerning any deficient, let alone illegal, Paragon Policies or Procedures and no reason to believe that illegal conduct was within the scope of anyone's job responsibilities.   There

4

are also no allegations that Paragon, Whitney or Laufer ever said to anyone that they should engage in illegal or even improper conduct. To the contrary, the Complaint demonstrates Ms. Whitney used words and phrases designed to help ensure compliance such as "Pls look at".  When she has examined something, she was judging whether it was "appropriate," "well-balanced" or the like. (Complaint ¶¶ 90-92).

      B.      Paragon is an inappropriate Defendant.

Paragon is an inappropriate defendant as it does not have vicarious liability for the actions of the Facilities. It is not the owner or licensed operator of any facility. While words like "management" are used to refer to Paragon, the Complaint expressly enumerates that Paragon was not the manager of any Facility and did not perform management functions as that word is typically used in the law. Paragon was a consultant.[1] (See Complaint ¶51)("During the Relevant Period, each of the Facilities was overseen by an administrator.  The Facility's <u>MDS coordinator and the directors of rehabilitation</u>, social services, admissions, diet, nursing, food service, maintenance, and housekeeping <u>reported to the administrator</u>.")(emphasis added); ¶13 (Paragon was created "in order to provide support for the Facilities and consolidate Cross-Facility operations such as payroll.")  Consistent with the factual allegations of the Complaint, in New York, chains are not permitted and nursing homes may not abrogate their management responsibilities. Each New York Skilled Nursing Facility retains:

- "direct, independent authority over the appointment and/or dismissal, in its sole discretion, of the Facility's management level employees (including but not limited to, the Facility/Service Administrator/Director, the Medical Director, the Director of Nursing, the

---

[1] Even if it were a manager, it was not for its own account and would not have vicarious liability.

>Chief Executive Officer, the Chief Financial Officer and the Chief Operating Officer) and all licensed or certified health care staff….
>
>- independent control over…the facility's operating policies and procedures...
>
>- full authority and responsibility for, and control over, the operations and management of the facility….
>
>- the right and authority to independently adopt and, approve and enforce, in its sole discretion, policies affecting the facility's delivery of health care services…."   10 NYCRR 405.3(f)(1)(iii)

Against the weight of its own factual allegations, the Complaint uses Ms. Whitney's title at Paragon to claim she is the "Coordinator of Rehabilitation Services for the Facilities." The Complaint then builds to conclude, "As such she is involved in decisions regarding the provision of, and billing for, rehabilitation services at the Facilities." ¶14  The Complaint could have added enumerated examples and/or the vehicles for her implied control if it had them.  The foregoing said, this and so many other provisions are artfully pleaded to make it sound like much more than it is. The word "involved" was chosen in lieu of "directed", "managed" or "controlled."  Being "involved" in some unspecified way should not lead to liability.

    C. Even if there was enough substance and the claim was supportable against Paragon, trying to enhance revenue is not an FCA violation.

 It cannot reasonably be disputed that there are no specific words that any Paragon employee is credited with saying, that is facially illegal.  What is left is the implication that talking about the need for money, financial viability, tracking that which is profitable, or implementing programs that make money are all illegal.  If this were the case, all healthcare (for and not-for-profit) entities would be guilty of FCA violations. In May of 2009, just before the period at issue in this case,

CMS rejected the notion of abandoning a reimbursement system that disconnecting financial incentive for Facilities the provision of more therapy services because CMS believed "separating payment from the actual provision of services [would cause] the system and more importantly, the beneficiaries [to be] vulnerable to underutilization." 74 FR 22220 (May 12, 2009)  It would be difficult to interpret this FR as saying anything other than CMS desired for facilities to have an economic incentive to examine their therapy levels.

     Similarly, CMS has clearly and unambiguously indicated, "We do not believe there is anything inappropriate, unethical or otherwise wrong with hospitals taking full advantage of coding opportunities to maximize Medicare payment that is supported by documentation in the medical record. 72 FR 4780 (August 22, 2007).  The narration within the Complaint ignores this legitimate objective to make money.  Instead, the Complaint alleges that CMS had to change the entire reimbursement system because "SNFs were providing therapy for the purpose of increased billing, rather than based on patient's needs." Complaint ¶¶ 48-49 (48 says "motivated in Part" but Paragraph 49 indicates "in light of these concerns" and then sets forth a narrated version of what the changes to reimbursement were.)  While the August 8, 2018 CFR does set forth the language attributed to it, the Complaint failed to capture the acknowledgement that CMS was uncertain. CMS for example expressly indicated that increase in utilization may be due to "increasing acuity in the SNF Population…" 83 Fed Reg. 39162, 39184 (August 8, 2018.).  Perhaps more importantly, the Complaint fails to indicate that CMS had previously acknowledged that another legitimate driver of utilization might be "changes to technology" 74 FR 22220 ("Changes to technology" might also have affected care methods, while more choices in housing alternatives (such as assisted living and community housing) may have altered the population mix served by nursing homes.") The failure to acknowledge the doubt and alternative theories, in part demonstrates the editorial

7

taint, but had there been an acknowledgment that legitimate increases in utilization can be had from use of technology—paragraphs 80-84 of the Complaint would have had the opposite effect than the drafter intended. Those Paragraphs indicate that the Facilities used very sophisticated technology which drove utilization. CMS knew that technology was increasing utilization and did not condemn it or change the rules to prevent it. With this information, it is not merely that the complaint fails to allege facts sufficient to show that use of the Balance Master is the illegal. The totality of the circumstances demonstrates that use of technology provides a legitimate explanation for higher-than-normal utilization.

