# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.*<br>INTEGRA MED ANALYTICS LLC,<br><br>Plaintiff,<br><br>v.<br><br>ISAAC LAUFER, *ET AL*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) **No. 7:17-cv-09424 (CS)**<br>)<br>)<br>) |
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ISSAC LAUFER, *ET AL*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## REPLY MEMORANDUM IN SUPPORT OF
## ISSAC LAUFER'S MOTION TO DISMISS

Aaron M. Katz
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199
Tel: (617) 951-7000
Aaron.Katz@ropesgray.com

## Table of Contents

**Page**

ARGUMENT.................................................................................................. 1

I.  All of the Claims Against Laufer Must Be Dismissed, Because the Particularized Conduct Alleged Against Laufer Does Not Give Rise to a "Strong Inference" that Laufer Knowingly and Intentionally Participated in the Facilities' Alleged Medicare Fraud. ......................................................... 2

II. The Common Law Claims Against Laufer Must Be Dismissed Because Laufer Did Not Personally Receive Any Medicare Payments. .........................11

CONCLUSION ................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

*Associated General Contractors v. Cal. State Council of Carpenters*,
 459 U.S. 519 (1983) ............................................................................. 8

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007) ............................................................................. 4

*In re Lehman Bros. Sec. & ERISA Litig.*,
 799 F. Supp. 2d 258 (S.D.N.Y. 2011) ................................................. 3

*Meyer v. Holley*,
 537 U.S. 280 (2003) ............................................................................. 1

*Palmieri v. Allstate Ins. Co.*,
 445 F.3d 179 (2d Cir. 2006) ...............................................................11

*Rivera v. Carroll*,
 No. 07-cv-7847, 2009 U.S. Dist. LEXIS 67224 (S.D.N.Y. Aug. 3, 2009)........... 3

*Teledyne Industries, Inc. v. Eon Corp.*,
 373 F. Supp. 191 (S.D.N.Y. 1974) ...................................................... 1

*United States ex rel. Ladas v. Exelis, Inc.*,
 824 F.3d 16 (2d Cir. 2016) ................................................................. 6

*United States ex rel. Lawson v. Aegis Therapies, Inc.*,
 No. CV 210-072, 2015 U.S. Dist. LEXIS 45221 (S.D. Ga. Mar. 31, 2015)......... 7

*United States ex rel. NPT Assocs. v. Lab Corp. of Am. Holdings*,
 No. 07-cv-05696, 2015 U.S. Dist. LEXIS 155601 (S.D.N.Y. Nov. 17, 2015)..... 2

*United States v. Bestfoods*,
 524 U.S. 51 (1998) .............................................................................. 1

*Wolet Capital Corp., v. Walmart, Inc.*,
 No. 18-cv-12380, 2021 U.S. Dist. LEXIS 13406 (S.D.N.Y. Jan. 25, 2021) ........ 3

## ARGUMENT

The owner of a corporation is not vicariously liable for the alleged wrongful conduct of the corporation's employees.  *See, e.g.*, *Meyer v. Holley*, 537 U.S. 280, 286 (2003); *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).  An owner may be held liable only if he "direct[ed], authorize[d], or in some meaningful sense participate[d] actively in the assertedly wrongful conduct." *Teledyne Industries, Inc. v. Eon Corp.*, 373 F. Supp. 191, 196 (S.D.N.Y. 1974) (citing *Armour and Co. v. Celic*, 294 F.2d 432 (2d Cir. 1961)).  This is a black letter principle of American law, and it applies with full force to the government's fraud-based claims against defendant Issac Laufer.

