**Brad Robertson**
brobertson@bradley.com
205.521.8188 direct



**Via ECF** [Courtesy Copy Via Federal Express]

The Honorable Judith C. McCarthy
United States Magistrate Judge
United States District Court
300 Quarropas Street
White Plains, NY 10601-4150

> Re: Discovery Issues
> *United States of America ex rel. Integra Med Analytics LLC. v. Isaac Laufer, et al.*, No. 7:17 Civ. 9424–CS

Dear Judge McCarthy:

Defendants, collectively, respectfully submit this summary of open discovery issues in accordance with the Court's directive during the Status Conference held on January 25, 2023,[1] and your Discovery Dispute Order (Dkt. 156).

## I. Background

The Government essentially has had years to conduct discovery. The Relator Integra Med Analytics, LLC filed this action over five years ago in December 2017, and the Government had formal discovery powers beginning at that time (through the Civil Investigative Demand process), as well as the ability to speak to potentially relevant witnesses in unsworn settings. During this one-sided discovery, Defendants produced over 2,200,000 pages of information, the Government conducted two depositions, and spoke to other potential witnesses that the Government is now refusing to identify. In recent weeks, Defendants have reproduced over 718,500 pages to the Government as it could not locate them from past productions.

Now that civil discovery has commenced, Defendants can seek reciprocal discovery from the Government for the first time to discover the purported bases for the Government's allegations

---

[1] A true and correct copy of the January 25, 2023, Status Conference Transcript is attached as **Exhibit A**.

4868-0559-2146.1

Bradley Arant Boult Cummings LLP | One Federal Place | 1819 Fifth Avenue North | Birmingham, AL 35203-2119 | 205.521.8000 | bradley.com

against them, to determine what the Government knew of the Defendants when it was paying their claims, and to determine how the Government understood its own reimbursement guidance. Each Defendant submitted a first set of requests for production ("RFPs") to the Government, Issac Laufer propounded his first set of interrogatories to the Government, and the Government provided written responses.[2]

The parties have had telephonic meet and confers over multiple days, including February 3, 6, 8, 10, 13, and 23. They have also exchanged written statements[3] in attempts to clarify each party's respective position on the points in contention. While those calls have been productive in certain respects, the United States continues to take positions on basic discovery issues that compromise Defendants' ability to receive due process in this matter.

Through the meet and confer process, the parties have resolved issues and continue to work towards compromise on others. For some issues, the parties have met an impasse. As reflected in the specific issues raised below, the Government has refused to produce information that allows Defendants to understand the Government's case and respond accordingly. Instead, it appears the Government intends to vail essential facts such as the identity of witnesses, documentary evidence, and even the claims it asserts are false, until so late in the discovery process that Defendants will have no means to investigate and test the Government's evidence. This effort to hide the ball will only delay resolution of critical disputes and inevitably prolong the discovery process.

---

[2] True and correct copies of the United States responses and objections to Defendants' first set of RFPs are attached as **Exhibits B.1 to B.14**. A true and correct copy of Plaintiff United States' Objections and Responses to Defendant Issac Laufer's First Set of Interrogatories is attached as **Exhibit C**.

[3] These written statements included a formal letter from Facility Defendants to the Government on February 10 (the "Facility Defendants Conferral Letter") (a true and correct copy of which is attached as **Exhibit D**), a formal letter from Laufer to the Government on February 15 (the "Laufer Conferral Letter") (a true and correct copy of which is attached as **Exhibit E**), a formal response letter from the Government to the Facility Defendants Conferral Letter and the Laufer Conferral Letter on February 21, 2023 (the "Government Conferral Response") (a true and correct copy of which is attached as **Exhibit F**), and a formal letter from Paragon to the Government on February 24 (a true and correct copy of which is attached as **Exhibit G**). Other exchanges via email have also taken place. *See, e.g.*, emails from Tami Whitney to the Government, true and correct copies of which are attached as **Exhibits H and I**.

