**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* INTEGRA MED ANALYTICS LLC, <br><br>      Plaintiff, <br><br>      v. <br><br>ISAAC LAUFER, MONTCLAIR CARE CENTER, INC., EAST ROCKAWAY CENTER LLC, EXCEL AT WOODBURY FOR REHABILITATION AND NURSING, LLC, LONG ISLAND CARE CENTER INC., TREETOPS REHABILITATION & CARE, SUTTON PARK CENTER FOR NURSING & REHABILITATION, LLC, SUFFOLK RESTORATIVE THERAPY & NURSING, LLC, OASIS REHABILITATION AND NURSING, LLC, and FOREST MANOR CARE CENTER, INC., <br><br>      Defendants. | 17 Civ. 9424 (CS) <br><br> **PARAGON MANAGEMENT SNF LLC'S SECOND REQUEST FOR PRODUCTION TO THE UNITED STATES** |
| UNITED STATES OF AMERICA, <br><br>      Plaintiff, <br><br>      v. <br><br>ISSAC LAUFER, TAMI WHITNEY, PARAGON MANAGEMENT SNF LLC, MONTCLAIR CARE CENTER, INC., EAST ROCKAWAY CENTER LLC, EXCEL AT WOODBURY FOR REHABILITATION AND NURSING, LLC, LONG ISLAND CARE CENTER INC., TREETOPS REHABILITATION & CARE CENTER LLC, SUTTON PARK CENTER FOR NURSING & REHABILITATION, LLC, SUFFOLK RESTORATIVE THERAPY & NURSING, LLC, OASIS REHABILITATION AND NURSING, LLC, FOREST MANOR CARE CENTER, INC., SURGE REHABILITATION & NURSING LLC, and QUANTUM REHABILITATION & NURSING LLC, <br><br>      Defendants. | |

Defendant Paragon Management SNF LLC, by counsel and pursuant to Federal Rule of Civil Procedure 34, submits its Second Request for Production to the United States. The United States shall respond to these requests in accordance with the Federal Rules of Civil Procedure, the local rules of the Southern District of New York, and the definitions and instructions below.

## INSTRUCTIONS

1. These requests shall be deemed continuing so as to require additional responses if You acquire additional information or documents between the time the responses are served and the time of trial. Such additional responses shall be served seasonably, but not later than thirty (30) days after such further information or documents are received.

2. All documents produced in response to a request should be marked with a Bates number or other such similar numbering system. When you refer to a document produced in response to a specific discovery request, a reference to the corresponding Bates number should also be made.

3. In producing documents and information responsive to the following requests, You are requested to produce all documents and information in Your custody, control or possession, regardless of where such documents or information are located including documents in the custody, control or possession of your attorneys, agents, or other representatives. You are also requested to produce any document which is no longer in your immediate physical possession, but which you have a right to compel production from a third-person or which is otherwise subject to your control.

4. If any or all documents or information identified herein are no longer in Your possession, custody, or control for any reason including destruction, loss, or any other reason, then with respect to each and every such document provide the following information: (a) its present custodian and location; (b) describe the nature of the document (e.g., letter or memorandum); (c) state the date of the document; (d) identify the persons who sent and received the original and a

copy of the document; (e) state in as much detail as possible the contents of the document; and (f) state the manner and date of disposition of the document including the reason for disposal, the person authorizing the disposal and the person or persons who disposed of the document.

5.  If any of the documents or parts thereof identified herein are withheld for privilege, You shall make your claim of privilege in accordance with Local Civil Rule 26.2 and You shall state the privilege being claimed, give an explanation for Your claim of such privilege and provide the following:

>   (i) a brief description of the document, including:
>
>   >   a.  the date of the document;
>   >
>   >   b.  the names of its author(s) or preparer(s) and identification by employment and title of each such person;
>   >
>   >   c.  the names of each person who was sent or had access to or custody of the document, together with an identification by employment of each such person; and
>   >
>   >   d.  describe the nature of the documents, communications or tangible things not produced or disclosed.

6.  For any other documents you identify and are withheld for any reason or claim, You shall state the following so that your claim for withholding the document may be assessed:

>   (a)  the ground of nondisclosure asserted;
>
>   (b)  a statement of facts constituting the basis for the ground of nondisclosure;
>
>   (c)  a brief description of the document, including:
>
>   >   i.  the date of the document;

    ii. the names of its author(s) or preparer(s) and identification by employment and title of each such person;

    iii. the names of each person who was sent or had access to or custody of the document, together with an identification by employment of each such person; and

    iv. describe the nature of the documents, communications or tangible things not produced or disclosed.

