

<u>**By ECF**</u>                                             May 1, 2023
Hon. Judith C. McCarthy
300 Quarropas Street
White Plains, NY 10601-4150

> Re:     *United States* ex rel. *Integra Med Analytics LLC v. Isaac Laufer* et al.,
>            No. 17 Civ. 9424 (CS) (JCM)

Dear Judge McCarthy:

This Office represents the Government in the above-referenced False Claims Act action. We write to respond to the four letters from Tami Whitney (Dkt. No. 172), Paragon SNF Management ("Paragon") (Dkt. No. 173), and the Facility Defendants (Dkt. Nos. 175, 176).[1]

### A.  Whitney's Interrogatories Seek Protected Work Product

At their core, Whitney's interrogatories ask the Government to: (1) identify and categorize each and every document that could support each specific allegation in the Complaint (Interrogatories 2-4, 6-7, 9); (2) identify all individuals whom the Government interviewed and the contents of those interviews (Interrogatories 2-4, 6-7, 9); and (3) disclose protected expert work product in advance of expert discovery (Interrogatories 5, 8). For the reasons set forth below, the Government should not be required to modify its interrogatory responses.

**Interrogatories Asking the Government to Categorize Defendants' Documents by Complaint Allegation.** Following the March 15 conference, the parties agreed that the Government would identify for Defendants (a) all factual documents cited in the Complaint, and (b) all documents that the Government identified as potentially relevant during its investigation of Defendants. *See* Mar. 15, 2023 Hr'g Tr. 39:10-40:7. The Government had already provided a list

---

[1] Rather than address the four letters submitted by Defendants separately, the Government submits an omnibus response of no more than eight double-spaced pages (two double-spaced pages for each letter).

of the documents cited in the Complaint and has since provided a list of the approximately 700 documents that the Government identified as potentially relevant to the Complaint's allegations during its investigation. Whitney's counsel represented at the conference that Defendants would not require the Government to categorize those documents by allegation or review documents produced by Defendants during discovery that support the Complaint's allegations.[2] But Whitney now is again asking the Government, by way of interrogatory, to categorize the documents that support specific allegations.[3] As explained in the Government's March 1 letter (Dkt. No. 164, at 7-9), this information is protected attorney work product, and Defendants have not cited any case where a court ordered what Defendants request. Similarly, courts generally reject the use of contention interrogatories to obtain every fact or piece of evidence a party wishes to offer, or to seek documents which a party is in a position to review itself. *E.g.*, *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14 MD 2542 (VSB), 2020 WL 6290584, at *3 (S.D.N.Y. Oct. 27, 2020). Accordingly, the Court should deny Whitney's request.

**Interrogatories Requesting That the Government Identify All Individuals It Interviewed.** Interrogatories 2-4, 6-7, and 9 ask the Government to identify all individuals it interviewed and the contents of those communications, albeit in a nominally indirect way.[4] Like the requests discussed above, these interrogatories seek the same information that was the subject of the March 15 conference, and the parties' dispute on this issue is *sub judice*. *See* Mar. 15, 2023

---

[2] *See id.* 33:9-14 ("Now, I [counsel for Whitney] don't expect them to line up a particular document with paragraph 57, for example, or paragraph 62. They don't have to do that.").

[3] *See, e.g.*, Interrogatory No. 2 (requesting all documents supporting allegations in paragraphs 57-58, 60).

[4] *See, e.g.*, Interrogatory 3 ("For each person identified in response to Interrogatory No. 2, state the factual bases to support your contention that Whitney and these Facility employees "devise[d] strategies" concerning length of stay and RUG levels, identifying all documents and information that support your contention."); Interrogatory 7 ("Identify every employee Whitney "instructed" "on ways to keep Medicare patients as close as possible to the maximum 100 days compensable by Medicare," as you allege in paragraph 69 of the Complaint, and state your basis for that contention.").

Hr'g Tr. 17:9-20; 19:9-16. Whitney asserts that her interrogatories do not seek protected information because she is not asking for the identities of the individuals whom the Government interviewed or what they told the Government. To answer her interrogatories, however, the Government would need to identify, for each specific allegation, the witnesses, if any, whose statements support that allegation, as well as the contents of those interviews, which is protected by the attorney work product doctrine and law-enforcement privilege. *See Kelwin Inkwel, LLC v. PNC Merch. Servs. Co., L.P.*, No. 17-cv-6255, 2020 WL 13077200, at \*7 (E.D.N.Y. June 5, 2020) ("Plaintiffs raise a valid claim of work product protection insofar as they are being asked to identify the people that counsel interviewed and whose statements were found useful in preparing the Complaint."); *In re Dep't of Investigation of City of New York*, 856 F.2d 481, 484 (2d Cir. 1988) (identity of witnesses interviewed protected by law-enforcement privilege). This is precisely the information that was the subject of the last conference. As was extensively discussed previously, the Government has provided the names of individuals it believes to have relevant information to the allegations in the Complaint and offered, as a compromise, to provide the names of the witnesses directly quoted in the Complaint. But Whitney rejected this compromise and is now attempting to obtain the identical information through a different discovery device. Whitney's attempt at an end-run around an issue already before the Court should be rejected.

