UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
UNITED STATES OF AMERICA *ex rel.* INTEGRA
MED ANALYTICS, LLC,

                Plaintiff,

   -against-

ISSAC LAUFER, *et al.*,

                Defendants.
---------------------------------------------------------------X

**ORDER**

17 Civ. 9424 (CS) (JCM)

On May 28, 2021, Plaintiff/Relator Integra Med Analytics LLC, which specializes in using statistical analysis to identify health-care fraud, (Docket No. 13 ¶ 11) ("Complaint"), brought this action against Isaac Laufer ("Laufer"), and the following Skilled Nursing Facilities, which are owned and operated by Laufer: Montclair Care Center, Inc., East Rockaway Center LLC, Excel at Woodbury for Rehabilitation and Nursing, LLC, Long Island Care Center Inc., Treetops Rehabilitation & Care, Sutton Park Center for Nursing & Rehabilitation, LLC, Suffolk Restorative Therapy & Nursing, LLC, Oasis Rehabilitation and Nursing, LLC, and Forest Manor Care Center, Inc. (collectively, the "Facilities"), (*see generally* Docket No. 14).  Thereafter, on June 2, 2021, the United States of America (the "Government"), brought a Complaint-In-Intervention against Laufer, Tami Whitney ("Whitney"), the Coordinator of Rehabilitation Services at the Facilities, Paragon Management SNF LLC ("Paragon"), the management company through which the Facilities are operated, and the Facilities (collectively, "Defendants"), pursuant to the False Claims Act ("FCA"), 31 U.S.C. §§ 3729 *et seq.*, and alternatively, to recover common law damages. (*See generally* Complaint).

## I. BACKGROUND

The Court assumes familiarity with the facts of the case and includes only the facts necessary to resolve the instant disputes. The Government alleges that from at least 2010 through September 2019, Defendants knowingly submitted false claims to Medicare for unreasonable services that the Facilities provided to residents, violating the FCA. (Complaint ¶ 1). Defendants allegedly executed this scheme by keeping residents at the Facilities for longer than necessary and by putting residents on higher levels of rehabilitation therapy than reasonable or necessary, so that Defendants could bill Medicare at a higher rate. (*Id.*).

## II. PROCEDURAL HISTORY

Defendants moved to dismiss the Complaint. (*See* Docket Nos. 96, 100, 111, 114). On September 23, 2022, the Honorable Cathy Seibel issued a bench ruling denying Defendants' motion to dismiss the Complaint, except for Whitney's and Paragon's motions to dismiss the Government's unjust enrichment and payment by mistake claims, which were granted. (Sept. 23, 2022 Minute Entry). On October 28, 2022, Defendants answered the Complaint, (Docket Nos. 128–140), and discovery commenced. On February 24, 2023, Defendants filed a letter raising several discovery disputes to the undersigned. (Docket No. 162) ("Def. Ltr."). The Government responded by letter on March 1, 2023. (Docket No. 164) ("Gov't Ltr."). The Court heard oral argument on March 15, 2023. (*See* Mar. 15, 2023 Minute Entry).

There are two issues presently before the Court. First, Defendants request that the Government identify which of the 152[1] individuals listed on the Government's initial disclosures the Government interviewed in connection with its claims ("Interviewees"). (Def. Ltr. at 3-4).

---

[1] The Government listed 154 individuals on its initial disclosures, which include Defendants Laufer and Whitney. (Docket No. 162-24 at 8-26). Since Laufer and Whitney are named Defendants in this action, the Court does not consider them in the group of 152 individuals whose identities are at issue.

Second, Defendants seek "a summary of the information provided by each" Interviewee. (*Id.* at 5). The Government opposes both requests, arguing that revealing either category of information runs afoul of the work-product and law-enforcement privileges. (Gov't Ltr. at 1, 3-7). The Government instead offers to identify the individuals referenced in the Complaint, if Defendants agree that doing so would not constitute a broad waiver of any privilege. (*Id.* at 1).

For the following reasons, the Court finds that the names of the Interviewees are factual work product, but that Defendants have shown substantial need and undue hardship justifying limited disclosure. In balancing the interests of the parties, the Court directs the Government to identify the Interviewees it intends to rely upon at trial as well as the individuals referenced in the Complaint. The identification of such individuals does not constitute a broad waiver of any privilege the Government may hold. Furthermore, the Court holds that the interview summaries prepared by the Government are work product and should not be disclosed.

