

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

March 19, 2026

**By ECF**
Hon. Judith C. McCarthy
Chief Magistrate Judge
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

      Re:    *United States* ex rel*. Integra Med Analytics LLC v. Isaac Laufer* et al.,
              No. 17 Civ. 9424 (CS) (JCM)

Dear Chief Magistrate Judge McCarthy:

This Office represents the United States (the "government") in the above-referenced healthcare fraud action filed pursuant to the False Claims Act, 31 U.S.C. § 3729 *et seq.* Consistent with the Court's January 25, 2023 order, we write to raise four discovery issues that were not resolved through the meet-and-confer process. *See* ECF No. 156.[1] Our hope is that the Court can resolve these issues at the upcoming conference on March 30, 2026, so that Defendants may proceed expeditiously with their document production.

**I.**      **The Court Should Order Defendants to Produce Responsive Documents from the Custodians Identified by the Government Regardless of Where They Are Stored**

The government requests that the Court order Defendants to produce responsive documents for the 51 custodians the government has identified across the 12 corporate defendants.[2] The Court

---

[1]    The Court's January 25, 2023 order provides that discovery letter-briefs should be limited to two double-spaced pages. ECF 156 at 1. Consistent with that order, because this letter raises four discovery issues, we have consolidated them in a single letter totaling eight double-spaced pages.

[2]    The government reserves the right to identify additional custodians in the future based on new information learned during discovery.

should also order production of responsive documents for any current or former employees whom any Defendant chooses to depose or call at trial, well in advance of that testimony.[3] In addition, the Court should require Defendants to produce responsive emails for these custodians regardless of the electronic filing system on which Defendants have chosen to store them.

The government's list of custodians is both reasonable and necessary for the government to prove its case against each of the 11 Facility Defendants and Defendant Paragon for the lengthy relevant time period for purposes of the false claims submitted to Medicare—January 1, 2010, through September 30, 2019. The 51 requested custodians primarily consist of rehabilitation directors and administrators at each of the Facilities Defendants, as well as several senior executives, compliance officers, admissions directors, and marketing directors. These individuals are likely to have substantial responsive information relating to key allegations in the complaint concerning therapy levels and length of stay, and the government attempted to limit its list of custodians as much as possible to key people covering each Defendant and across the at-issue time period. Defendants themselves identified many of these individuals in interrogatory responses as likely to possess responsive information. The government identified the remaining individuals through its investigation. We have attached a list of the custodians with information about their positions as Exhibit A.

Defendants have refused to produce the custodial files for the vast majority of the custodians the government has identified—instead, they have offered just 27 custodians, only 17

---

[3]    Although the government previously named 28 additional custodians (beyond the 51 at issue here) who were listed in Defendants' revised initial disclosures, the government has agreed to exclude those individuals from the custodian list on the condition that Defendants agree to produce custodial files for any current or former employees they depose or call at trial. Defendants have refused.

of whom overlap with the government's list.[4] Defendants have also stated that the government may select up to ten additional custodians—but only to the extent that their emails reside on a Microsoft 365 server, rather than a different server called Barracuda that contains many emails from earlier in the relevant period of this litigation.

Defendants' refusal to produce responsive documents for 34 of the 51 custodians identified by the government appears to rest largely on the current state of their email infrastructure—but Defendants' own choices created the very problems they now cite as a burden. Defendants originally stored emails on their Exchange Server platform. In 2018, while responding to the government's pre-complaint Civil Investigative Demand ("CID"), Defendants purportedly discovered that the Exchange Server was failing. Between 2018 and 2022, they transferred email data from the Exchange Server to Barracuda to preserve email data, while transitioning their email system to Microsoft 365. As a result, Defendants' email data now resides in two places: Microsoft 365, which contains more recent emails, and Barracuda, which contains older emails that often do not exist anywhere else. Defendants claim that they cannot readily retrieve emails from Barracuda because they let their contract for Barracuda expire in 2022 and because Barracuda does not organize data by custodian.[5] But both of these problems were of Defendants' own making. Indeed, defense counsel acknowledged in an April 6, 2023 email that the purpose of Barracuda was to preserve emails after Defendants received the government's CID. And Defendants chose to let the

---

[4] It is unclear how or why Defendants selected nine of the ten other custodians. Notably, none of the nine began their employment at the relevant facilities before 2017, and thus they would not possess information for most of the relevant time period. Defendants listed one custodian, who began employment in 2014, in their revised initial disclosures.

