

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

April 29, 2026

**By ECF**
Hon. Judith C. McCarthy
Chief Magistrate Judge
Federal Building and United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

>  Re:   *United States* ex rel. *Integra Med Analytics LLC v. Isaac Laufer* et al.,
>         No. 17 Civ. 9424 (CS) (JCM)

Dear Chief Magistrate Judge McCarthy:

This Office represents the United States (the "Government") in the above-referenced False Claims Act action. We write regarding the Facility Defendants'[1] refusal to produce patient medical records central to proving that they billed Medicare for medically unnecessary therapy and prolonged patient stays. The parties have met and conferred and are at an impasse. The Government asks the Court to resolve this dispute at the May 6, 2026 status conference.

## I.      Background

In May 2023, the Government served Requests Nos. 1 and 2 of its Third Set of Requests for Production to the Facility Defendants. *See* Ex. A (the Government's May 31, 2023 Third Set of Requests for Production). Among other documents, those requests sought medical records for 1,500 patients identified in a list attached as "Appendix A." Medical records for a statistical sample are necessary for the Government to prove the falsity of the Facility Defendants' claims to Medicare, as well as damages across the Facility Defendants' Medicare billings. The Facility

---

[1]   The eleven Facility Defendants are skilled nursing facilities owned in whole or in part by Defendant Isaac Laufer and managed by Defendant Paragon Management SNF LLC. They are identified in the caption of this action.

Defendants objected, arguing that 1,500 patients were too many and that production would be unduly burdensome. *See* Ex. B (Facility Defendants' June 30, 2023 Responses and Objections). Shortly afterwards, the case was stayed for over two years.

Both before and after the stay, the Government tried to find a workable compromise. The Government offered to treat the patient files that the Facility Defendants had produced during the Government's pre-suit investigation as the universe from which the Government's damages expert would draw, on two conditions: that the Facility Defendants accept those files as statistically representative for damages purposes and not otherwise challenge the sampling methodology, and that they supplement the production for any facilities or time periods not covered by those records. The Facility Defendants rejected that proposal.

The Government then further compromised by substantially reducing its request. On April 10, 2026, it served an Amended Appendix A, which identified 382 patients—a 75% reduction from the prior sample, and an average of approximately 35 patients for each Facility Defendant. The Government offered to coordinate with the Facility Defendants to avoid duplication and requested that any objections be identified by April 17. The Facility Defendants responded on April 20 with a single sentence objecting without any stated basis.

At an April 23, 2026 meet and confer, the Facility Defendants confirmed that they are standing on their prior objections. They claimed the Government is improperly "going back to the well" because the Facility Defendants already produced patient files during the pre-suit investigation. They also asserted that production would take "4–6 months" because some records are stored on older electronic systems and others exist as files in warehouses. The Government asked the Facility Defendants to substantiate the 4–6 month estimate by providing specific details. They refused, stating that such information was covered by the attorney work-product doctrine.

**II.  The Records Are Relevant, and the Facility Defendants' Burden Objections Are Unsubstantiated**

*The records are directly relevant to the Government's claims.* In this case, the Government alleges that the Facility Defendants billed Medicare for medically unnecessary therapy and prolonged patient stays. The medical records at issue are directly relevant to those allegations. They will show whether the therapy billed was medically necessary and whether patients' stays were prolonged—indeed, the Government expects that many patients did not require the therapy that the Facility Defendants billed to Medicare. Given the scope of the Facility Defendants' scheme, which the evidence to date suggests caused hundreds of millions of dollars in damages, the Government intends to prove its case through expert analysis of a statistically valid sample of patient charts. The Facility Defendants have been aware of this plan since the outset of fact discovery. At the first case conference, they argued that the Government should disclose its patient sample early so that they could begin fact discovery into those patients. *See* Ex. C at 17:12–18:6. They cannot now take the position, years later, that they will not produce any of these records.

There is a further reason the records are critical. The Facility Defendants will present at trial particular patient records reflecting care they contend was medically necessary. The Government must be able to rebut such selective presentations with analysis of records that are statistically representative of the relevant patient population.

