**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*86 Chambers Street*
*New York, New York 10007*

August 24, 2026

**By ECF**
Hon. Judith C. McCarthy
Chief Magistrate Judge
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas Street
White Plains, NY 10601-4150

Re: *United States* ex rel. *Integra Med Analytics LLC v. Isaac Laufer* et al., No. 17 Civ. 9424 (CS) (JCM)

Dear Chief Magistrate Judge McCarthy:

This Office represents the United States (the "government") in the above-referenced healthcare fraud action filed pursuant to the False Claims Act, 31 U.S.C. § 3729 *et seq.* Consistent with the Court's July 31, 2026 order, we write, jointly with Defendants, to raise discovery issues that have not been resolved through the meet-and-confer process. *See* ECF No. Minute Entry at 7/31/2026.

**The Government's Report on Remaining Discovery Issues**

## I. Missing Medical Records

On August 5, the Government notified Defendants that Defendants failed to provide Minimum Data Set ("MDS") Assessments and daily therapy treatment notes for at least the first several patient files that they had produced.[1] These are records responsive to the Government's document requests and are critical for the Government's expert review. Discussions with

[1] At the July 31, 2026 conference, the Court identified precisely the problem the Government now reports. The Court stated that it was concerned was that the governments "experts may look at [the medical records] and go, it doesn't have the records we need." ECF No. 249, Tr. 14. That problem has now materialized.

Defendants over the past few weeks have confirmed that these records do exist, but that Defendants have not adequately searched for them. Still, Defendants have not remedied the problem of these missing records or otherwise assured the Government that such problem will be remedied promptly.

**A. The missing records are core components of the patient medical record and are expressly covered by the requests.**

Request No. 1 of the Government's Third Set of Requests for Production (May 31, 2023), as applied to the Amended Appendix A identifying 382 patients served April 10, 2026, seeks "[a]ll claims for reimbursement submitted to CMS ... and the MDS corresponding to each such claim." Request No. 2 seeks documents reflecting "all medical, therapy, or other services provided," expressly including "the complete chart," "treatment encounter notes," "documents reflecting the number of minutes of therapy or type of therapy provided ... throughout the length of stay," and "documentation to support the MDS documentation and the look back period based on the Assessment Reference Date" — and does so "whether in electronic data or other format."[2]

These are not peripheral items. The MDS is the instrument by which each Facility recorded the therapy minutes and functional status that generated the RUG level (which triggered the applicable daily reimbursement rate) and the HIPPS code (used to determine the payment amount owed to the SNF) on every claim at issue. Completion of the MDS was a prerequisite to Medicare payment. *See* 42 C.F.R. § 483.20(f)(3). The daily therapy treatment records are the documentation that skilled nursing facilities are required to create and maintain reflecting the therapy actually delivered to a patient on each date of service—the treatment encounter notes, daily skilled therapy

---

[2] On May 6, 2026, the Court ordered Defendants to comply with the Government's request for a sampling of 382 identified patient files. *See* Minute Entry at 5/6/2026.

notes, and/or therapy logs or flow sheets identifying, for each date, the discipline (PT/OT/ST), the treating therapist or assistant, the interventions performed, the mode of delivery (individual, concurrent or group), and the number of minutes delivered. The data from these records is necessary to support the MDS and the RUG level billed for each patient.

**B. Defendants have acknowledged that the records exist, and that they were not collected.**

Following the Government's August 5 notification to Defendants that the first few sets of medical records that they produced lacked MDS assessments and daily therapy treatment notes, on August 14, Defendants asked the Government to identify patient examples where these documents were missing, as well as examples of where such documents were present in the production. On August 19, 2026, the Government notified Defendants that the files of the first five patients that Defendants produced contained no MDS assessments and no daily therapy treatment records; the Government also defined each category of record and identified example files where each type of record does appear in their production of patient files. On August 20, Defendants responded that "MDS Assessments and Daily Therapy Treatment records were not necessarily included in patient medical files," and stated that if the Government provides a list of files lacking MDS assessments, "we will look to see if they can be retrieved from another database at Paragon," and that daily therapy records "may be able to be retrieved from the individual facilities where that patient was treated." On August 22, Defendants further explained that they: (1) believed that they had previously produced all MDS assessments; and (2) counsel only just learned that the facility defendants do not regard daily therapy treatment notes as part of a patient's file, and that, therefore, these documents were not searched for and collected. Thus, these records, which were plainly called for by the Government's document requests, exist within Defendants' possession, custody or control and were simply not searched for. The fact that Defendants

apparently store categories of patient medical records in locations outside of the patient's "file" that were not searched indicates that Defendants have not produced a complete set of medical records for each of the sampled patients and that there may be other missing medical records in addition to MDS assessments and therapy treatment records. Nevertheless, Defendants have yet to provide a timeframe to complete a fulsome search.