WHEREFORE, Paragon respectfully requests for the Complaint to be dismissed as to Paragon in its entirety and, given that the Complaint was drafted 3.5 years after the Government launched an investigation and the Government had previously been given the opportunity to amend, that it be dismissed with prejudice.

Dated: Pound Ridge, NY
October 28, 2021                                  Respectfully submitted,

**THE LICHTMAN LAW FIRM**

By:      */s/ Aaron Lichtman*
Aaron Lichtman (lichtman@outsidetbb.com)
P.O. Box 370
56 Westchester Avenue
Pound Ridge, New York 10576
Tel: (914) 232-1005
*Attorneys for Defendant Paragon Management SNF LLC*

CC:

Jacob Bergman
Phone: 212-637-2776
Danielle Levine
Phone: 212-637-2689
United States District Attorney's Office, Southern District of New York
86 Chambers Street
New York, NY  10007
Jacob.bergman@usdoj.gov
Danielle.levine@usdoj.gov
*Counsel for Intervenor Plaintiff*

Michael Bowen
Edward Shapiro
Glenn Agre Bergman & Fuentes, LLP
55 Hudson Yards
New York, NY  10001
Phone: 212-358-5600
mbowen@glennagre.com
eshapiro@glennagre.com
*Counsel for Intervenor Defendant*

Phillip Collins
Phone: 512-647-6106
Jeremy Wells
Phone: 512-647-6120
Reid Collins & Tsai LLP
1301 S. Capital of Texas Hwy
Ste C-300
Austin, TX  78746
Fax: 512-647-6129
jcollins@rctlegal.com
jwells@reidcollins.com

Yonah Jaffe
Reid Collins & Tsai LLP
810 Seventh Avenue, Suite 410
New York, NY  10019
Phone: 212-946-9340
yjaffe@rctlegal.com
*Counsel for United States of America, ex rel. Integra Med Analytics, LLC, Plaintiff*

Jack W. Selden
Phone: 205-521-8472
J. Bradley Robertson
Phone: 205-521-8000
Bradley Arant Boult Cummings LLP
1819 Fifth Avenue South
Birmingham, AL 35203
Fax: 205-521-8800
brobertson@bradley.com
jselden@bradley.com

Lyndsay E. Medlin
214 North Tryon Street, Ste 3700
Truist Center
Charlotte, NC 28202
Phone: 704-338-6000
Fax: 704-332-8858
lmedlin@bradley.com

Jonathan J. Ferry
Bradley Arant Boult Cummings
214 North Tryon Street, Suite 3700
Truist Center
Charlotte, NC  28202
Phone: 704-338-6011
jferry@bradley.com

Kristina Reliford
Bradley Arant Boult Cummings
1600 Division Suite 700
Nashville, TN  37203
Phone: 615-252-3573
Fax: 615-252-6380
kreliford@bradley.com
*Counsel for Defendants Excel at Woodbury for Rehabilitation and Nursing LLC; East Rockaway Center LLC d/b/a Lynbrook Restorative Therapy and Nursing; Oasis Rehabilitation and Nursing LLC; Suffolk Restorative Therapy & Nursing LLC d/b/a Momentum at South Bay for Rehabilitation and Nursing; Treetops Rehabilitation & Care Center LLC d/b/a North Westchester Restorative Therapy and Nursing Center; Quantum Rehabilitation and Nursing LLC; and Surge Rehabilitation and Nursing LLC*

Miranda Hooker
Troutman Pepper Hamilton Sanders LLP
19th Floor, High Street Tower
125 High Street
Boston, MA 02110-2736
(617) 204-5160
Miranda.Hooker@Troutman.com

Karli Cozen
Troutman Pepper
3000 Two Logan Square
18th And Arch Streets
Philadelphia, PA  19103
Phone: 215-981-4601
Karli.cozen@troutman.com
*Counsel for Defendants Long Island Care Center, Inc. and Forest Manor Care Center, Inc.*

The Health Law Partners, P.C. d/b/a
The Dresevic, Iwrey, Kalmowitz &
Pendleton Law Group
Jonathan C. Messina
15 West 38th Street, 4th Floor, Ste. 735
New York, NY 10018
Phone: 516-492-3390
Fax: 516-492-3389
jmessina@thehlp.com

Abby Pendleton
Clinton Mikel
The Health Law Partners, P.C.
32000 Northwestern Highway, Suite 240
Farmington Hills, MI  48334
Phone: 248-996-8510
Fax: 248-996-8525
apendleton@thehlp.com
cmikel@thehlp.com
*Counsel for Defendant*
*Sutton Park Center for Nursing &*
*Rehabilitation, LLC*

Jordan Brooks
Cuddy & Feder LLP
445 Hamilton Avenue, 14th Floor
White Plains, New York 10601
Phone: 914-761-1300
Fax: 914-761-5372
JBrooks@cuddyfeder.com

Brendan Goodhouse
Cuddy & Feder LLP
445 Hamilton Avenue
White Plains, NY  10601
Phone: 914-761-1300
Fax: 914-761-5372
bgoodhouse@cuddyfeder.com
*Counsel for Defendant Montclair Care Center Inc.*

Aaron M. Katz
Ropes & Gray LLP
800 Boylston Street
Boston, MA  02199
Phone: 617-951-7117
Aaron.katz@ropesgray.com
*Counsel for Isaac Laufer, Intervenor Defendant*