Because Laufer's ownership of the corporate defendants cannot serve as the basis to impose False Claims Act liability on him individually, whether the government's complaint satisfies Rule 9(b) with respect to Laufer cannot measured by the complaint's allegations against the facilities.[1]  In other words, even if the Court is convinced that the government has sufficiently pled that certain facilities

---

[1] The government's opposition brief repeatedly refers to Laufer's "control" of the corporate defendants.  *See, e.g.*, Gov't Opp., at 1, 9, 17, 19, 20, 34, and 39. This is just the government's pejorative way of stating that Laufer has had some ownership interest in the corporate defendants during the course of the corporate defendants' alleged Medicare fraud scheme.  The complaint lacks any well-pled factual allegations that Laufer dictated the medical decision-making at any of the facilities or the facilities' submission of claims to the Medicare program.

submitted false Medicare claims, that does not mean the government has sufficiently pled False Claims Act claim against Laufer individually.  The sufficiency of the complaint with respect to Laufer instead must be measured solely and exclusively by the particularized conduct in which the complaint alleges Laufer himself engaged. On that score, the complaint falls woefully short.

I.    **All of the Claims Against Laufer Must Be Dismissed, Because the Particularized Conduct Alleged Against Laufer Does Not Give Rise to a "Strong Inference" that Laufer Knowingly and Intentionally Participated in the Facilities' Alleged Medicare Fraud.**

The only particularized conduct that the complaint alleges against Laufer is a handful of electronic messages between him and Tammy Whitney.  The sufficiency of the complaint with respect to Laufer rises and falls on those electronic messages. If those electronic messages do not allow for a "strong inference" that Laufer knowingly and intentionally participated in the facilities' alleged submission of false claims—*i.e.*, a "strong inference" that Laufer knowingly pressured the facilities, either directly or via Whitney, to do things that he knew would result in the submission of false Medicare claims—then the claims against him must be dismissed.  It is as simple as that.  *See, e.g.*, *United States ex rel. NPT Assocs. v. Lab Corp. of Am. Holdings*, No. 07-cv-05696, 2015 U.S. Dist. LEXIS 155601, at *13 (S.D.N.Y. Nov. 17, 2015) (dismissing False Claims Act complaint because the "allegations . . . give rise to no such strong inference [of fraud]").

The government's opposition brief, like its complaint, is replete with argumentative characterizations of the electronic messages. A party's characterizations of documentary evidence, however, do not qualify as well-pled factual allegations, and they are not entitled to any weight in a court's consideration of a motion to dismiss. *See, e.g.*, *Wolet Capital Corp.*, *v. Walmart, Inc.*, No. 18-cv-12380, 2021 U.S. Dist. LEXIS 13406, at *38 (S.D.N.Y. Jan. 25, 2021) ("It is well established that the underlying documents rather than the Plaintiff's description of them govern on a motion to dismiss . . . ."); *Rivera v. Carroll*, No. 07-cv-7847, 2009 U.S. Dist. LEXIS 67224, at *8 n.5 (S.D.N.Y. Aug. 3, 2009) ("[T]he Court need not accept as true Plaintiff's characterization of [an incorporated document's] content . . . ." (first alteration in original)). Here, the Court must review for itself the messages between Laufer and Whitney and objectively determine whether they give rise to a "strong inference" that Laufer knowingly and intentionally caused the facilities to provide and then bill Medicare for medically unnecessary treatment.[2] They do not.

As an initial matter, the electronic messages on which the government's claims against Laufer are predicated are not even sufficient to satisfy Rule 8's

---

[2] Tellingly, the government elected not to annex the messages to its complaint. The Court is nevertheless entitled to consider the actual messages themselves in determining whether the government's complaint satisfies Rule 9(b) with respect to Laufer. *See, e.g.*, *In re Lehman Bros. Sec. & ERISA Litig.*, 799 F. Supp. 2d 258, 272-273 (S.D.N.Y. 2011). Laufer attached copies of the messages, including a transcript of the voicemail, as Exhibits 1 through 12 to his motion to dismiss. *See* ECF No. 98-2 through 98-13 (Feb. 18, 2022).

plausibility requirement.  The Supreme Court's seminal decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), is instructive in this regard.  In *Twombly*, the Supreme Court held that an antitrust complaint's well-pled allegations of "parallel conduct" by competitors, along with a conclusory assertion that the competitors had entered into an agreement not to compete, is insufficient to state a plausible claim under the Sherman Act.  *Id.* at 556-557.  The Supreme Court explained that the "inadequacy of showing parallel conduct or interdependence, without more, mirrors the ambiguity of the behavior: consistent with conspiracy, but just as much in line with a wide swath of rational and [lawful] business strategy . . . ." *Id.* at 554.