**II.     The Government Should Identify the People It Interviewed During Its Investigation.**

The Government's initial disclosures identified the two individual Defendants and 152 mostly-former employees of the Facility Defendants as individuals who may have information the Government will use to support its claims.[4] The Defendants obviously want to, and should have the right to, depose any individual that the Government actually intends to call as a witness at trial (or who may be hearsay declarants). The Defendants could seek to depose all 152 non-party potential fact witnesses who the Government listed in its initial disclosures. That, however, would be extremely burdensome and, to the extent the Government's list includes individuals who the Government has not actually interviewed (which we assume it does), totally unnecessary. In an effort to streamline the discovery process for the parties and identify potential non-party witnesses alike, Mr. Laufer's first set of interrogatories requested that the Government identify the individuals it interviewed or sought to interview in this matter. Interrogatories "aimed at helping the propounding party assess which witnesses are most likely to possess probative, admissible evidence . . . are an integral part" of the discovery process. *Plumbers & Pipefitters Loc. Union No. 630 Pension-Annuity Tr. Fund v. Arbitron, Inc.*, 278 F.R.D. 335, 342 (S.D.N.Y. 2011). The Government, however, has refused to make the disclosure, asserting that such information is privileged under the work product doctrine. *See* Ex. F at 8.

It is impracticable, overly burdensome, and inefficient to expect the Defendants to locate, track down, interview and/or depose each of these 152 individuals to determine which of them are likely to be used by the Government as potential witnesses. As your Honor already acknowledged in the January 25, 2023, status conference, this list does "not really giv[e] the defendants any sense of what [the Government is] relying on"; the Court further questioned the idea that the "defendants

---

[4] A true and correct copy of the Government's Initial Disclosure Listing Employees is attached as **Exhibit J**.

3

. . . [should] have to wait until the date of trial to find out . . . actual main witnesses" that the Government intends to use. *See* Ex. A at 26–28.

As a compromise, the Government offered to identify only the handful of witnesses referenced by title in its complaint. *Id.* But this is no compromise at all given that the Government is obligated to provide the names of the witnesses referenced in their complaint regardless. *Plumbers & Pipefitters*, 278 F.R.D. at 340–41 ("[W]here a party has attempted to satisfy the pleading requirements . . . by 'showcasing' statements from a limited number of confidential witnesses, it may not thereafter refuse to disclose who they are on grounds of work product.").

The Government should be compelled to reveal the individuals it interviewed. Such information is not protected by the work product privilege, and even if it was, at best, it is fact work product where the circumstances warrant disclosure. *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04–CV–8144, 2008 WL 2941215, at *3 n.5 (S.D.N.Y. July 30, 2008). The requested disclosure would promote efficiency and avoid a "high-cost game of 'Where's Waldo?'" *Plumbers & Pipefitters,* 278 F.R.D. at 342; *see also In re Marsh & McLennan*, 2008 WL 2941215, at *4 (noting that "the work product privilege was outweighed by the "substantial number" of depositions that would be required in the alternative); *In re Initial Pub. Offering Sec. Litig.*, 220 F.R.D. 30, 34–36 (S.D.N.Y. 2003) (noting that "the work product doctrine might protect notes made by an attorney when interviewing witnesses. It does not, however, ordinarily protect the identities of those witnesses"); *Fort Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.*, No. 09 CIV. 3701 JPO JCF, 2013 WL 1896934, at *1–2 (S.D.N.Y. May 7, 2013) (compelling production of the witness names where "leaving the defendants to contact all 44 individuals to identify the confidential informants would be costly and time-consuming where the lead plaintiffs can easily provide the same information").

Given the Government's objections to revealing who they have interviewed, it follows that the Government will provide a similarly deficient response to outstanding interrogatories (due March 6, 2023), which request that the Government identify each such person and a summary of the information provided by each. This too is information that Defendants would be entitled to in discovery via depositions of the persons who have provided statements to the Government.