7. Requests which cannot be complied with in full shall be responded to as completely as possible, and incomplete responses shall be accompanied by a specification of the reasons for the incompleteness of the response, as well as by a statement of whatever knowledge, information or belief you possess with respect to each request to which you have not completely responded.

8. If any document subject to any discovery request has been destroyed, cannot be located by you, or is no longer thought to be in existence, please so indicate and state the reason for the destruction of said document, its last known location, by whom it was destroyed, when it was destroyed, and the description of the document in a fashion sufficient to identify and describe it.

9. If no documents exist that are responsive to a particular request, You shall include, in Your response to this Request and at the time of production, a written statement to that effect.

10. In responding this Request, You shall locate, gather and produce documents from Your files and other sources, including documents stored electronically, in such manner as to ensure that the source and location of each documents may be readily determined.

11. In responding to this Request, if You locate responsive documents, including documents stored electronically, in folders or other containers, You shall produce those folders and

containers, including any labels identifying such folders or containers, together with responsive documents contained therein.

12. In responding to this Request, documents attached to each other shall not be separated unless You also identify such separation and provide records sufficient to permit the reconstruction of such grouping of documents.

13. In responding this Request, if You locate any documents that has markings on both sides, You shall produce both sides of the document.

## DEFINITIONS

1. "Action" refers to the claims pending in the United States District Court for the Southern District of New York and case styled as *U.S. ex rel. Integra Med Analytics LLC v. Laufer, et al.*, Case No. 7:17-cv-09424.

2. "Complaint" refers to the operative complaint filed in this Action.

3. "Copy" means original hard copy and any and all electronic and/or imaged copies.

4. ""Including" means "including but not limited to".

5. "Plaintiff," "Government," "You," or "Your," refers to the United States of America, including without limitation any branch of the federal government, all political subdivisions, and contractors of any branch of the federal government and Plaintiff's agents, servants, or representatives, including attorneys, consultants, and experts. This definition expressly includes, but is not limited to, the Centers for Medicare and Medicaid Services, the Department of Justice, The Office of the Inspector General, US Government Publishing Office, and Medicare Administrative Contractors, its subsidiaries and affiliates.

6. "Relator" or "Integra" refers to the relator in this Action Integra Med Analytics LLC, its officers, directors, employees, partners, corporate parents, subsidiaries or affiliates.

7. "Defendants" refers to the following defendants named in this Action and any of their respective officers, directors, employees, partners, corporate parents, subsidiaries or affiliates:

    a. Issac Laufer;

    b. Tami Whitney;

    c. Paragon Management SNF LLC;

    d. East Rockaway Center LLC d/b/a/ Lynbrook Restorative Therapy and Nursing;

    e. Excel at Woodbury for Rehabilitation and Nursing, LLC;

    f. Forest Manor Care Center, Inc. d/b/a Glen Cove Center for Nursing and Rehabilitation;

    g. Long Island Care Center, Inc.;

    h. Montclair Care Center, Inc. d/b/a Emerge Nursing and Rehabilitation at Glen Cove;

    i. Oasis Rehabilitation and Nursing LLC;

    j. Quantum Rehabilitation and Nursing LLC;

    k. Suffolk Restorative Therapy & Nursing LLC d/b/a Momentum at South Bay for Rehabilitation and Nursing;

    l. Surge Rehabilitation and Nursing LLC;

    m. Sutton Park Center for Nursing & Rehabilitation, LLC; and

    n. Treetops Rehabilitation & Care Center LLC d/b/a North Westchester Restorative Therapy and Nursing Center.

8. "SNF" refers to a skilled nursing facility.

9. "CMS" refers to the Centers for Medicare and Medicaid Services, as well as all its predecessors, including the Health Care Financing Administration.

10. "Lynbrook" refers to named defendant East Rockaway Center LLC d/b/a/ Lynbrook Restorative Therapy and Nursing and any of its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

11. "Excel" refers to named defendant Excel at Woodbury for Rehabilitation and Nursing, LLC and any of its officers, directors, employees, partners, corporate parents, subsidiaries or affiliates.

12. "Glen Cove" refers to named defendant Forest Manor Care Center, Inc. d/b/a Glen Cove Center for Nursing and Rehabilitation and any of its officers, directors, employees, partners, corporate parents, subsidiaries or affiliates.