**Interrogatories 5 and 8 Seek Protected Expert Work Product.** To answer Interrogatories 5 and 8, the Government would need to possess all the Facility Defendants' patient medical records, and then it would need to determine which reimbursement claims are false based upon its expert's analysis of those records, which would require disclosure of protected work

product.[5] The Court set an expert discovery schedule and it is unfeasible to review a decade of claims submitted to Medicare. Rather, the Government will identify a sample of claims and submit expert reports identifying the false claims from that sample at the time set by the Court. To disclose the claims the Government preliminarily believes may be false (beyond those in Complaint paragraph 97) would be premature and would disclose protected expert work product. The Court should deny Whitney's motion.

### B.  Paragon's Motion Misrepresents the Government's Discovery Efforts

The Court should deny Paragon's motion because it is premature and misrepresents the Government's discovery position. Paragon incorrectly claims that the Government refuses to provide documents in response to nearly all its requests. In contrast to Paragon, which has produced only about 1,000 pages and responded it would "meet and confer" in response to 36 of the Government's 52 requests, the Government is working diligently to respond to Paragon's 61 broad requests seeking documents that span over 15 years. The Government has identified the documents it agrees to produce, those it does not, and those that require more information from Paragon to make them manageable and/or intelligible. As the Government explained to Paragon during an April 25 meet and confer, it anticipated producing within days: an additional 64,000 pages of documents (produced Apr. 28); the Medicare claims data for the Facility Defendants; and anonymized claims data for SNFs nationwide (produced May 1). We also explained that we were continuing to review documents and would produce them on a rolling basis. The Government also offered to confer with Paragon concerning any additional documents it seeks, requesting that

---

[5] *See* Interrogatory 5 ("Identify every patient with respect to whom Whitney overruled a discharge decision."); Interrogatory 8 ("For every claim submitted to Medicare by defendants that you contend is fraudulent or false, . . . state what Whitney did with respect to the level of care provided to and the length of stay for each particular patient identified in each such claim.").

Paragon narrow or more fully explain the types of documents it wants and explaining that many of Paragon's requests, as framed, would involve a multitude of custodians and millions of pages of irrelevant material. Paragon has thus far refused, however, to narrow or modify its requests.

Paragon appears to seek three groups of documents: (1) nationwide SNF claims data; (2) documents concerning the *Jimmo v. Sebelius* litigation; and (3) documents concerning the formal rulemaking change in September 2019 to a different model of reimbursement for skilled therapy.

Concerning nationwide SNF claims data, the Government has coordinated with CMS and Relator to provide the anonymized claims data for all SNFs nationwide from 2011-2021, *i.e.*, the data Relator relied upon in alleging that Defendants were statistical outliers. The nationwide SNF data appears to include the information Paragon seeks based upon prior meet and confers. Paragon should review this data before raising concerns to the Court.

The *Jimmo* litigation was an expansive, years' long litigation that clarified that the Medicare program covers skilled nursing or therapy services that "maintain the patient's current condition or to prevent or slow decline or deterioration . . ., and coverage cannot be denied based on the absence of potential for improvement or restoration."[6] We have explained to Paragon that searching for all documents concerning *Jimmo* would involve potentially hundreds, if not thousands, of custodians,[7] and require pulling large swaths of privileged, almost entirely irrelevant documents. Nevertheless, the Government has undertaken to collect non-email documents concerning *Jimmo*, including guidance that CMS sent to contractors following the settlement, and it will produce such documents on a rolling basis. We have explained to Paragon the massive

---

[6] *See* https://www.cms.gov/center/special-topic/jimmo-settlement/faqs.

[7] National Government Services ("NGS"), the Medicare Administrative Contractor, has told us that searching for *Jimmo* documents would involve *889 of its current employees*, a number that would balloon if former NGS employees, CMS employees, or employees of other CMS contractors were also included.

burden of fulfilling the request as framed, yet Paragon refuses to narrow the request or explain the relevance of these materials. As such, Paragon's motion is premature and fails to demonstrate why its request is relevant or proportional to the needs of this case.

Lastly, Paragon seeks internal CMS documents concerning the formal rulemaking associated with the September 2019 change to a new Medicare reimbursement system. The Government recently produced non-email materials with respect to this change, such as analyses, reports, and guidance concerning the change. However, conducting an email search for internal pre-decisional communications concerning this rulemaking would involve countless individuals across CMS and a massive amount of material, nearly all of which would be protected by the deliberative process privilege. Again, Paragon's motion is premature and fails to show the relevance of internal CMS personnel's pre-decisional views on an agency regulation.