## III.  LEGAL STANDARD

Generally, parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Management of discovery lies within the broad discretion of the district court." *Plumbers and Pipefitters Loc. Union No. 630 Pension-Annuity Tr. Fund v. Arbitron, Inc.*, 278 F.R.D. 335, 338 (S.D.N.Y. 2011) (hereinafter "*Plumbers and Pipefitters*"). The district court's discretion to manage discovery is informed by the Federal Rules of Civil Procedure's ("Rules") requirement that the Rules be employed "to secure the just, speedy, and inexpensive determination of every action and proceeding." *See City of Almaty, Kazahkstan v. Ablyazov*, 15–CV–05345 (AJN) (KHP), 2018 WL 2148430, at *1 (S.D.N.Y. May 10, 2018) (quoting Fed. R. Civ. P. 1).

A. **Work-Product Privilege**

The attorney work-product privilege shields from disclosure both "opinion" or "core" work product, defined as "material that 'reveals the mental impressions, conclusions, or legal theories of an attorney,'" *von Kahle v. Cargill, Inc.*, 599 F. Supp. 3d 181, 186 (S.D.N.Y. 2022) (quoting *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007)), and "ordinary" or "fact" work product, which may encompass "factual material, including the result of a factual investigation," *Klosin v. E.I. du Pont de Nemours and Co.*, 561 F. Supp. 3d 343, 349–50 (W.D.N.Y. 2021).  While "factual work product is subject to disclosure once the required showings are made, core work product is entitled to more stringent protection," and is "described by some courts as 'absolute' or 'near absolute.'" *Crosby v. City of New York*, 269 F.R.D. 267, 277–78 (S.D.N.Y. 2010).

The party asserting the work-product privilege has the burden of establishing its existence. *See U.S. S.E.C. v. Collector's Coffee Inc.*, 337 F.R.D. 70, 74 (S.D.N.Y. 2020).  The protection is qualified. *See Obeid v. La Mack*, No. 14 cv. 6498(LTS)(MHD), 2015 WL 5581577, at *3 (S.D.N.Y. Sept. 16, 2015).  A party may obtain fact work product by showing that it "has a 'substantial need' for the information … and that equivalent information cannot be obtained from other sources without 'undue hardship." *Id.*  By contrast, a party may only obtain opinion work product if a "highly persuasive showing [of need] is made." *Crosby*, 269 F.R.D. at 278 (internal quotations omitted); *accord Obeid*, 2015 WL 5581577, at *3 (if "the document reflects the so-called mental processes of the attorney, even a showing of 'substantial need' and 'undue hardship' may not suffice to set aside the presumptive immunity of the material from disclosure.").

### B. Law-Enforcement Privilege

The law-enforcement privilege, among other things, "prevent[s] disclosure of law enforcement techniques and procedures." *In re The City of N.Y.*, 607 F.3d 923, 941 (2d Cir. 2010) (quoting *In re Dep't of Investigation of the City of N.Y.*, 856 F.2d 481, 484 (2d Cir. 1988)). The party asserting the privilege must show that the discovery at issue contains "(1) information pertaining to 'law enforcement techniques and procedures,' (2) information that would undermine 'the confidentiality of sources,' (3) information that would endanger 'witness and law enforcement personnel,' (4) information that would undermine 'the privacy of individuals involved in an investigation,' or (5) information that would seriously impair 'the ability of a law enforcement agency to conduct future investigations[.]'" *Id.* at 948 (internal citations omitted). The law-enforcement privilege is qualified and "must be balanced against the litigant's substantial need for information[.]" *Otterson v. Nat'l R.R. Passenger Corp.*, 228 F.R.D. 205, 207 (S.D.N.Y. 2005).

## IV. DISCUSSION

### A. Names of Interviewees

In its initial disclosures, the Government identified the names and addresses of 152 mostly former employees of the Facilities. (Docket No. 162-24 at 3, 8-26). Defendants argue that they are entitled to the identities of the Interviewees because it is overly burdensome and inefficient for Defendants to interview or depose each of the 152 individuals listed in the Government's initial disclosures to ascertain who the Government is likely to call at trial. (Def. Ltr. at 3). Defendants further contend that the names of the Interviewees are, "at best," factual work product, that should be disclosed here. (*Id*. at 4).