[5] Defendants have not answered the government's question regarding whether they intend to collect and produce emails from Barracuda for their chosen 27 custodians.

Barracuda contract lapse while this litigation was pending. Having created this situation, they may not complain of the burden it now presents.

Defendants' counterproposal is deficient in every respect: their proposed custodian list does not cover all Facilities (*e.g.*, it entirely omits custodians from North Westchester), the full relevant time period (*e.g.*, it includes hardly any custodians for any Facility from 2010-2015, and as just one example, it entirely omits custodians for 2011 through most of 2016 for Emerge), or key relevant positions (*e.g.*, it omits compliance officers and some key senior executives). It even excludes many of the individuals that Defendants identified in their own interrogatory responses as possessing information relevant to this case. Moreover, although Defendants are refusing to produce responsive documents for 34 custodians identified by the government, they have not even attempted to argue that these 34 custodians are less likely to have responsive documents or that they would in any way be duplicative of the other custodians' documents.

The government has made repeated efforts to narrow the dispute to no avail. The government first requested hit reports so it could evaluate whether certain of its identified custodians could be eliminated. Defendants objected to running some reports, citing the Barracuda burden, and inexplicably refused to share the hit reports they had already created. The government then limited its ask, requesting only higher-level information about each custodian—whether their email was stored in Microsoft 365, Barracuda, or neither, and the total volume of their email. Defendants' responses were not helpful: for 13 of the 34 disputed custodians, Defendants stated that it was "unknown" whether the custodians had emails in Barracuda (including for five custodians who had no emails or virtually no emails stored in Microsoft 365), and for six of these 13 custodians, that the size of their Microsoft 365 inbox was also unknown. But such information is in Defendants' possession—they apparently are just unwilling even to look for it. The

government respectfully requests that Court order Defendants to produce documents for the 51 custodians identified by the government, including emails maintained on Barracuda, as well as for any current or former employees whom any Defendant chooses to depose or call at trial.

**II.      The Court Should Order Defendants to Produce Documents Through June 30, 2021**

Defendants seek to cut off all document production at September 30, 2019, arguing that nothing after that date could be relevant and that the burden of review would be disproportionate to the needs of this case. Both contentions are wrong.

Some brief context is necessary to understand the dispute. The government alleges that, from at least 2010 through September 2019, Defendants submitted false claims to Medicare by providing excessive therapy and keeping patients longer than medically necessary in order to maximize reimbursement. *See* Compl. ¶¶ 1–5 (ECF No. 13). During this period, Medicare reimbursed skilled nursing facilities under the Resource Utilization Group ("RUG") model, which paid facilities at higher rates when they provided mores therapy minutes. *See id.* ¶¶ 41–43. In October 2019, Medicare replaced RUG with a new system—the Patient-Driven Payment Model ("PDPM")—that eliminated the financial incentive to maximize therapy minutes. *See id.* ¶¶ 48–49. The government filed its complaint-in-intervention on June 2, 2021. Defendants argue that because the government's fraud allegations concern conduct under RUG, documents from after the October 2019 transition to PDPM are irrelevant. The government has already agreed, as a compromise, to limit certain categories of requests to the pre-October 2019 period. But a blanket cutoff at that date would exclude plainly relevant evidence, and Rule 26 imposes no temporal limitation on discovery. *See Favors v. Cuomo*, No. 11-CV-5632, 2013 WL 12358269, at *4 (E.D.N.Y. Aug. 27, 2013) (collecting cases).

Post-PDPM documents are directly probative of the government's contention that Defendants billed for excessive therapy services only to maximize profits. If Defendants' therapy practices changed markedly once the financial incentive to over-treat disappeared, that change would suggest that their earlier practices were financially motivated rather than clinically justified. The government is entitled to explore that comparison. Indeed, Defendants themselves have recognized the relevance of post-PDPM documents: Paragon's Request for Production No. 21 seeks "[a]ll documents concerning the benefits and detriments and reasons for a change to the PDPM model," and the government has produced responsive documents. Defendants cannot demand post-PDPM documents from the government while arguing that the government's parallel requests are categorically irrelevant.[6]