Courts routinely compel production of sampled medical records in FCA cases. For example, in *United States v. Anthem, Inc.*, No. 20 Civ. 2593, 2026 WL 456597 (S.D.N.Y. Feb. 18, 2026), Judge Parker granted the Government's request for a sample of medical records for expert chart review over the defendant's burden and proportionality objections. The court held that "there can be no dispute that the records sought are relevant to the claims in the case." *Id.* at *2. So too here. As in *Anthem*, "contemporaneous medical records [are] intertwined with the alleged falsity

which is at the core of the Government's allegations" and "sampling is the only practicable way to proceed in discovery" in light of the massive scope of the scheme. *Id.*

**The request is modest, and the Facility Defendants have not substantiated any burden.** The Government seeks records for 382 patients across eleven facilities—a 75% reduction from the original request—in a case alleging hundreds of millions of dollars in damages from a fraudulent scheme spanning nearly a decade. A party asserting undue burden must provide specific evidence of the nature and magnitude of that burden. *See, e.g.*, *Int'l Code Council v. Skidmore*, 2025 WL 1936704, at *3 (S.D.N.Y. July 15, 2025) (party "cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden"); *Aristocrat Leisure Ltd. v. Deutsche Bank Trust*, 262 F.R.D. 293, 300 (S.D.N.Y. 2009).

The Facility Defendants have offered nothing but a bare assertion that production would take "4–6 months." They have not submitted a declaration or affidavit. They have not identified what proportion of the 382 patients would require retrieval from older systems, what portion involves paper records, or what the actual cost would be. The Government tried to explore these questions at the meet and confer. The Facility Defendants refused to engage. A party that will not explain its burden to its adversary cannot expect the Court to credit that burden.

III.       **Pre-Suit Document Collection Does Not Foreclose Litigation Discovery**

The Facility Defendants' principal objection is that the Government should be confined to the approximately 989 patient files produced during the pre-suit investigation. That objection has no basis in law and rests on a flawed premise.

The Facility Defendants treat the pre-suit production as if it were a designed litigation sample that should bind the Government. It was not. The Government requested that production to determine whether it should intervene in this *qui tam* case, not to assemble a statistical sample

for trial. The records the Facility Defendants produced in response served that investigative purpose; they were never collected to support a statistically valid sample to be used at trial.

The Government offered to use the pre-suit records for damages extrapolation, which would have spared the Facility Defendants any new production. They refused. Having declined to accept those records as adequate when offered, they cannot now invoke them to deny the Government any other path to the evidence it needs.

It is well established that pre-suit investigative collection does not foreclose litigation discovery. In *SEC v. Rayat*, No. 21-cv-4777, 2022 WL 1423300 (S.D.N.Y. May 5, 2022), Judge Liman rejected the argument that the government's right to discovery in a civil case should be limited by investigative steps taken by the government in a pre-suit investigation. As Judge Liman explained, "no rule of law requires [the government] to request in the investigative stage every document that might turn out to be relevant in the litigation phase on pain that, if it does not seek the document during the investigation, it will not be able to seek it after it has filed a complaint." *Id.* at *3. The court further noted that Rule 26(b)(2)(C)(ii) addresses cumulative discovery "in the action" and on its face "does not address the circumstance where a party can obtain the information other than through 'discovery in the action." *Id.*; *accord SEC v. Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) (declining to limit the SEC's discovery based on "the extent of its previous investigation").

* * *

Accordingly, the Government respectfully requests that the Court order production of the documents described in Requests Nos. 1 and 2 for the 382 patients identified in the Amended Appendix A within 30 days. We thank the Court for its consideration.

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York
*Attorney for Plaintiff*

By:    ___*/s/ Jeremy M. Liss*___
     ALLISON M. ROVNER
     JEREMY M. LISS
     JENNIFER JUDE
     MARK OSMOND
     PIERRE G. ARMAND
     TARA SCHWARTZ
     Assistant United States Attorneys
     86 Chambers Street, Third Floor
     New York, New York 10007
     Tel.:    (212) 637-2691
     Email: allison.rovner@usdoj.gov
           jeremy.liss@usdoj.gov
           jennifer.jude@usdoj.gov
           mark.osmond@usdoj.gov
           pierre.armand@usdoj.gov
           tara.schwartz@usdoj.gov

cc: Counsel of Record