**C. The Government's experts cannot complete their review without these records.**

The Government's experts cannot do their work without a complete set of medical records for each of the sampled patients. The Government's medical experts began reviewing the produced files in late July. They advised that the files lack the MDS assessments and the therapy treatment records documenting care delivered on each date of service. Because the Government's theory requires comparing what the Facilities recorded on the MDS against what the underlying clinical records show, the MDS assessments are not merely helpful—they are the documents in which the allegedly false statements were made. And the daily therapy treatment records are the documentation showing whether the therapy being provided was medically necessary. Given that Defendants have not searched all areas where patient medical records were stored, there may be other relevant records that remain missing. The Government is not in a position to determine what medical records exist that Defendants failed to collect and produce. Accordingly, the Government's expert review is currently paused pending Defendants' production of a complete set of medical records for each sampled patient. The Government's expert reports are due January 19, 2027; each week that production of complete medical files is delayed compresses that schedule.

**D. Relief Requested**

The Government respectfully requests that the Court order Defendants to: (1) search all repositories reasonably likely to contain responsive patient records, including the Paragon database

referenced in Defendants' August 20 email, each Facility's own records, and every EMR system and version in use during the relevant period, including predecessor systems and archived or vendor-hosted data; (2) produce, for all 382 patients in the Amended Appendix A, all medical records, including the complete MDS assessments for each stay and the therapy treatment records described in Request No. 2, by a date certain; and (3) serve a written certification identifying the repositories searched and, for any patient or category Defendants contend does not exist, a statement to that effect by Facility and time period; and (4) confirm that all such records have been subject to a litigation hold since the civil investigative demands were served on each facility and are being preserved.

## II. Potentially Missing Emails and Text Messages

### A. Potentially Missing Emails

The Government continues to have significant concerns that Defendants have not collected and produced all non-privileged and responsive emails from the 51 custodians.

As background, at a conference on March 30, 2026, the Court ordered that Defendants produce emails for 51 custodians identified by the Government, from January 1, 2010, through June 30, 2021, based on search terms on which the parties subsequently reached agreement. Tr. 32-36, 44-45; *see also* ECF No. 227. At the last conference, on July 31, 2026, following Defendants' representation that they had completed the production of emails, the Government raised concerns about potentially missing emails from the 51 custodians, based on the facts that 23 of the 51 custodians appeared to be entirely missing from the productions, there were large gaps in dates of produced emails for many custodians, and the overall low volume of emails—approximately 26,000 emails for 51 custodians for a period spanning over a decade (averaging a little over 500 emails per custodian). Tr. 17-21. The Court ordered that Defendants "get into the

weeds" and analyze the issues the Government raised "in a very critical fashion to make sure your client has produced everything." Tr. 45-46. The Court further stated that the parties "need to work together, to try to dig down on whether there are substantial missing things" and that the parties should be having "very, very meaningful and good-faith meet and confers" about this issue prior to submitting the joint letter due today. Tr. 42, 46.

Defendants have not complied with the Court's orders. On August 4, shortly after the July 31 conference, counsel for the Government contacted defense counsel to schedule a call about the email issues and requested reports it had previously requested relating to the number and date range of emails collected for each custodian, and how the numbers changed following deduplication and the running of search terms. Ten days later, on August 14, defense counsel responded that they would "provide [their] findings" on the "date range 'gaps'" by the following week so "we can prepare the joint letter to the Court regarding the matter." After the Government responded that Defendants were also required to look into the custodian gaps, *see* 7/31/26 Tr. 18-19, 38-42, 45-46, 48, and meaningfully confer with the Government, defense counsel responded on August 18 with only their "findings." These findings included a purported explanation of the date range gaps for only the examples of custodians the Government had provided as having potentially problematic gaps, as well as a blanket statement that Defendants collected emails from the 23 missing custodians and that the absence of metadata identifying them as custodians is explained by their emails having been pulled from the Barracuda archives and then deduplicated.