Here, the government's opposition brief, like its complaint, totally ignores the fact that a skilled nursing facility may sometimes inappropriately discharge a patient who still needs medical care.  The government's opposition brief, like its complaint, also totally ignores the fact that a patient who still needs medical care may sometimes choose to leave a skilled nursing facility because the facility is not providing the care that the patient expects.  Both of those scenarios involve *premature* discharges that are detrimental to patients, the interests of the Medicare program, and the reputation and financial health of the facility.  A facility is legally entitled to, and morally should, seek to avoid and correct such premature discharges. The fact of premature discharges is why the messages between Laufer and Whitney

are analogous to the allegations of parallel conduct that the Supreme Court in *Twombly* deemed insufficient to state a plausible Sherman Act claim. The messages demonstrate Laufer's concerns with certain facilities' increased discharge rates, but they do not include any direction from Laufer that the facilities should provide medically unnecessary care to patients, let alone that the facilities should commit Medicare fraud. Even when read with the absolute most cynical eye, the messages are at the very least "just as much in line" with Laufer being a law-abiding, caring, and conscientious owner—legitimately imploring Whitney to look into and address discharge rates that potentially reflected an underlying shortcoming in the facilities' patient care and, at the same time, were unnecessarily eroding the facilities' financial performance—as they are with Laufer imparting unlawful "pressure" on Whitney or the facilities. *Id.*

To survive a motion to dismiss, of course, the government's allegations against Laufer need to satisfy not only *Twombly*'s plausibility standard, but also Rule 9(b)'s heightened pleading requirements. The government's claims against Laufer would satisfy Rule 9(b) only if the allegations gave rise to a "strong inference" that Laufer, acting with scienter, engaged in conduct that he knew would result in the facilities' submission of false claims to the Medicare program. *See, e.g.*, *NPT Assocs.*, 2015 U.S. Dist. LEXIS 155601, at *13. The allegations do not come close to satisfying that rigorous standard. The court's decision in *NPT Associates* is

5

instructive.   In *NPT Associates*, the complaint alleged an illegal *quid pro quo* arrangement between LabCorp and United HealthCare.   The court held that the complaint failed to satisfy Rule 9(b) because the complaint's factual allegations "could just as easily support an inference of legitimate business activity" as an inference of an illegal kickback scheme.   *Id.*   The court explained that the "plausible and legal explanation for the alleged behavior set[ ] th[e] case apart from FCA cases where courts have found a strong inference of fraud."   *Id.*   That is precisely why the government's allegations against Laufer fail to satisfy Rule 9(b).

It is no answer for the government to say that the complaint's allegations provide Laufer with notice that the fraud-based claims against him are predicated on his electronic messages with Whitney.   To be sure, one of Rule 9(b)'s concerns is that a defendant accused of fraud be provided sufficient notice of the underlying factual basis of the claims.   But notice is not Rule 9(b)'s only, or even most important, animating concerns.   One of Rule 9(b)'s cardinal purposes is to "safeguard a defendant's reputation from improvident charges of wrongdoing . . . ." *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 25 (2d Cir. 2016).   This purpose is especially important for an individual defendant (*i.e.*, a non-corporate defendant).   For an individual defendant, the reputational damage and financial impact flowing from an accusation of fraud can last a lifetime, unless the court dismisses the claim at the earliest possible stage of the proceeding.   Here, the

6

messages between Laufer and Whitney are not a sufficient basis for the government to haul Laufer into federal court as a defendant, tar and feather him with accusations of fraud, and force him to defend himself through years of costly discovery.