For the same reasons that the work product doctrine does not shield the Government from disclosing the identities of the individuals it interviewed, it similarly does not shield the underlying facts that the Government obtained from those witnesses. Indeed, this Court has already noted that witness statements are something that should generally be discoverable. Ex. A at 26 ("[I]f you get a witness statement, that should be something that has to be produced."); *see also Abdell v. City of New York*, No. 05-CV-8453, 2006 WL 2664313, at *6-7 (S.D.N.Y. Sept. 14, 2006) ("[L]ower courts have consistently treated witness statements as factual rather than opinion work product, even when those statements have been summarized by counsel."). Stated another way, the Defendants would be entitled to obtain information from any of these individuals at a deposition regarding whether they were contacted by the Government and what they told the Government. It is unreasonable to force the Defendants to go through that unduly burdensome exercise when the Government can easily provide that basic information in response to Defendants' interrogatories. The Court does not need to determine whether the information is "work product," as the Government claims. The Court needs only to find that, even if the information is work product, it would be unduly burdensome for the Defendants to have to acquire the information via countless depositions. The Defendants can then limit their depositions to those fact witnesses who the Government realistically may call at trial.

### III. The Government Must Search For and Produce Non-Public Documents and Communications in the Possession of Government Agencies.

Defendants' requests seek documents and communications in possession of government agencies on topics put at issue by the Government in this case. For these agency documents and communications, the Government has objected to relevancy and made blanket assertions of the deliberative process privilege and, in some instances, outrightly refused to search for documents.

For example, Lynbrook's RFPs Nos. 65 and 66 seek documents and communications regarding statements made by the Government related to 42 C.F.R. § 483.24[5] (Req. No. 65) and 42 C.F.R. § 409.32(c) [6] (Req. No. 66). *See* Ex. B.1 at 56. These two regulations and how they are interpreted are relevant to whether the Government can establish that any care provided to patients was inappropriate. They impact the elements of falsity, scienter, and materiality. The Government has asserted it is willing to search for "official public agency statements only" and "will not . . . search for or produce internal agency documents or communications concerning these regulations" because the records "are irrelevant and fall squarely within deliberative process privilege." Ex. F at 3–4. Similarly, the Government indicated that it will only search for "official agency statements" (Ex. F at 4)—*i.e.*, no internal communications or documents—in response to Lynbrook's Request for Production No. 67, which seeks documents and communications related to studies, reports, and analyses conducted by the Government regarding lengths of stay, levels of care, and changes in the administration of Medicare that affected lengths of stay and levels of care.

First, these documents are clearly relevant. The Government's position betrays the precepts of discovery. Relevance is determined not only by what the Government thinks the case is about,

---

[5] This regulation states that "[e]ach resident must receive and the facility must provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychosocial well-being."

[6] This regulation states that "[t]he restoration potential of a patient is not the deciding factor in determining whether skilled services are needed. Even if full recovery or medical improvement is not possible, a patient may need skilled services to prevent further deterioration or preserve current capabilities."

but also by the potential defenses available to Defendants, including, among other things, lack of falsity, scienter, and materiality. The internal government positions and communications on skilled nursing reimbursement, RUG levels, and skilled nursing care are all relevant to Defendants' defenses and whether the Government can establish the elements of an FCA case.

      Second, the Government's categorical refusal to conduct a search for internal documents on its mere suspicion that the deliberative process privilege (or any other privilege) will apply is inappropriate. The deliberative process privilege is nuanced, and an individualized assessment should be made on a document by document basis. *Jud. Watch, Inc. v. United States Dep't of Just.*, 20 F.4th 49, 55 (D.C. Cir. 2021) (acknowledging that the deliberative process privilege is "dependent upon the individual document and the role it plays in the administrative process") (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980)). It "does not shield documents that simply state or explain a decision the Government has already made . . . or protect material that is purely factual." *In re Pharm. Indus. Average Wholesale Price Litig.*, 254 F.R.D. 35, 40 (D. Mass. 2008). Nor should it be used as a shield to disclose evidence central to the issues in a case. *USA ex rel. Hartpence v. Kinetic Concepts Inc.*, No. CV 081-885 CAS (AGRx), 2018 WL 7568578, at *3 (C.D. Cal. July 30, 2018) ("Allowing the Government to use the deliberative process privilege to shield documents that may be directly relevant to materiality and damages would potentially permit the Government to benefit financially from a Relator's pursuit of a False Claims Act case even when the Government itself decided to pay certain categories of claims, or was aware of the Defendant's billing practices and knowingly paid the claims anyway.") And even if the privilege applied to a document, "[a] litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *U.S. ex rel. Poehling v. UnitedHealth Grp.,*

*Inc.*, No. CV 16-8697 MWF (SSX), 2018 WL 8459926, at *10 (C.D. Cal. Dec. 14, 2018) (quoting *F.T.C. v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984)).