13. "LICC" refers to named defendant Long Island Care Center, Inc. and any of its officers, directors, employees, partners, corporate parents, subsidiaries or affiliates.

14. "Emerge" refers to named defendant Montclair Care Center, Inc. d/b/a Emerge Nursing and Rehabilitation at Glen Cove and any of its officers, directors, employees, partners, corporate parents, subsidiaries or affiliates.

15. "Oasis" refers to named defendant Oasis Rehabilitation and Nursing LLC and any of its officers, directors, employees, partners, corporate parents, subsidiaries or affiliates.

16. "Quantum" refers to named defendant Quantum Rehabilitation and Nursing LLC and any of its officers, directors, employees, partners, corporate parents, subsidiaries or affiliates.

17. "Momentum" refers to named defendant Suffolk Restorative Therapy & Nursing LLC d/b/a Momentum at South Bay for Rehabilitation and Nursing and any of its officers, directors, employees, partners, corporate parents, subsidiaries or affiliates.

18. "Surge" refers to named defendant Surge Rehabilitation and Nursing LLC and any of its officers, directors, employees, partners, corporate parents, subsidiaries or affiliates.

19. "Sutton Park" refers to named defendant Sutton Park Center for Nursing & Rehabilitation, LLC and any of its officers, directors, employees, partners, corporate parents, subsidiaries or affiliates.

20. "North Westchester" refers to named defendant Treetops Rehabilitation & Care Center LLC d/b/a North Westchester Restorative Therapy and Nursing Center and any of its officers, directors, employees, partners, corporate parents, subsidiaries or affiliates.

21. "Facility Defendants" refers to North Westchester, Sutton Park, Surge, Momentum, Quantum, Emerge, Oasis, Glen Cove, LICC, Lynbrook, and Excel collectively.

22. "Laufer" refers to named defendant Issac Laufer.

23. "Whitney" refers to named defendant Tami Whitney.

24. "Paragon" refers to named defendant Paragon Management SNF LLC.

25. "Ultra High" refers to the rehabilitation Resource Utilization Group level as defined by the Department of Health and Human Services' and the Center for Medicare & Medicaid Service's rules and regulations set forth in 63 Fed. Reg. 26,252.

26. "Medicare" means the Medicare program, Title XVIII of the Social Security Act, 42 U.S.C. §§1395 *et seq.,* and all regulations, rules and policies promulgated under those statutory provisions.

27. In accordance with Local Civil Rule 26.3, the following terms are defined as follows:

   a. "Communication" means the transmittal of information (in the form of facts, ideas, inquiries or otherwise).

   b. "Document" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A), and any written, printed, typed, graphic, photographed, and

8

recorded or otherwise reproduced or stored communication or representation, including, but not limited to, letters, memoranda, correspondences, and emails. This term includes whatever form and by whatever means such documents may have been created or stored, including, but not limited to: any handmade form, such as writing; any photographic form, such as microfilm, microfiche, prints, slides, negatives, or photocopies; any mechanical form, such as printing or typing; any electrical, electronic, or magnetic form, such as tape recordings, cassettes, or any information on an electronic or magnetic storage device such as floppy diskettes, hard disks, backup tapes, CD-ROMS, optical discs, printer buffers, smart cards, memory calculators, electronic dialers, hard drives, or electronic notebooks; and any printout or readout from any magnetic, optical, or other electronic storage device. All documents provided in response to this Request are to include all marginalia and post-its, as well as any attachments referred to in or incorporated by the documents. All documents provided in response to this Request are to include all versions of each responsive document, including all drafts and copies of each document. A draft or non-identical copy is a separate document within the meaning of this term.

c. "Identify" or "to identify" (with respect to persons). When referring to a person, "identify" or "to identify" means to give, to the extent known, the person's full name, present or last known address, telephone number and when referring to a natural person, additionally, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name

9

      of that person need be listed in response to subsequent discovery requesting the identification of that person.

    d. "Identify" or "to identify" (with respect to documents). When referring to documents, "identify" or "to identify" means to give, to the extent known, the (i) type of document; (ii) general subject matter of the document; (iii) date of the document; and (iv) author(s), addressee(s) and recipient(s). In the alternative, the responding party may produce the documents, together with identifying information sufficient to satisfy Fed. R. Civ. P. 33(d).

    e. "Plaintiff" and "Defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

    f. "Person" is defined as any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

    g. "Concerning" means relating to, referring to, describing, evidencing or constituting.

    h. "All," "any," and "each" shall each be construed as encompassing any and all.

    i. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

28. "Regarding," "pertaining to," "relating to," "related to" or "related" mean relating to, describing, evidencing, supporting, contradicting, constituting, containing, recording,

10

discussing, summarizing, analyzing, disclosing, or referring to in whole or in part, directly or indirectly.