### C. Response to the Facility Defendants' Letters

**The Facility Defendants' Demand for "Individualized" Interrogatory Responses.** The Facility Defendants' complaint that they did not receive "individualized" responses to their common interrogatories is a red herring, as they fail to demonstrate that any responses are deficient. Interrogatories 2-4 request that the Government identify all patients who allegedly received medically unnecessary services, the basis for the allegation, and the basis for each Facility Defendant's scienter. The response to these interrogatories is the same. The only patients the Government is currently prepared to allege received medically unnecessary services are those in the Complaint, *see* Compl. ¶ 97. During expert discovery, additional patients will be identified, and expert evidence will be disclosed to further support the Government's allegations. As to the Facility Defendants' scienter, the Government has already identified all non-privileged documents (1) concerning the patients referenced in the Complaint; (2) cited in the Complaint; and (3) those

that the Government identified as potentially relevant to the allegations in the Complaint. To the extent that Defendants ask the Government to identify other records it believes concern scienter, the Government is not, for the reasons stated above, required to disclose such work product.

Interrogatories 6 and 9 request that the Government identify all false claims and statements, and the basis for their materiality. Again, the Government's response to these interrogatories applies to all Facility Defendants. As explained above, the Complaint identifies patients who allegedly received medically unnecessary services, rendering claims to Medicare for such services materially false. The specific false statements are quoted in the Complaint. The additional patients who received medically unnecessary services will be identified during expert discovery.

As to Interrogatory 1, which seeks the identity of persons with knowledge concerning claims and defenses, the Government directed the Facility Defendants to the witnesses identified in the Government's initial disclosures, all of whom—other than Laufer—are current and former employees of the Facility Defendants and Paragon. The Facility Defendants already know the Defendant employer of each individual, making it unnecessary to "individualize" the response for each Facility Defendant by providing this information. Nevertheless, the Government subsequently offered to do this, but the Facility Defendants rejected this proposal, demanding instead that the Government specify which information each individual possesses and with whom we spoke, another attempt to infringe on the Government's work product.

Interrogatories 5 and 10 ask the Government to identify all individuals it interviewed and the identities of interviewed witnesses who made statements relevant to the allegations in the Complaint—the very issues that the Court is presently considering as to all Defendants. As noted above, the Government declined to provide this information in light of Defendants' rejection of the Government's compromise. *See* Mar. 15, 2023 Hr'g Tr. 7:7-9; *see supra* at 2-3.

Finally, the remaining interrogatories have uniform responses because the Facility Defendants are similarly situated. Interrogatories 7 and 8, which ask the Government to identify the statutes, regulations, and guidance with which the Facility Defendants failed to comply, do not require individualized responses because the Facility Defendants are alleged to have engaged in the same fraudulent conduct and are bound by the same Medicare requirements. Interrogatory 11 seeks the basis for allegations that the Facility Defendants' patients' lengths of stay were longer compared to other SNFs. The nationwide SNF data underlying this allegation was produced today. Interrogatory 13 seeks the patients the Government determined received services that were medically necessary. Again, the Government has not yet made any such determinations, as this will be the subject of expert discovery. Interrogatory 14 requests information concerning damages. The Government provided a general description of the damages methodology and it will provide more specific information during expert discovery. Interrogatory 15 seeks the identification of audits of the Facility Defendants by CMS or its contractors. Non-privileged documents concerning such audits have been, and will continue to be, identified and produced during discovery. Finally, the response to Interrogatory 16, which asks the Government to explain how the Facility Defendants' Star Ratings were determined, is also uniform: the methodology CMS uses to determine Star Ratings is the same for all SNFs. Accordingly, the Court should deny this request.

**Interrogatories Seeking the Identities of Interviewed Witnesses.** The Facility Defendants argue that the Government should provide answers to Interrogatories 10, 12, and 18-22, all of which request that the Government identify interviewed witnesses whose statements are quoted in the Complaint, on the ground that the Government previously offered this information as a compromise. As noted above, the Government will provide this information if Defendants withdraw their broader motion to compel.

* * *

We thank the Court for its consideration of these matters.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
*Attorney for Plaintiff*

By:   _/s/ Danielle J. Levine_
DANIELLE J. LEVINE
ALLISON ROVNER
AMANDA LEE
MARK OSMOND
PIERRE G. ARMAND
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Tel.:    (212) 637-2800
Email: danielle.levine@usdoj.gov
          allison.rovner@usdoj.gov
          amanda.lee2@usdoj.gov
          mark.osmond@usdoj.gov
          pierre.armand@usdoj.gov

cc: Counsel of Record