The Government argues that the names of the Interviewees are protected by the work-product and law-enforcement privileges. (Gov't Ltr. at 3-5). The Government also argues that

contacting 152 individuals is not overly burdensome for Defendants, because 16 attorneys have filed appearances on the docket. (*Id*. at 5).

### 1. The Law-Enforcement Privilege Does Not Prevent Disclosure of the Interviewee Names

The Government maintains that Defendants' request for the names of the Interviewees implicates the law-enforcement privilege because disclosing these names "could lead to retaliation … or make such witnesses less likely to cooperate with internal investigations in the future." (Gov't Ltr. at 3-4 (quoting *Otterson*, 228 F.R.D. at 208–09)). The Government does not argue that any of the other goals of the privilege would be accomplished by shielding the Interviewee names. (*See id.*). Defendants do not address the law-enforcement privilege in their letter. (*See generally* Def. Ltr.). The Court finds that the law-enforcement privilege does not apply.

The Court does not believe that there is a danger of retaliation against the Interviewees or that they will be dissuaded from cooperating with future investigations if their names are disclosed. First, the 152 individuals listed on the Government's initial disclosures are "mostly-*former* employees" of the Facilities, which reduces the chance that disclosure will lead to retaliation in the workplace. (Def. Ltr. at 3 (emphasis added)). Second, merely disclosing the Interviewees' names—as opposed to information regarding the substance of the interviews—does not provide the Defendants with much more information than they already have. Defendants have known the identities of the individuals likely to have relevant information since December 1, 2022, (*see* Docket No. 162-24), and are aware that the Government interviewed a subset of these persons, (*see* Def. Ltr. at 3). Nevertheless, there is no assertion that Defendants have retaliated against anyone listed on the Government's initial disclosures, nor does the Government allege that Defendants have acted in any way to dissuade the individuals from cooperating with its investigation relating to this, or any other matter. (*See generally* Gov't Ltr.).

In addition, the cases relied on by the Government do not support its position.[2] The Government cites to *Otterson*, in which defendants sought, among other documents, a policy statement that was annotated by a special agent for the Office of the Inspector General with his "thoughts concerning the [Amtrak Police Department] investigation into plaintiff's civilian complaint, including areas to be investigated." 228 F.R.D. at 207–08. The Court ruled that the document was *not* protected because the notes were "general" and did not "relate to investigative techniques or reveal any [agency] strategy." *Id*. at 208. Similarly, the names of the Interviewees here do not reveal the Government's strategy or techniques. In fact, Interviewee names reveal considerably less about law enforcement strategy than notes concerning an investigation and areas to be investigated, which were not protected in *Otterson*. *See id*. Accordingly, the Court finds that the law-enforcement privilege does not protect the names of the Interviewees from disclosure.

**2. The Work-Product Privilege Does Not Prevent Limited Disclosure of Interviewee Names**

The Court next turns to the issue of whether the Interviewee names are protected work product. The Court finds that the names are factual work product. The Court further concludes that Defendants have shown "substantial need" and "undue hardship" sufficient to overcome the privilege and justify limited disclosure.

"'It is an unsettled question whether the work product immunity protects the identities of those persons interviewed by an attorney or its agent in anticipation of litigation,' but 'courts in

---

[2] *In re Dep't of Investigation of City of New York*, 856 F.2d 481, 485 (2d Cir. 1988) is inapplicable. That case addressed whether the law-enforcement privilege could shield from disclosure records created by a special commission appointed to investigate a city official, even though the commission was not technically a government body. The court found that the commission was "[a]s … a legal and practical matter … an integral part of a [Department of Investigation]-United States Attorney investigation." *Id*. The court's ruling does not apply here. There is no dispute over whether the Department of Health and Human Services or the Centers for Medicare & Medicaid Services are government agencies. In any event, *Dep't of Investigation* is factually inapposite. Records of a commission's investigation are far more revealing than the Interviewee names at issue here.