Defendants' burden argument is equally unavailing. They claim based on "test searches" that extending the cutoff date from September 30, 2019, to June 30, 2021, "roughly doubles" the documents for review, but they have refused to share the data underlying this assertion despite the government's requests. An unsubstantiated assertion of burden cannot override the right to relevant discovery. *See Favors*, 2013 WL 12358269, at *6 (rejecting burden argument where movant provided no "metric for assessing how time-consuming or expensive" the production would be). Even taken at face value, any incremental review burden is proportional to the needs of a case

---

[6]   Further, to the extent responsive documents from the narrow post-complaint window (June 2 through June 30, 2021) exist, such documents are independently discoverable. Courts have squarely rejected the argument that post-complaint documents are categorically irrelevant. *See Cleary v. Kaleida Health*, No. 22-cv-00026, 2024 WL 4901952, at *11 (W.D.N.Y. Nov. 27, 2024) (ruling that non-privileged documents created post-commencement must be produced); *Favors*, 2013 WL 12358269, at *4 ("[P]ost-complaint documents may reflect on events or statements that occurred prior to the lawsuit[,] which may bear on Defendants' liability") (quotation marks omitted); *Ferring Pharms. Inc. v. Serenity Pharms., LLC*, No. 17-cv-9922, 2019 WL 5682635, at *5 (S.D.N.Y. Nov. 1, 2019) ("[D]ocuments created after an event often are germane to that which came before.").

involving fourteen defendants—including eleven individual facilities—and a fraud scheme spanning nearly a decade, and potentially tens or hundreds of millions of dollars in damages. *See* Fed. R. Civ. P. 26(b)(1).

**III.     The Court Should Order Defendants to Honor Their Prior Agreement on Search Terms**

Defendants are refusing to abide by the agreement the parties reached three years ago on search terms to extract concessions on other issues. Before the stay was entered in July 2023, the parties had reached agreement on at least 55 search terms after months of negotiation. At that time, there was a dispute as to no more than six search terms, and the parties were nearing agreement on those as well. Now, Defendants have indicated they may renege. They claim they will only use the previously-agreed-to search terms if the government accepts Defendants' limitations on custodians and the discovery date cutoff. The government's position on custodians and the date cutoff are nothing new—the search term agreement was reached while discussions about custodians and the date cutoff were ongoing. Defendants should not be permitted to now retroactively condition that agreement on the government's capitulation on separate disputes. Moreover, re-opening negotiations over all these search terms at this stage of the case will substantially delay discovery. The government respectfully requests that the Court order Defendants to collect documents for review using the 55 search terms that the parties previously agreed upon, as well the six additional terms proposed by the government.  A list of these terms is attached as Exhibit B.

**IV.     The Court Should Order Defendants to Produce Non-Privileged Communications Between Defendants' Counsel and Third Parties**

Defendants have categorically refused to search for or produce any communications between their counsel and third parties concerning the subject matter of this action. Such communications would be responsive to Request No. 1 of the government's Third Requests for

Production of Documents, which seeks, among other things, communications between Defendants' "current or former counsel in this matter on the one hand, and any third-party (including any former employee of the Facilities or Paragon) on the other, concerning the subject matter of the above-captioned action or the Government's investigation of this action before the Government's complaint-in-intervention was filed." Defendants' blanket assertions of privilege and work product protection do not justify this categorical refusal.

The attorney-client privilege does not protect communications between counsel and non-clients. *See United States v. Ackert*, 169 F.3d 136, 139–40 (2d Cir. 1999). Nor does the work product doctrine categorically shield such communications. The government does not seek wholesale production of attorney work product reflecting counsel's mental impressions or litigation strategy. Some individual communications may warrant protection. But the remedy is document-by-document review and a privilege log—not a categorical refusal to search. The government has collected and produced certain communications between its attorneys and third parties and will continue to do so as long as the Court orders Defendants to do the same.

* * *

We thank the Court for its consideration of these matters.

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York
*Attorney for Plaintiff*

By:    */s/ Allison M. Rovner*
        ALLISON M. ROVNER
        JEREMY M. LISS
        JENNIFER JUDE
        MARK OSMOND
        PIERRE G. ARMAND
        TARA SCHWARTZ
        Assistant United States Attorneys
        86 Chambers Street, Third Floor
        New York, New York 10007
        Tel.:   (212) 637-2691
        Email: allison.rovner@usdoj.gov
              jeremy.liss@usdoj.gov
              jennifer.jude@usdoj.gov
              mark.osmond@usdoj.gov
              pierre.armand@usdoj.gov
              tara.schwartz@usdoj.gov

cc: Counsel of Record