Defendants' conclusory "findings" are plainly insufficient. Defendants provided no evidence that they verified, on a custodian-by-custodian basis, that they properly collected emails from each missing custodian, properly transferred each custodian's emails to a review platform,

ran the search terms correctly, and properly deduplicated the results. The Government therefore continues to have substantial concerns regarding Defendants' email productions.

More specifically, a search of emails that the 23 missing custodians sent, received, or were copied on returns approximately 3,800 documents in total—an implausibly low number for 23 custodians over a period of more than ten years (particularly when the Government selected nearly all of these custodians because Defendants identified them as having emails in O365 and/or Barracuda). Moreover, the total of approximately 26,000 email documents across 51 custodians (approximately 500 emails per custodian), many of whom were in therapy management positions, over a period spanning more than a decade is extremely abnormal in a healthcare fraud litigation and also strongly suggests irregularities. Further, defense counsel's explanation for the missing custodians does not explain why a search for emails that the 23 custodians sent, received, were copied, returns virtually no emails for most of the custodians. Further, in several instances, the information Defendants provided about date gaps conflicts with the information Defendants previously provided to the Government in that Defendants now claim that certain employees did not have email accounts during certain time periods, when the information Defendants provided to us in February 2026 stated otherwise.

In light of these many irregularities, we request that the Court order Defendants to provide by September 1, 2026, reports for each of the 51 custodians reflecting the number and date range of emails collected, and how the number of documents changed following (i) deduplication and (ii) the running of search terms. We also request that the Court order Defendants to provide hit reports for each custodian showing the hits for each search term. Following receipt and review of these reports, the Government may request additional information and may need to notice a 30(b)(6) deposition relating to these issues.

**B. Potentially Missing Text Messages**

Defendants' text message production also appears to be potentially deficient. Defendants represented that they completed their text message production with a production of such messages on August 3, 2026. However, they produced only approximately 1,483 text messages total, compared to approximately over 70,000 text messages produced during the investigation. Defendants agreed to produce text messages for custodians other than Isaac Laufer and Tami Whitney based upon the agreed-to search terms; however, for the custodians from whom Defendants collected text messages during the investigation, they produced only a very limited number (often less than 100 messages each) in their litigation production. Defendants also produced virtually no text messages for individuals who were current employees based on information provided to the Government by Defendants in February 2026, but from whom text message were not produced in the investigation. The Government emailed defense counsel on August 18 to inquire about these issues but has not received a response. The Government respectfully requests that the Court order Defendants to provide a detailed response to the Government by September 1, 2026.

**III. The Status of the Cellphone Review**

As ordered by the Court, on August 14, 2026, Defendants produced a privilege log listing their privilege claims over information on the cell phones of Mr. Laufer and Ms. Whitney as well as a copy of the data on those phones with the claimed privileged information either withheld or redacted. The parties continue to engage in the meet and confer process, and will provide a further update to the Court within 48 hours of the instant submission and pending the resolution of those discussions.

**Defendants' Report on Remaining Discovery Issues**

1. **Plaintiff's Discovery Demands**

Defendants have substantially completed production of materials in response to plaintiff's discovery requests. Plaintiff, however, has repeatedly raised issues with defendants' production, and in "getting in the weeds" to respond to plaintiff's myriad of issues, we have identified, as we previously told plaintiff, two areas that we are currently working to remediate: The first concerns emails of Irwin Pomerantz (one of the 51 custodians previously identified by plaintiff), and the second concerns defendants' production of the 382 patient records demanded by plaintiff.

2. **Irwin Pomerantz Emails**

Earlier this summer, plaintiff complained that, with respect to some of 51 custodians, the quantity of emails appeared to be too few and that there were in its view suspect temporal "gaps" in the email production. Plaintiff also provided specific examples in response to our request that it do so. We analyzed in detail each of those examples and provided a full explanation as to why there appear to be few emails as to some custodians and accounted for the "gaps" in the email. We did the same with respect to criticisms plaintiff raised about the volume of text messages produced, which were collected and reviewed following the application of the agreed upon search parameters and produced based on plaintiff's specific requests for production, none of which applied to the production of text messages during the investigation during which an entirely different set of criteria applied.