In its opposition brief, the government essentially acknowledges that Laufer's communications with Whitney do not constitute the type of improper "pressure" tactics that federal courts have required before imposing cause-based False Claims Act liability on a facility's owner or manager. *See, e.g.*, *United States ex rel. Lawson v. Aegis Therapies, Inc.*, No. CV 210-072, 2015 U.S. Dist. LEXIS 45221, at *34-37 (S.D. Ga. Mar. 31, 2015) (holding that a skilled nursing facility's manager's "goal for billing most patients at the high[est] RUG level," tracking of the facility's census trends, and instructing therapists "on effective Medicare documentation" were "prudent business practices" and not improper "pressure" that unlawfully "caused" the facility to submit false claims). In other words, the government has essentially acknowledged that the messages would not be sufficient to survive a motion for summary judgment by Laufer. The government, however, says that this does not matter because this case is still at the pleadings stage. *See* Gov't Opp., at 25 (trying to explain away the court's summary judgment decision in *Aegis*). If, however, the messages standing alone would not be sufficient to withstand a motion for summary judgment, then by definition they cannot standing alone be a sufficient basis to survive a motion to dismiss. The difference between the summary judgment stage

7

and the motion to dismiss stage is that, with respect to the latter, the plaintiff receives the benefit of an assumption that the complaint's non-speculative, well-pled factual allegations are true. The plaintiff does not receive the benefit of an assumption that it "can prove facts that it has not alleged" in its complaint. *Associated General Contractors v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). This is precisely why the Supreme Court in *Twombly* held that allegations of parallel conduct, adorned with a formulaic and conclusory allegation that there was an unlawful agreement, is insufficient to withstand a motion to dismiss in a Sherman Act lawsuit. Because proof of parallel conduct, without more, would not be sufficient to withstand summary judgment, the Supreme Court in *Twombly* held that well-pled factual allegations of parallel conduct, without more, must be insufficient to withstand a motion to dismiss. *See Twombly*, 550 U.S. at 553-556.

So too here. There is no dispute that the electronic messages between Laufer and Whitney are genuine (*i.e.*, that the messages represent communications that truly occurred). Nor is there any dispute that the government's argumentative characterizations of the messages are not entitled to any weight at the motion to dismiss stage. The pertinent dispute is whether those messages—which, again, represent the *only* particularized conduct alleged against Laufer himself—give rise to a strong inference of fraud, as required by Rule 9(b). They do not. If they did, then Rule 9(b) would provide virtually no protection to a facility's conscientious

owner whenever the government is able to cherry-pick some specific examples of federal healthcare program patients to whom the facility arguably provided too much care. This is because the government will *always* be able to plausibly allege that the facility's owner directed the facility—directly or indirectly, orally or in writing—to pay close attention to the facility's financial performance, including the patient care metrics that impact that performance. If a conscientious facility owner could be hauled into federal court as an individual False Claims Act defendant any time the government could plausibly allege that the facility submitted at least one false claim during the preceding ten years, this would substantially deter good citizens like Laufer from choosing to become owners in the first place. That cannot be the result that Congress intended or that a federal court should endorse.

The insufficiency of the messages between Laufer and Whitney is underscored by the complaint's failure to connect those messages in any meaningful, logical way to the nine patients that paragraph 97 holds out as the examples of the facilities' supposed false claims ("Patient A" – "Patient I"). "Patient A" was treated at Long Island Care Center from December 2017 through March 2018; the only messages between Laufer and Whitney discussing Long Island Care Center are from November 2013 and December 2015. "Patient B" was treated at Lynnbrook from December 2012 through April 2013; the earliest message discussing Lynnbrook is from July 2016. "Patient C" was treated at Sutton Park from June 2016 through