In the least, for these requests, the Government should be required to conduct a search of the internal agency documents and communications requested, review relevant documents, and, if a document is withheld due to a privilege, identify the document on a privilege log so that Defendants can make their own determination as to whether the privilege applies.

The same reasoning should be applied to all other requests where Defendants are seeking agency documents and communications related to topics directly at issue in this case, including (i) documents related to the reasons for changing to the PDPM reimbursement model; (ii) documents related to the *Jimmo* Settlement about the Government applying an inappropriate standard for denying therapy claims; (iii) documents concerning the benefits and detriments of changing to the PPS reimbursement model. *See* Ex. B.12 at Paragon's First Set of RFPs Nos. 18–21. In response to these requests, the Government should search within the agencies for relevant documents, and any documents withheld on privilege grounds should be specifically identified on a privilege log.

## IV. The Government Should Identify Documents in Its Possession Responsive to the RFPs, Including Those Previously Produced by Any Defendant.

In response to almost every single one of the Defendants' RFPs, the Government has objected to the extent they seek information that is in the "possession, custody, or control of . . . or equally accessible to" that particular Defendant. *See* summary chart, attached as **Exhibit K**. In meet and confers, the Government has represented that most of the requested documents were previously produced by nine of the eleven Facility Defendants, and that they have no obligation to identify documents in their possession that were produced by any of the Defendants. They have offered to disclose the Bates labels for only the documents that they "used to draft" the Complaint and other documents that they "identified and set aside prior to filing the Complaint." Ex. F at 2.

The Government's objection ignores the very purpose of discovery—for a party to understand what documents an opposing party believes support their respective claims and defenses. *See S.E.C. v. Cymaticolor Corp.*, 106 F.R.D. 545, 549 (S.D.N.Y. 1985). The Defendants should not have to guess which documents the Government has in its possession and views as responsive to their requests. *Period Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 CIV. 5560 (RMB) HBP, 2008 WL 4452134, at *5 (S.D.N.Y. Oct. 2, 2008) (classifying responding party's argument that documents were within requesting party's files as an "insufficient ground" on which to refuse production).

At the January 24, 2023, Status Conference, the Government previewed its position to the Court. Your Honor attempted to head off the argument, stating: "[T]he Federal Rules do require you to not just refer to -- basically, not do a document dump and not say, oh, everything is in the other person's possession. You do have to . . . give a little bit more guidance and a little bit more support." *See* Ex. A at 23–24. Yet the Government persists.

It is also entirely appropriate to request documents a government agency has to support the allegations in its complaint. *S.E.C. v. Collins & Aikman Corp.*, 256 F.R.D. 403, 407–09 (S.D.N.Y. 2009) (requiring S.E.C. to produce documents underlying allegations in its complaint, rather than refer generally to its earlier production of 1.7 million documents). If the Government has received responsive documents from any source, including one of the Defendants, prior to the filing of its complaint, it must produce or identify by Bates number the responsive document to the Defendants.

## V. Insufficient Responses to Whitney's RFPs

With respect to Whitney's RFP Nos. 5 and 7,[7] which seek documents concerning directions and instructions made to or by Whitney concerning the duration of patient stay or level of care and Medicare form or payment submissions caused by Whitney, the Government stated it will produce documents potentially responsive to these requests only through its patient sampling. We understand this response to be a representation by the Government that it does not have any documents directly about Whitney responsive to this request. The Government should confirm this position in writing, or it should be compelled to produce all such responsive documents—not a sampling based on a patient sample.