29. The use of the singular form of any word includes the plural and vice versa.

## REQUESTS

**REQUEST NO. 1:** Documents or other materials constituting training or guidance regarding how to determine if rehabilitation therapy is reasonable, unreasonable, necessary or unnecessary, skilled or unskilled, given "in order to maximize the amount billed," and/or when it is appropriate or inappropriate to prolong patient stays at a skilled nursing facility, which were provided to or by the Office of the Inspector General's Medicare Fraud Strike Force, the Health Care Fraud Unit of the United States Department of Justice, The Federal Bureau of Investigations, Medicaid Fraud Control Units, the HHS-OIG Fraud Hotline, the CMS Medicare Learning Network, the Medicare Strike Force or CMS between 2007 through 2019.

**REQUEST NO. 2:** Guidance addressing what constituted[s] reasonable, unreasonable, necessary, or unnecessary, skilled or unskilled care, and/or when it is appropriate or inappropriate to prolong patient stays at a skilled nursing facility, given by the Government to nursing homes or members of the public concerning nursing homes between 2006 and 2019.

**REQUEST NO. 3:** Documents sufficient to identify each False Claims Act, 31 U.S.C. § 3729 *et seq.* investigation conducted by the Government against a nursing home and/or group of nursing homes between 2007 and 2019 and whether the

Government initiated action, declined to initiate action, intervened, and ultimately whether the matter settled, was tried to verdict, dismissed, or otherwise resolved.

**REQUEST NO. 4:** Documents discussing, addressing, explaining, or setting forth how and why the Urban Institute's 2001 study to develop refinements to the PPS system was used to implement changes to the Medicaid reimbursement system in 2006.

**REQUEST NO. 5:** Documents dated 2001-2006 discussing, addressing, explaining, or setting forth the adequacy, flaws, benefits and/or detriments of the RUG-III model in use at the time with regard to residents who require(d) extensive services.

**REQUEST NO. 6:** Documents discussing, addressing, explaining, or setting forth the reasons for CMS' 2006 implementation of the RUG-53 classification and/or the incorporation of nine additional case-mix groups in the new Rehabilitation Plus Extensive Services category.

**REQUEST NO. 7:** Documents discussing, addressing, explaining, or setting forth the goals, purpose, use, methodology, results, flaws, or data utilized in the 2006-2007 CMS staff time study, referred to as the "Staff Time and Resource Intensity Verification Project, "STRIVE" or STRIVE Study.

**REQUEST NO. 8:** Documents discussing, addressing, explaining, or setting forth the need to ensure that profit was higher for high acuity residents than for lower acuity residents, or that detail, discuss, or contemplate reimbursement incentives for high acuity residents and/or the desire to ensure profits increase as acuity and/or the amount of therapy increases.

**REQUEST NO. 9:** Documents discussing, addressing, explaining, or setting forth: (i) STRIVE's use of actual direct care time to estimate administrative time; (ii) STRIVE's

failure or success at quantifying the change in nursing administrative time as acuity changed; or (iii) whether or not STRIVE utilized quantification of the change in nursing administrative time in the model ultimately adopted.

**REQUEST NO. 10:** Documents discussing, addressing, explaining, or setting forth reasons for changes in the resident classification system that were developed using the STRIVE data, including without limitation, the addition of new RUGs, changes in the allocation of therapy minutes administered to multiple patients at once (i.e. Concurrent therapy), and modifications to the scale used to measure activities of daily living (ADLs).

**REQUEST NO. 11:** All drafts of the final regulations establishing the revised payment model, RUG-IV, which was published in final in August 2009 and effective 2011 together with documents discussing, addressing, or setting forth the reason(s) or justification(s) for such revision, including without limitation, what was sought to be incentivized or what conduct the change sought to curtail.

**REQUEST NO. 12:** Documents discussing, addressing, explaining, or setting forth that "restoration potential of a patient is not the deciding factor in determining whether skilled services are needed" and/or "a patient may need skilled services to prevent further deterioration or preserve current capabilities."