this district have noted that the identities of those persons interviewed as part of counsel's investigation into the facts of the case have the potential to reveal counsel's opinion's, thought processes, or strategies, and are therefore protected.'" *Steele v. CVS Pharmacy, Inc.*, 15–CV–4261 (JGK)(KNF), 2016 WL 1659371, at *1 (Apr. 18, 2016) (quoting *U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co.*, Nos. 12 Civ. 6811 (CM)(JCF), 13 Civ. 1580(CM)(JCF), 2013 WL 5495542, at *9–10 (S.D.N.Y. Oct. 3, 2013) (finding that the identities of individuals interviewed by plaintiff were protected work product)); *Plumbers and Pipefitters*, 278 F.R.D. at 343 n.8 (describing circumstance "in which a party demands a list of persons whom opposing counsel has interviewed" as one "in which one party is essentially seeking, and potentially piggybacking, on a roadmap of an adversary's pretrial investigation"); *see also In re Initial Public Offering Sec. Litig.*, 220 F.R.D. 30, 35–36 (S.D.N.Y. 2003) (distinguishing the case before the court from the scenario where defendants moved to compel plaintiffs to reveal which individuals listed on its initial disclosures were interviewed by plaintiffs and opining that the latter scenario implicates work-product concerns). The Court agrees with the Government that the Interviewee names are work product.

Furthermore, the Interviewee names are factual, as opposed to opinion, work product. Courts distinguish between factual and opinion work product by assessing whether the discovery at issue "explicitly contain[s] (as opposed to implicitly referenc[es]) the opinions, legal theories or mental impressions of the attorney." *Abdell v. City of New York*, No. 05 Civ. 8453 (KMK) (JCF), 2006 WL 2664313, at *7 (S.D.N.Y. Sept. 14, 2006) (quoting *United States v. Weissman*, S1 94 Cr. 760 (CSH), 1995 WL 244522, at *10 (S.D.N.Y. Apr. 26, 1995)).

The Government argues that revealing the Interviewee names has "the potential to reveal counsel's opinions, thoughts processes, or strategies," (Gov't Ltr. at 4 (quoting *PHL Variable*

*Ins. Co.*, 2013 WL 5495542, at *9)), and "provides insight into the opposition's trial preparation," (*id.* (quoting *Smalls v. New York Hosp. Med. Ctr. of Queens*, No. 13-cv-1257, 2013 WL 12333083, at *2 (E.D.N.Y. Oct. 15, 2013))). Defendants counter that the names are factual work product. (*See* Def. Ltr. at 4).

The Court agrees with Defendants. Revealing the list of Interviewee names will not reveal much substantive content of the Government's legal strategy. *See Abdell*, 2006 WL 2664313, at *7. Several courts in this district have held as much, determining that the information revealed by disclosing the identities of interviewees is "limited in nature" and does not divulge much "substantive content." *See, e.g.*, *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Cv. 8144 (SWK), 2008 WL 2941215, at *3 (S.D.N.Y. July 30, 2008) ("confidential witness identities constitute fact, as opposed to opinion, work product, and contain 'minimal substantive content'") (quoting *In re Harmonic, Inc. Sec. Litig.*, 245 F.R.D. 424, 429 (N.D. Cal. 2007)); *see also Plumbers and Pipefitters*, 278 F.R.D. at 340 (describing defendant's request for the names of 11 confidential informants identified in the complaint, who were among 83 individuals identified in the Government's initial disclosures, as a "limited [] disclosure"). Indeed, "[u]nlike interview notes or other documents prepared by counsel … the relationship between witness identities and attorney's case strategies or mental impressions are much more attenuated." *Marsh*, 2008 WL 2941215, at *3.

Moreover, none of the cases to which the Government cites support the proposition that the Interviewee names are opinion work product.[3] In fact, in *PHL Variable Insurance Co.*,

---

[3] The court in *Smalls v. New York Hospital Medical Center of Queens* did not assess whether the identities of the individuals interviewed by the defendants were fact or opinion-work product, and summarily determined that such information need not be disclosed. 2013 WL 12333083, at *2. *Smalls* is distinguishable from the present facts. In *Smalls*, plaintiff argued that he was entitled to the names of the persons interviewed by defendants because "the list furnished by defendants [in its initial disclosures] may not necessarily be complete..." *Id.* (cleaned up). The plaintiff did not provide any basis for his contention that defendants' initial disclosures were incomplete, nor did he articulate any burden to his case if he did not receive the names of the interviewees. *See Smalls v. New York Hosp. Med. Ctr.*

defendant sought the identities of individuals contacted in connection with interviews taken by the plaintiff, which the court framed as a request for "the disclosure of the *facts* surrounding [plaintiff's] investigations." 2013 WL 5495542, at *9 (emphasis added). The *PHL Variable* court classified interviewee names as fact work product, a classification with which this Court agrees. *See id.*

Finding that the names of the Interviewees are fact work product, the Court now addresses Defendants' primary contention: that they have demonstrated a substantial need and undue hardship, which justifies overriding the privilege. (*See* Def. Ltr. at 3-4). Defendants have satisfied this showing.