Plaintiff now calls defendants' explanations "conclusory," but then makes unsupported conclusory statements of its own. We manually checked every custodian that plaintiff identified by looking at the time frames allegedly missing from production and found no support to plaintiff's suggestion that data is missing. We have no reason to believe that search terms were not properly

applied, de-duplication of redundant information was not properly accomplished, or that responsive information was withheld. Emails back as far as 2010 may exist in lower quantities than newer emails in the current email platform because a litigation hold was not imposed until well after this time (indeed, the CID investigation process did not begin until mid-2018). We also searched the Barracuda archive appropriately and in light of its limitations, searching for all correspondence containing the email addresses of relevant custodians.

This said, in the course of expending significant attorney time and resources answering plaintiff's repeated questions on these topics, we did identify one issue: A portion of the work-email account for Irwin Pomerantz, who was the Administrator at Long Island Care Center until 2022, was not included in the production. His Office 365 account was apparently not preserved. We have no reason to believe that lapse was anything other than inadvertent. Pomerantz emails, however, were produced from the Barracuda archive from approximately August 2019 and before, and also are preserved in the email accounts of co-workers that were archived, some of which are already in the production. In order to ensure that all of the responsive Pomerantz emails are produced, we are currently working with our e-discovery vendor to run additional searches for responsive emails involving him across the entire corporate email system. That process has started, and defendants will promptly review and produce any additional responsive, non-privileged communications. We aim to have an estimated time to completion by the next Court conference on September 11.

**3. <u>Unlocated Sample Patient Files</u>**

To date, we have identified and produced medical record data for 356 patients, out of the 382-sample set demanded by plaintiff. That leaves 26 patient files that are unaccounted for. In addition to those 26 patient files, defendants have been unable to locate portions of some files that

have been produced. So, for 44 patient files that are in the production, we produced the Electronic Medical Record (EMR) portion of the file only, and no hard copy portion for these files was located. And for 69 of the files that have paper records, which have been produced, we have not located any EMR portion. At this point, defendants have exhausted efforts to locate these 26 missing files and the missing portions of the other files. Further efforts to search would be an unreasonable and likely fruitless expenditure of company time and resources. We are discussing with plaintiff what to do in this circumstance and what alternatives may suffice.

In addition, just last week, plaintiff informed us that some of the patient files in the production were missing Minimum Data Set (MDS) assessments and records reflecting therapy treatments. The Paragon employee in charge of this search recently left on maternity leave (she has a new-born and is not readily available), and so, we are not sure why MDS records were omitted from the original collection effort. In any event, we are compiling all MDS records for the 382 patients and expect to be able to complete production of that material shortly after the September 11 conference, if not before. As to the therapy logs and similar records, the Facilities and Paragon do not regard these records as part of the patient file and keep them separately, and that may explain why they were not included in the original document pull. In any event, we are now compiling those records for the 382 patients and aim to provide a time-to-completion estimate by the September 11 conference.

**4. <u>Defendants' Discovery Demands</u>**

Plaintiff produced to defendants the materials it has received from multiple third-party subpoenas it served, but this material was produced to defendants only today. Because we have been focused on responding to plaintiff's complaints about defendants' production, we are still reviewing this material to ascertain whether it is complete.

In addition, defendants have identified the following issues about plaintiffs' prior productions. Defendants intend to meet and confer with the government about these deficiencies in the hopes that they can be resolved without Court intervention:

- There are only 236 .msg email files across all of the productions of the government and its third-party contractors. Assuming that is correct, it is a facially insufficient response to the defendants' requests for communications. Further, the government has provided neither its list of custodians nor the search terms it used to identify these documents;
- The government and its contractors appear to have produced no documents at all in response to many of defendants' discovery requests; and
- Several documents are missing native files.

* * *

We thank the Court for its consideration of these matters.

Respectfully submitted,

JAMES M. MCDONALD
United States Attorney for the
Southern District of New York
*Attorney for Plaintiff*

By: *_/s/ Tara Schwartz____*
ALLISON M. ROVNER
JEREMY M. LISS
JENNIFER JUDE
MARK OSMOND
PIERRE G. ARMAND
TARA SCHWARTZ
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2691
Email: allison.rovner@usdoj.gov
jeremy.liss@usdoj.gov
jennifer.jude@usdoj.gov
mark.osmond@usdoj.gov
pierre.armand@usdoj.gov
tara.schwartz@usdoj.gov

cc: Counsel of Record