October 2016; none of the Laufer-Whitney messages discuss Sutton Park. "Patient E" was treated at Glen Cove from January 2015 through April 2015; the only message discussing Glen Cove is from October 2017. "Patient F" was treated at Momentum from January 2018 through April 2018; the only message discussing Momentum is from June 2017. "Patient G" was treated at Oasis from July 2015 through October 2015; none of the messages discuss Oasis. "Patient H" was treated at Excel from May 2015 through June 2015; the only message discussing Excel is from November 2013. "Patient I" was treated at Marquis from August 2013 through November 2013; the only message discussing Marquis is from March 2018, and the complaint acknowledges that Laufer did not even have an ownership interest in Marquis **until 2018**.[3]  *See* Gov't Compl, ¶ 50.  Notably, although paragraph 66 of the government's complaint highlights a supposedly inculpatory message between Laufer and Whitney regarding patient discharges at Quantum, the complaint does not provide even a single example of a patient from Quantum who received medically unnecessary or medically unreasonable care.[4]

---

[3] The complaint, in footnote 4 on page 16, alleges in wholly conclusory fashion that Laufer was "closely involved in the operation" of Marquis prior to 2018.

[4] The only patient for whom there is any temporal connection to a message between Laufer and Whitney is "Patient D." "Patient D" was treated at North Westchester from March 2018 through June 2018, and Whitney mentioned to Laufer in an April 25, 2018 message that a woman named "Joscelyn" was overseeing North Westchester. The only other message mentioning North Westchester is from October 2017.

**II.    The Common Law Claims Against Laufer Must Be Dismissed Because Laufer Did Not Personally Receive Any Medicare Payments.**

The common law claims against Laufer must be dismissed for the separate and independent reason that Laufer did not personally receive any payments from Medicare.  The government does not dispute that Medicare did not make any payments to Laufer personally or individually.  The government's only real argument is that the "federal common law," and not New York common law, applies to the government's unjust enrichment and payment by mistake claims.  The government's argument is true in a technical sense, but it is well-established that the "federal common law . . . generally adopts the relevant state law rule unless there is a significant conflict between the state rule and a federal interest."  *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 188-189 (2d Cir. 2006).  Thus, unless the government can show that the New York common law elements for unjust enrichment and payment by mistake—elements that the complaint plainly does not satisfy with respect to Laufer—significantly conflict with a federal interest, the common law claims against Laufer must be dismissed.

Here, there is no significant conflict between the New York common law elements and a federal interest.  If the Medicare program made wrongful payments to the facilities, the government has recourse against the facilities.

## **CONCLUSION**

For the reasons stated above and in Laufer's opening brief, the claims against him should be dismissed. Because the government does not argue that it could supplement its complaint with additional material allegations against Laufer, and because the government in its opposition brief does not request an opportunity to amend its complaint to cure any deficiencies, the dismissal should be with prejudice.

Respectfully submitted,

Dated: February 18, 2022           By: */s/ Aaron M. Katz*
                                        Aaron Katz
                                        ROPES & GRAY LLP
                                        800 Boylston St.
                                        Boston, MA 02199
                                        (617) 686-0677
                                        *Aaron.Katz@ropesgray.com*

                                        *Attorney for Defendant Issac Laufer*

## CERTIFICATION OF COMPLIANCE

I, Aaron Katz, certify that the foregoing Reply Memorandum in Support of Defendants' Motion to Dismiss Plaintiffs' Amended Complaint complies with the formatting and word count rules.   The Memorandum contains 2,836 words, exclusive of the cover page, table of contents, table of authorities, signature block, and certification of compliance.

Dated: February 18, 2022                     ROPES & GRAY LLP

                                             _/s/ Aaron M. Katz_
                                             Aaron Katz

<u>**CERTIFICATE OF SERVICE**</u>

I, Aaron Katz, hereby certify that a true and correct copy of the foregoing document was served on counsel of record via ECF on this 8th day of February, 2022.

*/s/ Aaron M. Katz*
Aaron M. Katz