Additionally, the Government stated it would meet and confer concerning Whitney's RFP No. 9 [8] (concerning studies of average length of stay/level of care), but the parties have been unable, as yet, to discuss this topic and resolve this open issue. This is true as well with respect to Whitney's RFP No. 11,[9] which seeks complaints or reports of wrongdoing about the persons who provided information to the Government about any of the Defendants. The Government flatly refused to produce or log responsive documents. Because this information is clearly relevant, it must be identified on a privilege log to allow Whitney to assess the Government's basis for asserting privilege. Given the dearth of documents the Government has concerning its fraud claims against Whitney, this information is all the more critical for Whitney's defense. Finally, as to Whitney's RFP No. 10 [10] (concerning complaints and reports of wrongdoing about any Defendant), the Government unilaterally narrowed this request to pertain to Whitney only. Whitney insists that any such documents concerning any Defendant must be produced.

---

[7] *See* Ex. B.14 at 7, 9–10.
[8] *See* Ex. B.14 at 12–13.
[9] *See* Ex. B.14 at 13–14.
[10] *See* Ex. B.14 at 13.

10

Sincerely,

*/s/ J. Bradley Robertson*
BRADLEY ARANT BOULT CUMMINGS LLP
Jack W. Selden
J. Bradley Robertson
1819 Fifth Avenue South
Birmingham, AL 35203
Phone: 205.521.8000
Fax: 205.521.8800

Jonathan H. Ferry
Lyndsay E. Medlin
Truist Center
214 North Tryon Street, Ste 3700
Charlotte, NC 28202
Phone: 704.338.6000
Fax: 704.332.8858

*Counsel for Defendants Excel at Woodbury for Rehabilitation and Nursing LLC; East Rockaway Center LLC d/b/a Lynbrook Restorative Therapy and Nursing; Oasis Rehabilitation and Nursing LLC; Suffolk Restorative Therapy & Nursing LLC d/b/a Momentum at South Bay for Rehabilitation and Nursing; Treetops Rehabilitation & Care Center LLC d/b/a North Westchester Restorative Therapy and Nursing Center; Quantum Rehabilitation and Nursing LLC; and Surge Rehabilitation and Nursing LLC*


*/s/ Miranda Hooker*
Miranda Hooker, Esq. (admitted pro hac vice)
Goodwin Procter LLP
100 Northern Avenue
Boston, MA 02110
(617) 570-1334
MHooker@goodwinlaw.com

*Counsel for Defendants Long Island Care Center, Inc. and Forest Manor Care Center, Inc.*

*/s/ Abby Pendleton*
The Health Law Partners, P.C. d/b/a
The Dresevic, Iwrey, Kalmowitz &
Pendleton Law Group
Abby Pendleton
Clinton Mikel
Jonathan C. Messina
15 West 38th Street, 4th Floor, Ste. 735
New York, NY 10018
Phone: 516.492.3390
Fax: 516.492.3389
Email: apendleton@thehlp.com

*Counsel for Defendant*
*Sutton Park Center for Nursing & Rehabilitation, LLC*

*/s/ Brendan M. Goodhouse*
Brendan M. Goodhouse
Seth Maxwell Pavsner
Jordan Matthew Brooks
Cuddy & Feder LLP
445 Hamilton Avenue, 14th Floor
White Plains, New York 10601
Phone: 914-761-1300
Fax: 914-761-5372
BGoodhouse@cuddyfeder.com
SPavsner@cuddyfeder.com

*Counsel for Defendant Montclair Care Center Inc.*

*/s/ Aaron Lichtman*
Aaron Lichtman, Esq.
The Lichtman Law Firm
P.O. Box 370
56 Westchester Ave.
Pound Ridge, New York 10576
(914) 232-1005
lichtman@outsidetbb.com

*Counsel for Defendant Paragon Management SNF LLC*

*/s/ Michael Paul Bowen*
Michael Paul Bowen
Edward E. Shapiro
GLENN AGRE BERGMAN & FUENTES LLP
55 Hudson Yards
New York, New York 10001
Tel: (212) 358-5600
mbowen@glenagre.com
eshapiro@glenagre.com

*Counsel for Defendant Tami Whitney*


*/s/ Aaron M. Katz*
Aaron M. Katz, Esq.
AARON KATZ LAW LLC
399 Boylston St., 6th Floor
Boston, MA 02116
(617) 686-0677
AKatz@aaronkatzlaw.com

*Counsel for Defendant Issac Laufer*

13