**REQUEST NO. 13:** Documents and studies setting forth the prevalence of the use of the so called "improvement standard," or documents advocating or utilizing the "improvement standard" to determine in whole, or in part, Medicare reimbursement for rehabilitation therapy services.

**REQUEST NO. 14:** Documents discussing, addressing, explaining, or setting forth whether and/or how or why use of the balance tests in appropriate or inappropriate in a skilled nursing facility setting and/or how to appropriately, inappropriately or therapeutically utilize a balance test.

**REQUEST NO. 15:** Any guidance or directives advising that it was inappropriate, or a violation of CMS policy, rules, regulation or law to utilize a balance test and/or to limit a patient's ability to function independently.

**REQUEST NO. 16:** Documents discussing, addressing, explaining, or setting forth whether or to what extent contractors charged with adjudicating Medicare claims submitted by skilled nursing facilities ("Contractors") were accurate, inaccurate, appropriate, or inappropriate in their claims adjudication, including without limitation statistical analysis of the frequency of Contractor error.

**REQUEST NO. 17:** Documents discussing, addressing, explaining, or setting forth impediments, challenges or difficulties ensuring either Contractors or skilled nursing homes submit or adjudicate claims appropriately and/or the confusion created by the rules regulations and/or laws or the incentives they create(d).

**REQUEST NO. 18:** Documents discussing, addressing, explaining, or setting forth whether or to what extent skilled nursing facilities generally, or any particular subgroup of skilled nursing facilities, were accurate, inaccurate, appropriate, or inappropriate in the submission of claims for reimbursement to/from Medicare, and the prevalence of upcoding, increasing length of stay beyond that which is permitted and/or the flaws or characteristics of the reimbursement system which encourage or permit errors or wrongdoing.

**REQUEST NO. 19:** Documents sufficient to demonstrate each version and each draft of the: (i) program manual; (ii) program transmittals; (iii) Medicare Learning Network (MLN) Matters articles; and (iv) 1-800 MEDICARE scripts released to the public and/or provided to CMS contractors engaged in claims review for skilled nursing facilities all to the extent they discuss the provision of skilled therapy to nursing home residents, the use of the "Ultra-high" reimbursement category, length of stay of nursing home residents, submission or adjudication of Medicaid claims from or by nursing homes, and/or the appropriateness or inappropriateness of the same.

**REQUEST NO. 20:** Documents constituting, discussing, addressing, explaining or setting forth the results of the Government's "accountability measures" to monitor CMS contractors charged with review of skilled nursing facility submission of payment for Medicare residents, including without limitation its "review of random sample of SNF coverage decisions to determine overall trends and identify any problems" and "review of individual claims." (For assistance in identifying and defining "accountability measures", we respectfully direct the Government to its representation that it would implement "accountability measures" as part of the *Jimmo v. Sebelius* Settlement. The definition of "accountability measures" as used herein is intended to be the same definition that the Government utilized in its *Jimmo* Fact Sheet, which was and remains publicly published.)

**REQUEST NO. 21:** Documents constituting, discussing, addressing, explaining or setting forth the results of the Center for Medicare Advocacy 2018 national survey. (For assistance in identification, the survey was conducted by the Center for Medicare Advocacy several years after the *Jimmo v Sebelius* Settlement and showed in part that

the Government was still not complying with *Jimmo*, as "40% of respondents [CMS Contractors charged with assessing validity of claims] had not heard of the *Jimmo* Settlement and 30% of respondents were not aware that Medicare coverage does not depend on a beneficiary's potential for improvement.")

**REQUEST NO. 22:** Documents discussing, addressing, explaining, or setting forth that Medicare providers must be "patient advocates," and/or discussing the Center for Medicare Advocacy's call for providers to be "patient advocates".

**REQUEST NO. 23:** Documents discussing or addressing "barriers to care" faced by skilled nursing residents and/or factors that result in shortened length of stay.

**REQUEST NO. 24:** Documents discussing, addressing, explaining, or purporting to set forth why, if, and/or the frequency in which Medicare beneficiaries and/or residents receiving rehabilitation at skilled nursing facilities leave against medical advice (AMA), and/or leave before all beneficial treatment is provided.

**REQUEST NO. 25:** Documents discussing, addressing, explaining, or purporting to set forth the type, category, frequency of resident and/or family complaints concerning nursing home comfort, food, staffing, problems with roommates, lack of appropriate care and/or other complaints.