Defendants have demonstrated a substantial need for the Government to narrow the list of persons identified in its initial disclosures. "A substantial need for work product materials exists where the information sought is essential to the party's defense, is crucial to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues." *Nat'l Cong. for Puerto Rican Rts. v. City of New York*, 194 F.R.D. 105, 110 (S.D.N.Y. 2000) (internal quotations omitted). Defendants will necessarily need to depose the

---

*of Queens*, 13-cv-01257-RRM-CLP, Docket Nos. 14 & 18 (E.D.N.Y. 2013). The *Smalls* Court ordered defendants to provide a supplemental list of individuals with potentially relevant information (as is required by Rule 26(e)), and denied plaintiff's motion to compel. *Id*. Here, defendants are not asking for the names of the Interviewees to augment the information provided by the Government, but instead to narrow down the list of potential witnesses to eliminate undue burden. (*See* Def. Ltr. at 3-4). Likewise, the decision in *Seven Hanover Associates, LLC v. Jones Lang LaSalle Americas, Inc.*, No. 04 Civ 4143 (PAC)(MHD), 2005 WL 2258597, at *1–2 (S.D.N.Y. Dec. 7, 2005), is inapposite. There, the court found that a letter sent from plaintiff's attorney to the attorney of a client of defendant and its enclosures were opinion work product. *See id.* The discovery at issue in *Seven Hanover* was determined to be opinion work product because "[t]he choice of whom to approach with a suggestion reflected in the letter and enclosures constitute[d] the purely tactical choices that are the heart of the work-product doctrine." *Id*. The material at issue here—Interviewee names—is far less revelatory, as it only "implicitly reference[s]" the Government's legal strategy, as opposed to "explicitly contain[ing]" an attorney's "opinions, legal theories or mental impressions." *See Abdell*, 2006 WL 2664313, at *7.

individuals corroborating the Government's claims, who are mostly former employees of the Facilities, (Def. Ltr. at 3), to mount a proper defense, *see Nat'l Cong. for Puerto Rican Rts.*, 194 F.R.D. at 110.  As such, a narrowed list of key witnesses supporting the Government's case is "essential" to Defendants' defense. *See id.*

In addition, the Court finds that locating and interviewing the 152 individuals listed in the Government's initial disclosures presents an undue hardship.  "Undue hardship 'does not mean that the movants must prove that obtaining the information elsewhere is absolutely impossible[.]'" *Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 67 (E.D.N.Y. 2007) (quoting *S.E.C. v. Thrasher*, No. 92 Civ. 6987 (JFK), 1995 WL 46681, at *9 (S.D.N.Y. Feb. 7, 1995)).  "All that is needed is a showing that it is likely to be significantly more difficult, time-consuming or expensive to obtain the information from another source than from the factual work product of the objecting party." *Id.*  Defendants have satisfied that showing here. *Cf In re Veeco Instruments, Inc. Sec. Litig.*, No. 05MD1695 (CM)(GAY), 2007 WL 274800, at *1 (S.D.N.Y. Jan. 29, 2007) (finding that identifying three confidential witnesses from a list of *fifty-five* persons identified on initial disclosures was not an "unmanageable number" of persons and thus, did not present "undue hardship").

The Court is not persuaded by the Government's argument that the number of attorneys working on this case reduces the burden on the defense of locating and interviewing the *152* individuals identified in the Government's initial disclosures. (Gov't Ltr. at 5-6).  This process will be time-consuming and costly.  Indeed, unnecessary or duplicative depositions will force *all* parties to expend avoidable resources. *See Plumbers and Pipefitters*, 278 F.R.D. at 340 (compelling plaintiffs to disclose the names of confidential informants who were extensively referenced in the complaint and identified on plaintiff's initial disclosures, because "[t]he

- 11 -

discovery rules 'should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding.'" (quoting Fed. R. Civ. P. 1)). Furthermore, Defendants "should not be forced to exhaust their share of depositions only to discover information with, at most, limited work-product protection that can be maintained to some degree by setting limits on the contours of discovery." *See Marsh*, 2008 WL 2941215, at *4.

In light of the foregoing, the Court exercises its discretion to balance the discovery needs of Defendants against the—albeit limited—work-product protection attached to the names of the Interviewees and accordingly, compels the Government to disclose to Defendants the names of the individuals on whom it intends to rely upon at trial, as well as the names of the individuals referenced in the Complaint.  The Government's disclosure is not a broad waiver of any privilege it may have concerning its legal strategy or investigation relating to this case.