**REQUEST NO. 26:** Documents discussing, addressing explaining, or purporting to set forth the type, category, and/or frequency of nursing home resident feelings of being abandoned, loneliness, depression or other negative feelings or effects of residents being in skilled nursing environments and/or caused by nursing home settings, care or environment.

**REQUEST NO. 27:** Documents discussing, addressing, explaining, or purporting to set forth why Medicare part A covers up to 100 days of care in a SNF and/or whether such period is or is not appropriate or should be longer or shorter.

**REQUEST NO. 28:** Documents discussing, addressing, explaining, or purporting to set forth how to determine whether or not a nursing home patient requires (i) "skilled nursing care or skilled rehabilitation services (or both) on a daily basis", (ii) "services that, as a practical matter can only be provided in a skilled nursing facility on an inpatient basis", and/or (iii) care for a condition "that arose while the patient was receiving care in a skilled nursing facility".

**REQUEST NO. 29:** Documents discussing, addressing, explaining, or purporting to set forth how to determine when skilled rehabilitation is "so inherently complex that [it] can be safely and effectively performed only by, or under the supervision or, professional or technical personnel".

**REQUEST NO. 30:** Documents discussing, addressing, explaining, or purporting to set forth how to determine or identify when rehabilitation services are or are not to help patients recover or improve their function, or to the extent possible, restore their level of function to the level prior to the patient's most recent hospitalization.

**REQUEST NO. 31:** Documents discussing, addressing, explaining, or quantifying the frequency of use by nursing homes of "exactly the minimum needed [minutes per week] as qualifiers" for specific RUG levels.

**REQUEST NO. 32:** Documents discussing, addressing, explaining, or purporting to set forth appropriate or inappropriate use of canes, wheelchairs, or assistive devices in nursing homes.

**REQUEST NO. 33:** CMS data (or protected access to the same) listed in the ResDAC, Research Data Assistance Center, at www.resdac.org/file-availability under the category of "any" and/or detailed at www2.ccwdata.org/web/guest/data-dictionaries, all to the extent the foregoing relates to any Medicare Beneficiaries who had a stay in a skilled nursing facility between January 2009 and October 31, 2019, whether such data relates to such resident before, during or after such stay.

**REQUEST NO. 34:** All research, studies, examinations, analysis, and/or surveys, as they relate to nursing homes and/or their residents concerning: (i) Medicare billing, Medicare fraud, Medicare reimbursement, (ii) errors in payment of Medicare claims, (iii) length of stay, (iv) Medicare utilization, (v) effect or frequency of tracking the number of Medicare days used by each patient and/or the number of discharges, (vi) curbing or encouraging discharges, (vii) maximization of Medicare reimbursement or the provision of therapy longer than or less than necessary, (viii) strategies used to prolong patient stay and/or stunting patient progress, (ix) the use, or overuse, of the "ultra-high" therapy category and/or (x) the relationship between utilization, RUG levels and/or length of stay on the one hand and outcomes and/or quality of care on the other. The foregoing request is without regard to whether the research, studies, examinations, analysis and/or surveys were ultimately published, utilized, or made available to the public.

**REQUEST NO. 35:** Any documents which mention or discuss Paragon Management, Tami Whitney, and/or Isaac Laufer. (For clarification, this request <u>does</u> seek documents gathered as part of the Government's investigation from parties other than from Paragon. It does not seek documents created by Government lawyers for their client in

anticipation of litigation and/or documents drafted by counsel to the extent the document merely contains or constitutes the mental impressions of counsel.

Dated: February 24, 2023                    Respectfully,

*/s/ Aaron Lichtman*
Aaron Lichtman, Esq.
The Lichtman Law Firm
P.O. Box 370
56 Westchester Ave.
Pound Ridge, New York 10576
(914) 232-1005
lichtman@outsidetbb.com

*Counsel for Defendant Paragon Management SNF LLC*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, Paragon Management SNF LLC's Second Requests for Production to the United States, was served via electronic mail on February 22, 2023 to Counsel of record for the United States of America to:

Jacob Bergman - Jacob.Bergman@usdoj.gov
Rachael Doud - Rachael.Doud@usdoj.gov
Danielle Levine - Danielle.Levine@usdoj.gov
Tara Schwartz – Tara.Schwartz@usdoj.gov

/s/ Aaron Lichtman
**Attorney**