**B. Interview Summaries**

Defendants are not entitled to the Government's interview summaries.  Relying on *Abdell*, Defendants contend that they are entitled to the Government's summaries of its witness interviews, arguing that the work-product privilege does not shield the underlying facts that the Government obtained during these interviews. (Def. Ltr. at 5).  The Government counters that these summaries are protected by the work-product and law-enforcement privileges. (Gov't Ltr. at 6-7).

**1. The Work-Product Privilege Shields the Interview Summaries from Disclosure**

The Court finds that the Government's interview summaries should not be disclosed. Interview summaries prepared by counsel in connection with an agency investigation are "classic work-product," *S.E.C. v. Strauss*, No. 09 Civ. 4150(RMB)(HBP), 2009 WL 3459204, at *5 (S.D.N.Y. Oct. 28, 2009), and are more likely to reveal an attorney's mental impressions than

interviewee names, *see In re Initial Public Offering Sec. Litig.*, 220 F.R.D. at 34 (exemplifying the work-product doctrine's scope by comparing "notes made by an attorney when interviewing witnesses" with "the identities of those witnesses," and recognizing that the former reveals more about an attorney's mental processes than the latter).

Defendants seemingly argue that the interview summaries are factual work product that should be disclosed upon a showing of substantial need and undue hardship. (*See* Def. Ltr. at 5 ("The Court does not need to determine whether the information is 'work product[;]' … [t]he Court needs only to find that … it would be unduly burdensome for the Defendants to have to acquire the information via countless depositions.")). The Government does not take a position on whether the summaries are fact or opinion work product. (*See* Gov't Ltr. at 6 (analyzing Defendants' burden to overcome both fact and opinion work product)). Even assuming, *arguendo*,[4] that the summaries are factual work product, Defendants have not shown substantial need or undue hardship justifying their disclosure.

Defendants do not address substantial need and focus only on undue hardship. (*See generally* Def. Ltr.). Defendants have not demonstrated how the summaries would be "essential" to their defense or "crucial" to assessing their liability. *See Nat'l Cong. for Puerto Rican Rts.*, 194 F.R.D. at 110. In fact, Defendants contend that they "would be entitled to obtain [the information in the Government's summaries] from any of [the Interviewees] at a deposition." (Def. Ltr. at 5). Where, as Defendants concede is the case here, Defendants can obtain the same information from non-work product material, i.e., depositions or its own witness interviews,

---

[4] Defendants rely on *Abdell* for the proposition that "lower courts have consistently treated witness statements as factual rather than opinion work product, even when those statements have been summarized by counsel." (Def. Ltr. at 5 (quoting *Abdell*, 2006 WL 2664313, at *6–7)). Since the Government does not contest Defendants' characterization of the summaries as fact work product, (*see* Gov't Ltr. at 6), the Court need not reach the issue of whether the summaries are fact or opinion work product.

Defendants have failed to show substantial need. *See Collector's Coffee Inc.*, 337 F.R.D. at 78 (defendant failed to demonstrate why the factual work-product protection should be violated where defendant made "no discernable argument regarding 'substantial need'").

Nor have Defendants shown undue hardship. Defendants only argue that the interview summaries will prevent them from having to take "countless depositions" and will allow Defendants to "limit their depositions to those fact witnesses who the Government realistically may call at trial." (Def. Ltr. at 5). Defendants' arguments concerning undue hardship are unavailing and are mooted by this Court's ruling that the Government must provide Defendants with the names of the witnesses on whom it intends to rely upon at trial. This will limit the scope of the witnesses the Defendants will have to depose and prevent the unnecessary expenditure of resources.

Because the Court finds that the interview summaries are protected by the work-product privilege and no exception applies, the Court need not reach the issue of whether the law-enforcement privilege also protects the interview summaries.

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion to compel the Government to reveal the identities of the Interviewees is denied. However, the Government is directed to provide Defendants with a list of individuals on whom it intends to rely upon at trial, as well as the names of the individuals referenced in the Complaint. Furthermore, Defendants' request for

summaries of the Government's interviews is denied.

Dated: May 2, 2023
       White Plains, New York

                      **SO ORDERED:**

                      _____
                      JUDITH C. McCARTHY
                      United States Magistrate Judge